No. 22-60556

# In the
# United States Court of Appeals
# For the Fifth Circuit

PORT ARTHUR COMMUNITY ACTION NETWORK,
*PETITIONER,*

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; JON NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,
*RESPONDENTS.*

ON APPEAL FROM THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
DOCKET NO. 2021-0942-AIR

**BRIEF OF RESPONDENTS TEXAS COMMISSION ON ENVIRONMENTAL QUALITY AND JON NIERMANN IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TCEQ**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

ERIN K. SNODY
Assistant Attorney General
erin.snody@oag.texas.gov

J. AMBER AHMED
Assistant Attorney General
amber.ahmed@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel.: (512) 463-2012
Fax: (512) 320-0911

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of the Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

### Petitioners

Port Arthur Community Action Network

### Counsel for Petitioners

Colin Cox
Environmental Integrity Project
1206 San Antonio Street
Austin, Texas 78701
[Tel.] 832-316-0580
colincox@environmentalintegrity.org

Amy Catherine Dinn
Natasha Bahri
Chase Porter
Lonestar Legal Aid
1415 Fannin Street
Houston, Texas 77002
[Tel.] (512) 713-652-0077 ext 8108
adinn@lonestarlegal.org
nbahri@lonestarlegal.org
cporter@lonestarlegal.org

*Attorneys for Petitioners*

**Respondents**

Texas Commission on Environmental Quality and
Jon Niermann, in his official capacity as Chairperson of the Texas Commission on
Environmental Quality

**Counsel for Respondents**

Erin K. Snody
Assistant Attorney General

J. Amber Ahmed
Assistant Attorney General

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
[Tel.] (512) 463-2012
erin.snody@oag.texas.gov

**Intervenor**

Port Arthur LNG, L.L.C.

**Counsel for Intervenor**

Derek McDonald
Baker Botts LLP
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
[Tel.] (512) 322-2667
derek.mcdonald@bakerbotts.com

Aaron M. Streett
Baker Botts LLP

One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
[Tel.] (713) 229-1855
aaron.streett@bakerbotts.com

*/s/ Erin K. Snody*
Erin K. Snody

## STATEMENT REGARDING ORAL ARGUMENT

The Texas Commission on Environmental Quality, and Jon Niermann, in his official capacity as Chairperson of TCEQ, respectfully request oral argument. This case involves the complex interplay between state and federal law in implementing Texas's federally approved air-quality permitting program for major sources of air contaminants under the federal Clean Air Act. Under its federally-approved State Implementation Plan, TCEQ exercises its delegated authority to implement the Prevention of Significant Deterioration permitting program in the state of Texas and does so through its own rules. While this case rests in well-settled principles of administrative law, oral argument will assist the Court in understanding the complex state laws and regulations that govern the issuance of air-quality permits in Texas, as well as the relationship between the state and federal governments in implementing Texas's air-quality permitting programs.

## TABLE OF CONTENTS

Certificate of Interested Persons ............................................. i

Statement Regarding Oral Argument ...................................... iv

Table of Contents ............................................................... v

Index of Authorities ........................................................... vii

Glossary of Acronyms and Abbreviations ............................. xi

Introduction .................................................................... 1

Issues Presented .............................................................. 3

1. In its final order issuing an air-quality permit to Port Arthur LNG to construct and operate an LNG plant, the Commission determined that the permitted NOx and CO emissions limits for the plant's refrigeration compression turbines complied with the requirement to use the "best available control technology" based on the record before the agency. Is TCEQ's final order invalid, arbitrary, or unreasonable? .................................. 3

Statement of the Case ......................................................... 3

I.  Regulatory Background: the state-federal permitting scheme and "Best Available Control Technology." ...................................... 3

    A. TCEQ issues air-quality permits in Texas pursuant to its EPA-approved State Implementation Plan ............................................ 3

    B. Under Texas's approved SIP, TCEQ rules govern the application of "best available control technology" in the PSD permitting program. ................................................................ 5

    C. Public participation and contested-case proceedings in the PSD permitting process under Texas law. ........................................ 9

II. Factual Background: The Commission granted an air-quality permit to Port Arthur LNG following a contested-case hearing on the application. ................................................................ 12

A. Port Arthur LNG applied for a PSD permit. ............................12

B. PACAN protested the application, and a contested-case hearing was held. ...............................................................................13

C. The Commission considered the ALJs recommendations and approved the permit. ...............................................................16

D. PACAN moved for rehearing and timely filed this appeal. ........................18

Summary of the Argument ....................................................18

Standard of Review...........................................................20

Argument ....................................................................24

I.  The Commission's decision to permit Port Arthur LNG at emissions limits that differ from the permitted limits for the yet-to-be-constructed Rio Grande LNG plant is reasonable, supported by substantial evidence, and consistent with TCEQ rules and guidance. ............................24

A. BACT must be "achievable" and "proven to be operational." ................26

B. The Commission's interpretation and application of BACT to Port Arthur LNG's permit application was reasonable and consistent with TCEQ rules.........................................................30

C. The Commission's determination of BACT for CO and NOx emission limits is supported by substantial evidence in the administrative record. ..........................................35

II. The Commission properly limited its consideration of Port Arthur LNG's application to the record developed in the contested-case proceeding.....................................................39

Conclusion ..................................................................42

Certificate of Service .........................................................44

Certificate of Compliance.....................................................45

## INDEX OF AUTHORITIES

**Cases**

*BCCA Appeal Grp. v. U.S. EPA*, 355 F.3d 817 (5th Cir. 2003) ................................3

*City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179 (Tex. 1994)..........................................................................................................23

*City of Quincy v. Mass. Dep't of Envtl. Prot.,* 21 F.4th 8 (1st Cir. 2021)................. 20

*Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envt'l Quality*, 393 S.W.3d 417 (Tex. App.—Austin 2012, pet. denied)..................22, 23

*Luminant Generation Co., L.L.C. v. U.S. EPA*, 675 F.3d 917 (5th Cir. 2012)......................................................................................................... 4

*Osborn v. Bank of the U.S.*, 22 U.S. 738 (1824)....................................................... 20

*Phillips Petroleum Co. v. Tex. Comm'n on Envt'l. Quality*, 121 S.W.3d 502 (Tex. App.—Austin 2003, no pet.) ...............................................................23

*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619 (Tex. 2011).......................................................................23

*Reliant Energy, Inc. v. Pub. Util. Comm'n of Tex.*, 153 S.W.3d 174 (Tex. App.—Austin 2004, pet. denied)................................................................. 35, 41

*Shrimpers & Fishermen of RGV v. Tex. Comm'n on Envt'l Quality*, 968 F.3d 419 (5th Cir. 2020)........................................................................ 20

*Slay v. Tex. Comm'n on Envt'l Quality,* 351 S.W.3d 532 (Tex. App.—Austin 2011, pet. denied) ............................................................................ 22

*Tex. Comm'n on Envt'l Quality v. Friends of Dry Comal Creek*, No. 03-21-00204-CV, 2022 WL 4540955 (Tex. App.—Austin Sept. 29, 2022, no pet.h.) ................................................................. 8, 41

*Train v. Nat. Res. Def. Council, Inc.* 421 U.S. 60 (1975)......................................... 4

*Twp. of Bordentown, N.J. v. Fed. Energy Regulatory Comm'n*, 903 F.3d 234 (3d Cir. 2018) ...................................................................................... 20

*United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797 (Tex. App.—
  Austin 2000, pet. dism'd) .................................................................21

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ............................ 20

*Wimberley Springs Partners, Ltd. v. Wimberley Valley Watershed Ass'n*,
  No. 03-13-00467-CV, 2017 WL 2229876 (Tex. App.—Austin May
  19, 2017, no pet.) (mem. op.).........................................................23

*Zimmer US, Inc. v. Combs*, 368 S.W.3d 579 (Tex. App.–Austin 2012,
  no pet.) ......................................................................................... 24

**Statutes**

15 U.S.C. § 717r(d) .................................................................... 20

30 Tex. Admin Code § 55.256(a) ....................................................10

30 Tex. Admin. Code § 116.10(1)...........................................6, 25, 26, 31

30 Tex. Admin. Code § 116.150(d)(1) ............................................... 9

30 Tex. Admin. Code § 116.151(a) ...................................................5

30 Tex. Admin. Code § 116.151(c)(1) ............................................... 9

30 Tex. Admin. Code § 116.160 ...................................................... 20

30 Tex. Admin. Code § 116.160(a)....................................................5

30 Tex. Admin. Code § 116.160(c)................................................... 6

30 Tex. Admin. Code § 116.160(c)(1)(A) ..................................7, 26, 31

30 Tex. Admin. Code § 55.211(f) ....................................................18

30 Tex. Admin. Code § 80.272(b) ................................................... 11

30 Tex. Admin. Code § 80.272(e)(1) ...........................................11, 18

30 Tex. Admin. Code § 80.273 ...................................................... 11

42 U.S.C. § 7401(a)(3)................................................................ 4

42 U.S.C. § 7407(a) ................................................................... 4

42 U.S.C. §§ 7408-7409 ................................................................ 3

Tex. Gov't Code § 2001.003(1) ...................................................... 10

Tex. Gov't Code § 2001.060 ........................................................... 40

Tex. Gov't Code § 2001.145 ........................................................... 11

Tex. Gov't Code § 2001.174 ........................................................... 21

Tex. Gov't Code § 2001.174(2) ....................................................... 21

Tex. Gov't Code § 2001.174(2)(F) ................................................. 22

Tex. Gov't Code § 2001.175(e) ................................................. 21, 40

Tex. Gov't Code § 2003.047(a) ...................................................... 10

Tex. Gov't Code § 2003.047(i-1) ............................................... 10, 15

Tex. Gov't Code § 2003.047(i-2) ..................................................... 10

Tex. Gov't Code § 2003.047(i-3) ..................................................... 10

Tex. Gov't Code § 2003.047(l) ........................................................ 11

Tex. Gov't Code § 2003.047(m) ................................................. 11, 40

Tex. Health & Safety Code § 382.032 ............................................. 11

Tex. Health & Safety Code § 382.032(e) ......................................... 21

Tex. Health & Safety Code § 382.0518 ............................................. 6

Tex. Health & Safety Code § 382.056(n) ........................................... 9

Tex. Water Code § 5.115(a) ............................................................ 10

Tex. Water Code § 5.556 ................................................................... 9

Tex. Water Code § 5.557 ................................................................... 9

**Regulations**

40 C.F.R. § 50 ................................................................................. 4

40 C.F.R. § 51.166(j)(2) .................................................................... 6

40 C.F.R. § 52.21(a)(2)(i) ........................................................5

40 C.F.R. § 52.21(b)(12) ................................................ *passim*

40 C.F.R. § 52.2270 ............................................... 4, 5, 7

57 Fed. Reg. 28095 ............................................... 5, 8, 34

57 Fed. Reg. 28094-28095 ........................................34

## Constitutional Provisions

U.S. Const. art. III, § 2 ......................................... 20

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| ALJ | Administrative Law Judge |
| APDG 6110 | TCEQ's Air Permit Reviewer Reference Guide |
| BACT | Best Available Control Technology |
| CAA | Federal Clean Air Act |
| CO | Carbon Monoxide |
| EPA | United States Environmental Protection Agency |
| LNG | Liquified Natural Gas |
| NAAQS | National Ambient Air Quality Standards |
| NOx | Nitrogen Oxides |
| NSR | New Source Review |
| PACAN | Port Arthur Community Action Network |
| PFD | Proposal for Decision |
| PSD | Prevention of Significant Deterioration |
| Port Arthur LNG | Port Arthur LNG, L.L.C. |
| SIP | State Implementation Plan |
| TCAA | Texas Clean Air Act |
| TCEQ or Commission | Texas Commission on Environmental Quality |

No. 22-60556

# In the
# United States Court of Appeals
# For the Fifth Circuit

PORT ARTHUR COMMUNITY ACTION NETWORK,
*PETITIONERS,*

V.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, AND JON NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,
*RESPONDENTS.*

ON APPEAL FROM THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
DOCKET NO. 2021-0942-AIR

## BRIEF OF RESPONDENTS TEXAS COMMISSION ON ENVIRONMENTAL QUALITY AND JON NIERMANN IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TCEQ

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:

## INTRODUCTION

This appeal concerns an air-quality permit issued by the Texas Commission on Environmental Quality ("TCEQ" or "Commission") to Port Arthur LNG, L.L.C., ("Port Arthur LNG") to construct and operate a greenfield natural gas liquefaction plant and liquefied natural gas ("LNG") export terminal in Port Arthur, Texas. The proposed plant qualifies as a major source of air contaminants under the

federal Clean Air Act and must be permitted through TCEQ's Prevention of Significant Deterioration ("PSD") program. The Commission has been approved by the United States Environmental Protection Agency ("EPA") to administer the PSD permitting program in Texas and does so through its own statutes and rules. Before TCEQ will issue a PSD permit, the applicant must demonstrate, and TCEQ must find, that the project will use the "best available control technology" ("BACT").

After a contested-case hearing on Port Arthur LNG's permit application, the Commission concluded that the proposed Nitrogen Oxides ("NOx") and Carbon Monoxide ("CO") emissions limits for the plant's refrigeration compression turbines represented BACT and issued the permit. Port Arthur Community Action Network ("PACAN") asserts that these emissions limits do not constitute BACT and should be lowered to match another recently permitted but yet-to-be-constructed LNG plant in Texas. But TCEQ determined that the lower limits reflected in that permit had not yet been demonstrated to be achievable—a key concept in determining BACT—and did not set the standard for Port Arthur LNG's application.

Issues Presented

1. In its final order issuing an air-quality permit to Port Arthur LNG to construct and operate an LNG plant, the Commission determined that the permitted NOx and CO emissions limits for the plant's refrigeration compression turbines complied with the requirement to use the "best available control technology" based on the record before the agency. Is TCEQ's final order invalid, arbitrary, or unreasonable?

Statement of the Case

## I. Regulatory Background: the state-federal permitting scheme and "Best Available Control Technology."

TCEQ regulates air quality in Texas in accordance with the Texas Clean Air Act ("TCAA") and federal Clean Air Act ("CAA"). The CAA "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *BCCA Appeal Grp. v. U.S. EPA*, 355 F.3d 817, 821–22 (5th Cir. 2003). Under this framework, both the EPA and TCEQ play a role.

### A. TCEQ issues air-quality permits in Texas pursuant to its EPA-approved State Implementation Plan.

EPA is responsible for identifying and establishing maximum concentrations of certain air pollutants known as the National Ambient Air Quality Standards ("NAAQS"). 42 U.S.C. §§ 7408-7409. EPA has established NAAQs for criteria

3

pollutants, which include carbon monoxide (CO), lead, ground level ozone ($O_3$), nitrogen dioxide ($NO_2$), particulate matter (PM), and sulfur dioxide ($SO_2$). 40 C.F.R. § 50.

While EPA sets the NAAQS, the states have primary responsibility for determining how to achieve and maintain the NAAQS. *Id*. §§ 7401(a)(3), 7407(a). The CAA requires each state to submit a state implementation plan ("SIP") for EPA's approval that specifies how that state will attain and maintain the NAAQS. *Id*. § 7407(a). The approved plan and all plan revisions comprise the approved SIP. States have wide discretion in formulating their SIPs. *Luminant Generation Co., L.L.C. v. U.S. EPA*, 675 F.3d 917, 921 (5th Cir. 2012). "[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." *Id*. (*quoting Train v. Nat. Res. Def. Council, Inc*. 421 U.S. 60, 79 (1975)). While the CAA and EPA provide the goals and basic requirements of SIPs, the states exercise broad authority to determine the methods and control strategies to achieve federal requirements. *Id*. at 922.

Texas submitted, and EPA approved, a SIP that, along with various revisions over the years, specifies how Texas will attain and maintain the NAAQS. 40 C.F.R. § 52.2270. Under the approved SIP, TCEQ administers the New Source Review

("NSR") permitting program, including the program for PSD permits. *Id.* The PSD program applies to the construction or modification of major stationary sources in areas that comply with the NAAQS (attainment areas).[1] 40 C.F.R. § 52.21(a)(2)(i); 30 Tex. Admin. Code § 116.160(a). TCEQ has broad discretion in implementing the PSD program in Texas within the limits of its EPA-approved SIP. 57 Fed. Reg. 28095. ("PSD-SIP approved states remain free to follow their own course, provided that state action is consistent with the letter and spirit of the SIP, when read in conjunction with the applicable statutory and regulatory provisions.").

**B.     Under Texas's approved SIP, TCEQ rules govern the application of "best available control technology" in the PSD permitting program.**

Texas's PSD program is implemented through the TCAA and TCEQ rules, as approved in its SIP. 40 C.F.R. § 52.2270. Under the TCAA, applicants for an air-quality permit, including PSD permits, must demonstrate (1) that the proposed facility will apply BACT, considering the technical practicability and economic reasonableness of reducing or eliminating the emissions resulting from the facility; and (2) that the emissions from the facility will not contravene the intent of the TCAA, including protection of the public's health and physical property. Tex.

---

[1] Major sources of pollutants in areas which are out of compliance with the NAAQS (nonattainment areas) are permitted under the Nonattainment New Source Review program. 30 Tex. Admin. Code §§ 116.150(a), 116.151(a); 40 C.F.R. § 52.2270.

Health & Safety Code § 382.0518; *see also* 40 C.F.R. § 51.166(j)(2) (requiring states

implementing a PSD program to provide for the application of BACT for each

regulated pollutant). TCEQ rules define BACT as:

> An air pollution control method for a new or modified facility that
> through experience and research, has proven to be operational,
> obtainable, and capable of reducing or eliminating emissions from the
> facility, and is considered technically practical and economically
> reasonable for the facility. The emissions reduction can be achieved
> through technology such as the use of add-on control equipment or by
> enforceable changes in production processes, systems, methods, or
> work practice.

30 Tex. Admin. Code § 116.10(1).

The Commission adopted rules specific to PSD permit applications. *See* 30

Tex. Admin. Code Chapter 116, Subchapter B, Division 6. Those rules expressly

incorporate certain provisions of the Code of Federal Regulations pertaining to PSD

requirements, including the definition of BACT. 30 Tex. Admin. Code § 116.160(c).

The federal PSD rules, as incorporated by TCEQ, define BACT as:

> an emissions limitation (including a visible emission standard) based on
> the maximum degree of reduction for each pollutant subject to
> regulation under the Act which would be emitted from any proposed
> major stationary source or major modification which the [TCEQ]
> determines on a case-by-case basis, taking into account energy,
> environmental, and economic impacts and other costs, determines is
> achievable for such source or modification through application of
> production processes or available methods, systems, and techniques,
> including fuel cleaning or treatment or innovative fuel combustion
> techniques for control of such pollutant.

40 C.F.R. § 52.21(b)(12) (incorporated by 30 Tex. Admin. Code § 116.160(c)(1)(A)). Both formulations have been approved into Texas's SIP and inform the Commission's BACT review for PSD permit applications. 40 C.F.R. § 52.2270.

Various guidance documents exist to assist permit reviewers, applicants, and the public in understanding regulations relevant to air permitting. TCEQ's guidance, titled the *Air Permit Reviewer Reference Guide, APDG 6110, Air Pollution Control: How to Conduct a Pollution Control Evaluation*, provides specific guidance to air permit reviewers conducting BACT reviews for PSD permit applications under TCEQ's rules.[2] Consistent with both the state and federal definitions, TCEQ guidance provides that BACT for PSD permits should be based on the "maximum degree of emission reductions (considering energy, environmental, and economic impacts) *achievable* through application of production processes and available methods, systems, and techniques."[3] (emphasis added).

APDG 6110 outlines the three-tier process that TCEQ uses in evaluating BACT for NSR permit applications, including applications under the PSD program.[4] TCEQ staff also consults the New Source Review Workshop Manual ("NSR Manual"), an EPA guidance document on the PSD permitting process, to inform its

---

[2] ROA.8778-80.
[3] ROA.8778.
[4] ROA.8757-8809.

review of BACT for PSD permit applications.[5] While these guidance documents are helpful, guidance "does not have a 'binding effect' on the TCEQ, its staff, or the public. The TCEQ retains discretion to deviate from the [] guidance procedures when deemed appropriate." *Tex. Comm'n on Envt'l Quality v. Friends of Dry Comal Creek*, No. 03-21-00204-CV, 2022 WL 4540955, 8 (Tex. App.—Austin Sept. 29, 2022, no pet.h.); *see also* 57 Fed. Reg. 28095 (noting that TCEQ is not bound by EPA's interpretation and guidance in implementing Texas's PSD SIP).

Where TCEQ uses a three-tier process for reviewing BACT proposals, EPA employs a five-step "top down" method in its permit reviews.[6] Although these processes differ in their approach to BACT, both methods are designed to reach the same end result.[7] Accordingly, EPA has approved TCEQ's three-tier method for use in evaluating BACT for PSD permits as long as the following factors are considered: (1) recently issued/approved permits within the State of Texas; (2) recently issued/approved permits in other states; and (3) control technologies contained in EPA's RACT/BACT/LAER Clearinghouse.[8] APDG 6110 refers to and includes an explanation of EPA's five step top-down method to aid applicants that may choose

---

[5] ROA.8677; ROA.8811-9131.
[6] ROA.8770; ROA.8798-99.
[7] ROA.8770.
[8] ROA.8778; ROA.8809.

between EPA's top-down or TCEQ's three-tier methodology or both when evaluating BACT for their application.[9]

While BACT represents the maximum emissions reduction achievable considering technical feasibility and economic reasonableness, it is not necessarily the most stringent achievable standard or the most recently permitted standard.[10] For certain other facilities located in non-attainment areas, the Lowest Achievable Emissions Rate (a more restrictive standard than BACT) is used.[11] 30 Tex. Admin. Code §§ 116.150(d)(1), 116.151(c)(1). Additionally, facilities may be permitted at a "better than BACT" or "beyond BACT" emission standard so long as it meets BACT, at a minimum.[12]

### C. Public participation and contested-case proceedings in the PSD permitting process under Texas law.

The TCAA provides the public with an opportunity to participate in PSD permitting decisions, including the right to participate in a contested-case hearing for persons affected by the permit. Tex. Health & Safety Code § 382.056(n) (incorporating Tex. Water Code §§ 5.556, 5.557). A person is affected by a permit application if that person has a personal justiciable interest related to a legal right,

---

[9] ROA.8798-99.
[10] *See* ROA.8765; ROA.8780-81.
[11] ROA.8765; ROA.8780-81.
[12] ROA.8772; ROA.13470-72.

duty, privilege, power, or economic interest affected by the application. Tex. Water Code § 5.115(a); 30 Tex. Admin Code § 55.256(a). An interest common to members of the general public does not qualify as a personal justiciable interest. *Id*.

If a hearing request is granted, the Commission will refer the application to the Texas State Office of Administrative Hearings for a contested-case hearing. Tex. Gov't Code § 2003.047(a). A contested-case hearing is a trial-type hearing "in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." *Id*. § 2001.003(1). In a contested case on a PSD permit application, the filing of the application, the Executive Director's preliminary decision, and the draft permit in the administrative record of the application establishes a prima facie demonstration that the draft permit meets all state and federal legal and technical requirements; and the draft permit, if issued, would protect human health and safety, the environment, and physical property. *Id*. § 2003.047(i-1). A party may rebut the prima facie demonstration by presenting evidence demonstrating that one or more provisions in the draft permit violate a specifically applicable state or federal requirement. *Id*. § 2003.047(i-2). If evidence is introduced to rebut the prima facie presumption, the applicant and the Executive Director may then present additional evidence to support the draft permit. *Id*. § 2003.047(i-3).

After hearing evidence and receiving legal argument, the State Office of Administrative Hearing Administrative Law Judge ("ALJ") presiding over the proceeding makes findings of fact and conclusions of law on each issue referred by the Commission. *Id.* § 2003.047(l). The ALJ's findings, conclusions, and recommendation for disposition are presented to the Commission in a proposal for decision and proposed order. *Id.* Before acting on the permit application, the Commission must consider the proposal for decision, the parties' exceptions to the proposal for decision, and the record developed before the ALJ. *Id.* § 2003.047(l). The Commission may make changes to the proposal for decision so long as the changes are based on the record made before the ALJ and are accompanied by an explanation of the basis of the change. *Id.* § 2003.047(m).

A party seeking to challenge the Commission's order in a contested-case proceeding must file a motion for rehearing with the Commission. Tex. Gov't Code § 2001.145; 30 Tex. Admin. Code § 80.272(b). If the Commission does not act on the motion for rehearing within 55 days after the order is signed, the motion is overruled by operation of law and the order becomes final and appealable. 30 Tex. Admin. Code §§ 80.272(e)(1), 80.273. A person affected by a final order of the Commission on an air permitting application under the TCAA may file a suit for judicial review of the order. Tex. Health & Safety Code § 382.032.

## II.     Factual Background: The Commission granted an air-quality permit to Port Arthur LNG following a contested-case hearing on the application.

### A.     Port Arthur LNG applied for a PSD permit.

Port Arthur LNG applied to the TCEQ for an air-quality permit associated with a proposed natural gas liquefaction plant and export terminal to be located near Port Arthur in Jefferson County, Texas.[13]  As proposed, emissions from the plant would exceed applicable PSD thresholds for NOx, CO, and particulate matter.[14] Accordingly, Port Arthur LNG's application sought authorization under the PSD program.[15]

TCEQ's Executive Director's staff conducted a thorough technical review of the application to determine compliance with the applicable federal and state statutes, rules, and regulations, including BACT.[16] This review was conducted by a number of TCEQ technical staff in the Air Permits and Toxicology Divisions.[17] After determining that the application met the necessary statutory and regulatory requirements, the Executive Director issued a Preliminary Decision and Draft Permit on June 2, 2020.[18]

---

[13] ROA.948.
[14] ROA.8674.
[15] ROA.948-950.
[16] ROA.54-362.
[17] ROA.54-362.
[18] ROA.415-16.

The draft permit proposed the following emissions limits for the plant's refrigeration compression turbines: a NOx limit of 9 parts per million, volume dry (ppmvd) at 15% oxygen ($O_2$); and a CO limit of 25 ppmvd at 15% $O_2$.[19] TCEQ solicited public comments on the application and draft permit through September 15, 2020.[20] After considering public comments, including those submitted by PACAN and its individual member John Beard, TCEQ's Executive Director issued a final decision on March 24, 2021, that Port Arthur LNG's permit application complied with the requirements of applicable law.[21]

## B. PACAN protested the application, and a contested-case hearing was held.

PACAN timely requested a contested-case hearing on the application.[22] The Commission considered the application and PACAN's hearing request at a regularly scheduled Commissioner's Agenda Meeting on August 25, 2021.[23] At the meeting, the Commissioners referred PACAN's hearing request to the State Office of Administrative Hearings to determine whether PACAN's individual member, Mr. Beard, was an affected person under the applicable laws.[24] If PACAN was found to

---

[19] ROA.434-35.
[20] ROA.713-15
[21] ROA.812-14.
[22] ROA.13699-729.
[23] ROA.817.
[24] ROA.6555.

be an affected person, the Commission directed that a number of issues on the merits of the permit be referred for a contested-case hearing.[25] Among the referred issues was "whether the controls proposed in the draft permit constitute Best Available Control Technology."[26]

A preliminary hearing on PACAN's affected person status was held before an ALJ on November 16, 2021.[27] After determining that Mr. Beard was an affected person[28] and that PACAN met the requirements for associational standing, the ALJ granted PACAN party status and conducted a contested-case hearing on the issues referred by the Commission.[29] A hearing on the merits was held virtually before two State Office of Administrative Hearings ALJs on February 22-24, 2022.[30]

Prior to the hearing, Port Arthur LNG filed a certified copy of the administrative record on the application—which includes a copy of the application, the Executive Director's preliminary decision, and the draft permit—in the record of the contested-case proceeding.[31] Under Texas law, this establishes a prima facie

---

[25] ROA.6557.
[26] ROA.6556.
[27] ROA.5145.
[28] The ALJ's affected person determination was based on air-dispersion modeling indicating that the proposed plant would result in increased levels of NOx and particulate matter at Mr. Beard's residence. ROA.5147-50.
[29] ROA.5150-51.
[30] ROA.12900; ROA.13217; ROA.13513.
[31] ROA.6558-66.

demonstration that the draft permit complies with all applicable laws, including BACT. Tex. Gov't Code § 2003.047(i-1).

At the hearing, PACAN introduced evidence, including information regarding a recently amended permit for Rio Grande LNG, to rebut the prima facie demonstration on the issue of BACT.[32] Rio Grande LNG's permit, which was amended on November 13, 2020, lowered the permitted NOx and CO emissions limits for the plant's refrigeration compression turbines to 5 ppmvd and 15 ppmvd, respectively.[33] Prior to the 2020 amendment, Rio Grande LNG's permit set a NOx limit of 9 ppmvd using dry low-NOx burner technology ("DLN"), and a CO limit of 25 ppmvd using good combustion practices, the same limits and controls proposed by Port Arthur LNG.[34] However, Rio Grande LNG's permit application was not admitted in into the evidentiary record and there is no information regarding the reasons why Rio Grande lowered the emissions limits on its proposed refrigeration turbines.[35] The Executive Director and Port Arthur LNG both provided expert testimony that the limits established in Port Arthur LNG's draft permit meet BACT requirements;[36] and the limits in Rio Grande LNG's amended permit did not

---

[32] *See* ROA.12902-07.
[33] ROA.12880; *see also* ROA.13106-07.
[34] ROA.12880.
[35] *See* ROA.13524; *see also* ROA.12901-07.
[36] ROA.8684-85; ROA.7702-21.

establish BACT for Port Arthur LNG's application because those limits had not been demonstrated to be achievable.[37]

The record for the contested-case proceeding closed on March 16, 2022.[38] The ALJs then issued their proposal for decision and proposed order on May 20, 2022.[39] In the proposal for decision, the ALJs recommended issuing the draft permit with two relevant revisions:

- an amendment that requires the refrigeration compressor turbines be permitted with a NOx emission limit of 5 ppmv at 15% $O_2$ on a 24-rolling hour average, except during periods of MSS; and

- an amendment that requires the refrigeration compressor turbines be permitted with a CO emission limit of 15 ppmv at 15% $O_2$.[40]

These recommended changes were based on the ALJs determination that Port Arthur LNG's proposed emissions limits were not "at least" equivalent to Rio Grande LNG.[41]

## C.    The Commission considered the ALJs recommendations and approved the permit.

The Commission considered the proposal for decision at a Commissioner's Agenda Meeting on September 7, 2022.[42] At the meeting, for the first time, PACAN

---

[37] ROA.13518; ROA.13557; ROA.13638-40.
[38] ROA.5154.
[39] ROA.6032.
[40] ROA.6125.
[41] ROA.6072-74.
[42] ROA. 6332-6335.

sought to introduce an August 31, 2022 letter written by David Garcia, an air permitting staff member in EPA's regional office, in which he expressed opinions regarding statements made by TCEQ's Executive Director in the agency's exceptions to the proposal for decision.[43] General Counsel for the Commission noted that the letter was not part of the record in this proceeding and could not properly be brought before the Commission.[44]

After reviewing the proposal for decision, the parties' exceptions to the proposal for decision, and the evidence in the record, the Commission determined that the ALJs' proposed changes to the permitted NOx and CO emission limits for the refrigeration compression turbines did not constitute BACT because those limits have not been demonstrated to be achievable.[45] To effectuate the Commission's decision not to adopt the ALJs' recommended revisions to the Draft Permit, the Commission made several changes to the findings of facts and conclusions of law in the proposal for decision regarding BACT for the refrigeration compression turbines.[46] The Commission also amended Ordering Provision 1 to remove the requirement that the refrigeration compressor turbines be permitted with a lower

---

[43] ROA. Recording of TCEQ's September 7, 2022 Agenda Meeting at 13:30.
[44] ROA. Recording of TCEQ's September 7, 2022 Agenda Meeting at 13:30.
[45] ROA.6372-73.
[46] ROA.6372-73.

NOx emission limit of 5 ppmv, and CO emission limit of 15 ppmv.[47] The Commission adopted the proposal for decision with the noted changes and granted Port Arthur's permit under Air Quality Permit No. 158420, PSDTX1572, and GHGPSDTX198.[48]

### D.     PACAN moved for rehearing and timely filed this appeal.

PACAN filed a motion for rehearing, which is required to exhaust administrative remedies.[49] In support of its motion, PACAN attached a copy of Mr. Garcia's August 31, 2022 letter.[50] Although PACAN attached the letter to its Motion for Rehearing, it did not move to reopen the record to officially admit the letter.

The Commission did not act on PACAN's motion within 55 days after the order was signed. As a result, the motion was overruled by operation of law. 30 Tex. Admin. Code §§ 55.211(f), 80.272(e)(1). Petitioners timely filed this petition for review of the Commission's final order.

SUMMARY OF THE ARGUMENT

The Commission conducted a thorough review of Port Arthur LNG's application for a PSD permit and issued a permit with emissions limits that it determined to be BACT. In conducting the requisite case-by-case analysis, the Commission considered the individual facts presented in Port Arthur LNG's

---

[47] ROA.6372-74.
[48] ROA.6355-423.
[49] ROA.24423-25047.
[50] ROA.24529-34.

application as well as the emissions limits and controls for recently permitted LNG facilities, including Rio Grande LNG. Although the limits set in Rio Grande LNG's permit are lower than the limits in this case, the Commission ultimately determined that those limits did not set the standard for BACT because the limits have not been demonstrated to be achievable. Rio Grande LNG is not yet operational; its emissions controls and limits have not been demonstrated in practice—BACT requires an emissions control option to be achievable and proven to be operational, obtainable, and capable of reducing or eliminating emissions. Because Rio Grande LNG's limits have yet to be demonstrated in practice, the Commission reasonably determined that those limits did not dictate BACT for Port Arthur LNG's permit.

The Commission's interpretation and application of BACT to Port Arthur LNG's proposed plant is based on the administrative record before the agency and is consistent with the Texas Clean Air Act, TCEQ rules, and the Commission's delegated authority to implement the federal Clean Air Act as authorized by EPA. Accordingly, the Commission's final order issuing the Port Arthur LNG's permit is not invalid, arbitrary, or unreasonable and this Court should deny PACAN's petition for judicial review.

## STANDARD OF REVIEW

Under the Natural Gas Act, exclusive jurisdiction to review air-quality permits associated with LNG facilities issued by state agencies lies in the U.S. court of appeals.[51] 15 U.S.C. § 717r(d); *City of Quincy v. Mass. Dep't of Envtl. Prot.,* 21 F.4th 8, 14 (1st Cir. 2021).   Although the statute does not specify the standard of review for the review of state-agency proceedings, courts have applied the standard state agencies would receive under state law. *Twp. of Bordentown, N.J. v. Fed. Energy Regulatory Comm'n*, 903 F.3d 234, 270 (3d Cir. 2018); *see also City of Quincy,* 21 F.4th 8 at 14 (declining to decide whether state or federal law governs the standard of review for air-quality permits issued by state agencies under the Natural Gas Act

---

[51] In *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Envt'l Quality*, 968 F.3d 419 (5th Cir. 2020), Judge Oldham questioned whether 15 U.S.C. § 717r exceeds the scope of Article III of the Constitution to the extent that it purports to vest federal courts with jurisdiction over a category of cases that does not fall within any of Article III, § 2's heads of federal jurisdiction: state-law causes of action authorizing review of state-agency permitting decisions made under state law between non-diverse parties. *See Shrimpers & Fishermen*, 968 F.3d at 427-28 (Oldham, J., concurring). It is likely, however, that as applied to this case, section 717r falls within Article III's broad "arising under" head of jurisdiction. *See* U.S. Const. art. III, § 2. The Supreme Court has explained that an action that involves a federal "ingredient," *Osborn v. Bank of the U.S.*, 22 U.S. 738, 823-24 (1824), or that "involves application of a body of substantive federal law . . . 'arises under' federal law, within the meaning of Article III." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 497 (1983); *see also Verlinden*, 461 U.S. at 495 ("Article III 'arising under' jurisdiction is broader than federal question jurisdiction under § 1331"). That is the case with respect to this action, which calls for review of a TCEQ decision to issue a Prevention of Significant Deterioration permit to Port Arthur LNG to construct and operate a new LNG plant, invoking both the federal Clean Air Act and the Natural Gas Act.  TCEQ has delegated authority under the federal Clean Air Act to administer the PSD permitting program in Texas. As part of its EPA-approved SIP, TCEQ has incorporated a number of federal regulations into its PSD program. 30 Tex. Admin. Code § 116.160. Thus, this action provides a sufficient federal "ingredient" to bring it within the ambit of Article III. *See Verlinden*, 461 U.S. at 497.

where the standards were materially the same). Accordingly, as PACAN agrees, the Court should look to Texas law to determine the standard of review.

In an appeal of an order issued under the TCAA, the question is "whether the action is invalid, arbitrary, or unreasonable." Tex. Health & Safety Code § 382.032(e). Texas courts have interpreted this statute as incorporating the standard for suits for judicial review under the Texas Administrative Procedure Act. *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 801 (Tex. App.—Austin 2000, pet. dism'd); *Smith v. Hous. Chem. Services, Inc.*, 872 S.W.2d 252, n.2 (Tex. App.—Austin 1994, writ denied).

Under the Texas Administrative Procedure Act, the reviewing court determines whether administrative findings, inferences, conclusions, or decisions are in violation of a constitutional or statutory provision; in excess of the agency's statutory authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence; or are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code § 2001.174(2). The reviewing court is confined to the record developed before the agency, and the court may not substitute its judgment for that of the agency on the weight of the evidence on matters committed to agency discretion. *Id.* §§ 2001.174, 2001.175(e).

Under substantial evidence review, the reviewing court considers the reliable and probative evidence in the record as a whole when testing an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence. *Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envt'l Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied). Courts presume that the agency order is supported by substantial evidence. *Id.* The party challenging the order has the burden of proving otherwise. *Id.* "'Substantial evidence' does not mean a large or considerable amount of evidence, but such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Slay v. Tex. Comm'n on Envt'l Quality,* 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied). The test is not whether the agency made the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *Id.* The reviewing court should uphold an agency's finding even if the evidence preponderates against it, so long as enough evidence suggests the agency's determination was within the bounds of reasonableness. *Id.*

The reviewing court also considers whether an agency decision is arbitrary, capricious, or characterized by an abuse of discretion. Tex. Gov't Code § 2001.174(2)(F). An agency's decision is arbitrary or results from an abuse of discretion if the agency failed to consider a factor the legislature directs it to consider;

considered an irrelevant factor; or weighed only relevant factors but still reached a completely unreasonable result. *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994). In essence, the reviewing court determines whether the agency genuinely engaged in reasoned decision-making. *Heritage on San Gabriel*, 393 S.W.3d at 423.

An agency's interpretation of the statutes it is appointed to enforce and construe (like the TCAA) is also entitled to deference by the courts, so long as it is reasonable and not in conflict with the plain language. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). The same is true for an agency's constructions of its rules. *Phillips Petroleum Co. v. Tex. Comm'n on Envt'l. Quality*, 121 S.W.3d 502, 507 (Tex. App.—Austin 2003, no pet.). "Because the interpretation represents the view of the regulatory body that drafted and administers the rule, the agency interpretation, if reasonable, becomes a part of the rule itself." *Id.* at 508. Relevant to this appeal—concerning technical matters of air modeling, chemistry, and emissions control technology—"deference is particularly appropriate where the statutes and rules at issue concern a matter within the core expertise of the agency." *Wimberley Springs Partners, Ltd. v. Wimberley Valley Watershed Ass'n*, No. 03-13-00467-CV, 2017 WL 2229876, at *3 (Tex. App.—Austin May 19, 2017, no pet.) (mem. op.) (*citing Zimmer US, Inc. v. Combs*, 368

S.W.3d 579, 586 (Tex. App.–Austin 2012, no pet.) (deferring to Comptroller's interpretation of ambiguous tax statute)).

**ARGUMENT**

The Commission issued an air-quality permit to Port Arthur LNG authorizing it to operate the refrigeration compression turbines at its proposed LNG plant with a NOx emission limit of 9 ppmvd at 15% $O_2$ using DLN; and a CO emissions limit of 25 ppmvd at 15% $O_2$ using good combustion practices.[52] In in its final order issuing the permit, the Commission determined that these emissions limits and controls constitute BACT for Port Arthur LNG's proposed plant.[53] The Commission's determination is based on substantial evidence in the administrative record, and is not invalid, arbitrary, or unreasonable.

## I.    The Commission's decision to permit Port Arthur LNG at emissions limits that differ from the permitted limits for the yet-to-be-constructed Rio Grande LNG plant is reasonable, supported by substantial evidence, and consistent with TCEQ rules and guidance.

BACT is determined on a case-by-case basis.[54] 40 C.F.R. § 52.21(b)(12). While both EPA's top-down method and TCEQ's three-tier approach to BACT require TCEQ to consider recently issued permits,[55] neither method requires the

---

[52] ROA.6454.
[53] ROA.6436.
[54] *See also* ROA.8775.
[55] ROA.8771; ROA.8778.

Commission to match the lowest permitted limits for every later-permitted facility.[56] This is especially true when those limits have not yet been demonstrated in practice. As the Commission noted in its final order, a key concept inherent in both EPA and TCEQ's definition of BACT is that the proposed controls must be achievable.[57]

In this case, the record reflects that TCEQ conducted a thorough review of several recently permitted LNG facilities in Texas and throughout the United States, including Rio Grande LNG.[58] After considering the range of permitted control options, the Commission ultimately determined that the lower NOx and CO limits contained in Rio Grande LNG's permit did not constitute BACT for Port Arthur LNG's proposed plant because Rio Grande LNG was not yet operational and there was no operational data proving that the limits were achievable in practice.[59] Thus, the Commission determined that the lower limits were not "achievable" or "proven to be operational, obtainable, and capable of reducing or eliminating emissions" within the meaning of BACT.[60] 30 Tex. Admin. Code § 116.10(1); 40 C.F.R. § 52.21(b)(12). The Commission's interpretation and application of BACT to Port

---

[56] Likewise, TCEQ is not required to accept as BACT proposed limits that were recently approved when, for example, other control technology advancements should be considered. ROA.8778.
[57] ROA.6372.
[58] ROA.8676-78; ROA.8709.
[59] ROA.6372.
[60] ROA.6372.

Arthur LNG's application was reasonable, consistent with TCEQ rules, and supported by substantial record evidence.

## A.     BACT must be "achievable" and "proven to be operational."

BACT for any particular industry is not static and is subject to change over time.[61] However, while BACT is an ever-evolving concept, both the federal and state definitions require that the control method or emissions limitation be "achievable." 30 Tex. Admin. Code § 116.10(1) (defining BACT as "an air pollution control method for a new or modified facility that through experience and research, *has proven to be operational, obtainable, and capable of reducing or eliminating emissions* from the facility, and is considered technically practical and economically reasonable for the facility.") (emphasis added); 40 C.F.R. § 52.21(b)(12) (incorporated by 30 Tex. Admin. Code § 116.160(c)(1)(A)) (defining BACT, in part, as "an emissions … based on the maximum degree for each regulated NSR pollutant …which the reviewing authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, *determines is achievable* for such source…")(emphasis added). In the same vein, TCEQ's APDG 6110 guidance advises that BACT for PSD permits should be based on the "maximum degree of emission reductions (considering energy, environmental, and economic impacts)

---

[61] ROA.8775.

*achievable through application of production processes and available methods, systems, and techniques"*[62] (emphasis added).

Under Tier I of TCEQ's three-tier process, an applicant's BACT proposal must be at least equivalent to the emission reduction performance levels that were "previously accepted as BACT" in recent permit reviews for the same process or industry.[63] As a general principle, "the emissions reduction option(s) should have been successfully demonstrated in Texas and the United States."[64] However, there may be circumstances where an applicant must consider options that have not yet been successfully demonstrated.[65] In those cases, TCEQ's guidance instructs permit reviewers to consider factors such as the number of plants in Texas and the United States for the same industry, the quantity of emissions, the emissions reductions options considered, and the length of time since the last permit review.[66] Thus, where a recent permit contains an emission limit that has yet to be demonstrated in practice, that limit does not automatically establish a new BACT standard for the industry.

---

[62] ROA.8778.
[63] ROA.8771; ROA.8775.
[64] ROA.8776.
[65] ROA.8776.
[66] RAO.8776.

EPA's top-down method provides similar guidance regarding technology that has not yet been demonstrated in practice.  Step 2 of the top-down method provides that "each technology should be 'demonstrated' (previously installed and operated successfully on a similar facility); or if undemonstrated, then the applicant must determine whether the technology is both 'available' and 'applicable.'"[67] If a technology has not been demonstrated or found to be both available and applicable, it can be eliminated as a control option due to technically infeasibility.[68] EPA's NSR Workshop Manual notes that "a permit requiring the application of a certain technology or emission limit to be achieved for such technology *usually* is sufficient justification to assume the technical feasibility of that technology or emission limit."[69] (emphasis added) This indicates that inclusion of an emission limit in a permit may—but does not always—indicate that the limit is technically feasible. Thus, neither TCEQ's three-tier method nor EPA's top-down method require that an undemonstrated limit be considered BACT on an industry-wide basis simply because that limit has been included in another permit.

In fact, TCEQ guidance specifically contemplates that there will be situations where an applicant proposes, and the Commission accepts, limits that exceed the

---

[67] ROA.8798.

[68] ROA.8798.

[69] ROA.8892.

established BACT.[70] APDG 61110 provides that applicants may propose controls and limits that are "beyond BACT," meaning that they will result in emissions reductions that are greater than accepted BACT.[71] But the issuance of a permit at a level that is "beyond BACT" does not, in and of itself, establish a new BACT standard for the industry.[72] As the Commission noted in its final order, "[t]he permitting of new technologies and controls is an important step to ensure that BACT evolves as technology progresses, but the change in BACT occurs after the controls have been demonstrated to be achievable."[73]

While BACT is continually evolving, it is not instantaneous. Limits that are permitted as "beyond BACT" must be given the opportunity to be demonstrated in practice and proven to be achievable before being generally accepted as BACT and imposed upon the entire industry. As TCEQ's expert witness Dr. Ben Hansen testified, "a key part of what drives…the lowering of the BACT determination is when a technology is demonstrated to be used and to produce the results in practice, it doesn't make sense for us to require a type of technology or a level of control that hasn't been demonstrated to be effective and to actually work in practice."[74]

---

[70] ROA.8772.
[71] ROA.8772.
[72] ROA.13553-54.
[73] ROA.6372.
[74] *See* ROA.13547.

Consistent with TCEQ rules and guidance, the Commission interprets BACT to require the use of emissions controls that are achievable or proven to be operational, obtainable, and capable of reducing or eliminating emissions.[75] In most cases, this means that the technology or limit has been successfully demonstrated in practice.[76] While both TCEQ's three-tier method and EPA's top-down method provide for consideration of options that have not yet been demonstrated in practice, neither method *requires* that the undemonstrated option be accepted as BACT. Rather, under both methodologies, BACT is determined on a case-by-case basis taking into consideration the factors identified in the guidance and the individual facts and circumstances of the application.[77]

### B. The Commission's interpretation and application of BACT to Port Arthur LNG's permit application was reasonable and consistent with TCEQ rules.

The Commission's BACT analysis for Port Arthur LNG's permit application was proper and consistent with TCEQ rules and guidance. Both TCEQ guidance (APDG 6110) and EPA guidance (NSR Manual) require the Commission to consider recently permitted emissions limits within Texas and the United States when determining BACT.[78] The Commission did so by considering a number of recently

---

[75] ROA.6445.

[76] ROA.8776.

[77] *See* ROA.8776; ROA.8798.

[78] ROA.8775; ROA.8778.

issued permits for LNG plants, including Rio Grande LNG.[79] Upon consideration of those permits, the Commission ultimately determined that the limits in Rio Grande LNG's permit did not set the standard for what has been "previously accepted as BACT" because those limits have not been shown to be achievable.[80] This determination was consistent with TCEQ's rules and guidance on BACT, which provide that the limit or control must be "achievable" and "proven to be operational, obtainable, and capable of reducing or eliminating emissions." 30 Tex. Admin. Code § 116.10(1); 30 Tex. Admin. Code § 116.160(c)(1)(A)) (incorporating 40 C.F.R. § 52.21(b)(12)). Importantly, neither EPA's top-down method nor TCEQ's EPA-approved three-tier method require that the lowest permitted limit from recent permit reviews be accepted as BACT across the board, especially when that limit has yet to be demonstrated in practice.[81]

A BACT proposal must include emission controls that are "at least equivalent to those *previously accepted as BACT*."[82] Although the record reflects that Rio Grande LNG was recently permitted at lower NOx and CO emissions limits for their refrigeration compression turbines, the Commission reasonably determined that those limits did not redefine the standard for BACT because they had not yet been

---

[79] ROA.6362; ROA.8676.
[80] ROA.6372-73.
[81] *See* ROA.8775; ROA.8798.
[82] ROA.8775 (emphasis added).

demonstrated to be achievable.[83] Those limits exceeded what the Commission has previously accepted as BACT and were actually beyond BACT. This is consistent with TCEQ's guidance, which provides that the control options identified under Tier I should have been successfully demonstrated in Texas and the United States.[84]

While TCEQ's guidance acknowledges that there will be cases where the applicant may need to consider options that have not yet been successfully demonstrated,[85] it does not require that the undemonstrated controls be accepted as BACT simply because they have been recently permitted. "Determination of these cases will depend on factors such as…the quantity of emissions, the emissions reductions options considered, and the length of time since the last permit review."[86] In this case, the timing of the recent permit reviews is particularly important. Rio Grande LNG did not even apply for the permit amendment authorizing the lower NOx and CO limits until July 2020,[87] after TCEQ had already completed its technical review of Port Arthur LNG's application and issued the draft permit.[88] And Rio Grande LNG did not receive the actual permit amendment until November

---

[83] ROA.6372; *see also* ROA.8684-85.
[84] ROA.8776.
[85] ROA.8776.
[86] ROA.8776.
[87] ROA.12877-83.
[88] ROA.415-16.

2020.[89] Given that Rio Grande LNG applied for and received the permit amendment authorizing the lower emission limits during the pendency of Port Arthur LNG's permit application, it was reasonable for the Commission to conclude that the undemonstrated limits in Rio Grande LNG's permit did not represent BACT for Port Arthur LNG's application. At the time the Commission considered Port Arthur LNG's permit application, Rio Grande LNG had not been constructed[90] and there was no guarantee that it would ever be constructed and operated at the newly permitted limits.

Nonetheless, PACAN argues that Rio Grande LNG's permitted limits must be considered achievable under EPA's top-down approach to BACT—even though they have not been demonstrated in practice—because the technology approved in the permit is both "available" and "applicable." App. Br. at 53. In PACAN's view, the Commission must accept Rio Grande LNG's limits as BACT under EPA's guidance simply because those limits were contained in a recently issued permit using similar technologies and processes. While EPA's guidance indicates that a permit requiring a certain emission limit is *usually* sufficient to assume the technical feasibility of that limit, it does not dictate that such a limit should *always* be

---

[89] *See* ROA.13106-07.
[90] ROA.11107.

considered technically feasible.[91] And, in any case, TCEQ is not bound by EPA's guidance.

PACAN is also wrong that Texas's SIP "binds" the Commission to EPA guidance regarding PSD permits, citing a Federal Register notice of EPA's proposed rule approving Texas's PSD program into the SIP. App. Br. at 38. But this is not true. In fact, in response to comments expressing concern about the very language in the notice cited by PACAN, EPA expressly disclaimed such an intent and stated that the language "is neither a part nor a condition of EPA's approval of the Texas PSD SIP, and *it has no binding effect*." 57 Fed.Reg. 28094-28095. EPA further clarified that "EPA's interpretations often are intended in whole or in part to guide only EPA regional offices, and in such instances *they have no implications whatsoever for a state's administration of its program*." 57 Fed. Reg. 28095. Thus, TCEQ is not required to follow EPA's guidance in the NSR Manual. In this regard, the caselaw cited by PACAN interpreting and applying the NSR manual is not determinative in this case.

But even if the EPA guidance was applicable, PACAN's interpretation finds no support in the administrative record. PACAN suggests that Rio Grande LNG's 2020 permit amendment application includes a vendor guarantee showing that the GE Frame 7EA turbines are capable of meeting a NOx emission rate 'less than

---

[91] ROA.8892.

5ppm' using DLN. App. Br. at 53.  Whether or not that is true regarding Rio Grande LNG's application (which is not part of the administrative record),[92] the testimony in this record shows that the representation of a NOx emission rate of less than 5 ppm was contained in a data sheet, not a vendor guarantee.[93] And this record contains no testimony of a vendor guarantee that the control technology selected by Rio Grande LNG can meet a CO emission limit of 15 ppmv. Accordingly, it was not unreasonable for the Commission to determine that the undemonstrated limits in Rio Grande LNG's newly issued permit amendment were not achievable within the meaning of BACT.

### C. The Commission's determination of BACT for CO and NOx emission limits is supported by substantial evidence in the administrative record.

TCEQ's air permitting staff conducted a thorough technical review of Port Arthur LNG's application using both EPA's top-down method and TCEQ's three-tier method.[94] Under both methods, technical staff reached the same conclusion: Port Arthur's proposed NOx limit of 9 ppmvd and CO limit of 25 ppmvd were

---

[92] Under the Texas APA, review is limited to the record before the Agency.  *See Reliant Energy, Inc. v. Pub. Util. Comm'n of Tex.*, 153 S.W.3d 174, 199-200 (Tex. App.—Austin 2004, pet. denied) (the court's duty is to assess the reasonableness of the agency's action in the present case, regardless of the agency's actions in prior cases).

[93] ROA.13524-26.

[94] ROA.8680-81; ROA. 8684.

consistent with levels accepted as BACT.[95] PACAN argues that the Commission's BACT determination was insufficient because it failed to consider a CO limit of 15 pmmvd and a NOx limit of 5 pmmvd, as authorized in Rio Grande LNG's amended permit. The record reflects that the Commission did review and consider the limits in Rio Grande LNG's permit, but ultimately determined that those limits did not control BACT in this case. The Commission's BACT determinations are supported by substantial record evidence.

TCEQ's BACT review in this case was conducted by Dr. Ben Hansen, a senior engineer in the Air Permits Division.[96] Dr. Hansen testified that his review included a comparison of Port Arthur's proposed controls to those of other recent permits/applications for similar LNG projects in Texas and the United States, including Rio Grande LNG.[97] Dr. Hansen also consulted the EPA's RACT/BACT/LAER Clearinghouse, which lists control technologies and emissions for limits for recently permitted projects throughout the United States.[98] Based on his review, Dr. Hansen determined that Port Arthur LNG's "proposed control methods are similar to those of recently issued permits" and its proposed CO and NOx limits are "within the range of values permitted for similar installed

---

[95] ROA.8684-86; ROA.8709.
[96] ROA.8668-70.
[97] ROA.8676.
[98] ROA.8677.

facilities."[99] He also determined that the use of oxidation catalyst for CO control should be eliminated as economically unreasonable,[100] as should the use of SCR to control NOx emissions.[101] Accordingly, Dr. Hansen concluded that a CO emission limit of 25 ppmvd using good combustion practices and a NOx emission limit of 9 ppmvd using DLN were BACT for Port Arthur LNG's refrigeration compression turbines.[102]

While the record shows that Rio Grande LNG's permit contains lower NOx and CO emissions limits, the Commission ultimately determined that those limits are not achievable within the meaning of BACT and thus did not establish BACT for Port Arthur LNG's application.[103] A key component of a BACT determination is that the technology should be demonstrated and achievable.[104] As Dr. Hansen testified, it does not make sense to rely on technology proposed by facilities that are not yet operational; BACT "needs to be an established technology."[105] Rio Grande LNG is not operational[106] and the controls proposed in their permits have not been demonstrated to achieve the permitted limits in practice. Dr. Hansen explained that

---

[99] ROA.8677; ROA.8682.
[100] ROA.8684.
[101] ROA. 8684.
[102] ROA.8684-86.
[103] ROA.6435-36; ROA.8676-84.
[104] ROA.8776; ROA.13547-48.
[105] ROA.8685; *see also* ROA.13547.
[106] ROA.11107.

when it comes to BACT, "it does matter if [a control option has] been used in practice, and it's not enough that it's been proposed."[107] Thus, the Commission reasonably determined in this case that Rio Grande LNG's yet-to-be demonstrated limits did not set the standard for BACT.

The Commission's BACT determination is further supported by TCEQ's air permitting guidance, which provides for selection of a control option that is at least equivalent to those *previously accepted as BACT*.[108] The proposed control option "should have been successfully demonstrated Texas and the United States."[109] If the proposed limit meets this requirement (*i.e.*, it is consistent with levels previously accepted as BACT), then the proposal may be accepted as BACT.[110] Dr. Hansen's testimony in this case shows that Port Arthur LNG's permitted limits are consistent with levels that have previously been demonstrated and accepted as BACT.[111] Additionally, APDG 6110 provides that an applicant may propose controls that are "beyond accepted BACT (*i.e.*, resulting in emission reductions that are higher than accepted BACT)."[112] Taken altogether, the guidance supports the Commission's conclusion that the limits

---

[107] ROA.13458.
[108] ROA.8775.
[109] ROA.8776.
[110] ROA.8776.
[111] ROA.8677; ROA.8682.
[112] ROA.8772.

proposed by Port Arthur LNG are consistent with those previously accepted as BACT, whereas the limits in Rio Grande LNG's permit are actually "beyond BACT."

TCEQ reviewed a variety of materials—including other LNG permits, EPA's RACT/BACT/LAER Clearinghouse database, TCEQ's APDG 61110 guidance, and EPA's NSR Workshop Manual—in evaluating and approving Port Arthur LNG's BACT proposal. Based on the available data and record as a whole, the Commission determined that the proposed limits of 9 ppmvd for NOx and 25 ppmvd for CO met BACT for Port Arthur LNG's proposed plant. This determination is supported by substantial evidence.

## II.    The Commission properly limited its consideration of Port Arthur LNG's application to the record developed in the contested-case proceeding.

PACAN cites the letter written by Mr. Garcia, a staff member in EPA's regional office, to support its position that Rio Grande LNG's recently permitted emissions limits establish BACT even though those limits have not been demonstrated achievable in practice. App. Br. at 56-57. But this letter was never part of the administrative record developed before the agency and cannot be considered by this Court on appeal. Mr. Garcia did not send his letter until August 31, 2022[113]— five months after the record of the contested-case proceeding closed and just a week

---

[113] ROA.24530.

before the Commission would consider the application at an open Agenda Meeting. Accordingly, the letter was not part of the record of administrative proceedings developed before the ALJ and could not properly be considered by the Commission when acting on the application. Tex. Gov't Code § 2003.047(m). Because the letter was not and could not be considered by the agency when it issued its final order, it is not part of the administrative record on appeal. *Id.* § 2001.060.

Had PACAN wished this letter become part of the record, it could have moved to refer the matter back to the State Office of Administrative Hearings ALJ to receive additional evidence. *Id.* § 2003.047(m). This would have allowed Port Arthur or TCEQ's Executive Director to introduce contravening evidence, conduct necessary discovery, or address the matter in its briefing. Because PACAN failed to do so, it deprived both the Commission, Tex. Gov't Code § 2003.047(m), and now, the Court, *id.* §§ 2001.060, 2001.175(e), of the ability to consider Mr. Garcia's letter.

Instead, PACAN merely attached the letter to its motion for rehearing after the Commission adopted the final order.[114]  But attaching a document to a motion for rehearing does not make it part of the administrative record. The Commission properly did not rely on this evidence and reviewed the application solely on the

---

[114] ROA.24529-34.

record before it. *See, e.g.*, *Reliant Energy, Inc. v. Pub. Util. Comm'n of Tex.,* 153 S.W.3d 174, 196-197 (Tex. App.—Austin 2004, pet. denied) (upholding agency's denial of request to reopen evidence where moving party did not seek to supplement the record until after the agency order was issued).

But even if the letter had been properly admitted into the record, it would not establish error in the Commission's final order in this case. Mr. Garcia's letter discusses his interpretation of EPA's guidance on BACT.[115] Neither the letter nor the guidance document discussed therein bind the Commission—they are both non-regulatory and thus, do not establish binding legal requirements. *See* 57 Fed. Reg. 28094-28095; *see also Friends of Dry Comal Creek*, 2022 WL 4540955 at 8. While the letter is informative and may spark discourse between the agencies regarding the application of BACT in TCEQ's PSD permitting program, it does not dictate any particular outcome with respect to the Commission's application of BACT to Port Arthur LNG's permit application. The Commission properly applied TCEQ rules and guidance in determining BACT for Port Arthur LNG's proposed plant. Thus, even if Mr. Garcia's letter were properly before this Court on appeal, it would not establish reversible error in the Commission's final order.

---

[115] ROA.24529-34.

## CONCLUSION

The Commission's final order issuing an air-quality permit to Port Arthur LNG to construct and operate an LNG export facility is supported by substantial evidence in the record and is not invalid, arbitrary, or unreasonable. Accordingly, TCEQ and Jon Niermann, in his official capacity as Chairperson of TCEQ, respectfully request that the Court deny PACAN's petition for review.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

*/s/ Erin K. Snody*
ERIN K. SNODY
Assistant Attorney General
State Bar No. 24093056
Erin.Snody@oag.texas.gov

J. AMBER AHMED
Assistant Attorney General
State Bar No. 24080756

Amber.Ahmed@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
Phone: (512) 475-4019
Fax: (512) 320-0911

***Attorneys for Respondents the TCEQ and
Jon Niermann in his Official Capacity as
Chairperson of the TCEQ***

## CERTIFICATE OF SERVICE

I certify that on March 24, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Colin Cox
ENVIRONMENTAL INTEGRITY PROJECT
1206 San Antonio Street
Austin, Texas 78701
colincox@environmentalintegrity.org

Amy Catherine Dinn
Natasha Bahri
Chase Porter
LONESTAR LEGAL AID
1415 Fannin Street
Houston, Texas 77002
adinn@lonestarlegal.org
nbahri@lonestarlegal.org
cporter@lonestarlegal.org

*Attorneys for Petitioners*

Derek McDonald
BAKER BOTTS LLP
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
derek.mcdonald@bakerbotts.com

Aaron M. Streett
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
aaron.streett@bakerbotts.com

*Attorneys for Intervenor*

*/s/ Erin K. Snody*
Erin K. Snody

### CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,644 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows in the Equity Text A font 14-point type face.

*/s/ Erin K. Snody*
Erin K. Snody

### CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that, in the foregoing brief using the Fifth Circuit CM/ECF document filing system, 1) required privacy redactions have been made, 5TH CIR. R. 25.2.13; 2) the electronic submission is an exact copy of the paper document, 5TH CIR. R. 25.2.1; and 3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Erin K. Snody*
Erin K. Snody

Dated: March 24, 2023