No. 22-60556

# In the United States Court of Appeals
# for the Fifth Circuit

PORT ARTHUR COMMUNITY ACTION NETWORK,

*Petitioner*,

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; AND JON NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

*Respondents.*

On Appeal from Texas Commission on Environmental Quality
Docket No. 2021-0942-AIR

## REPLY BRIEF OF APPELLANT
## PORT ARTHUR COMMUNITY ACTION NETWORK

Amy Catherine Dinn
Texas Bar No. 24028601
Chase Porter
Texas Bar No. 24102368
Lone Star Legal Aid
1415 Fannin Street
Houston, TX 77002
713-652-0077 ext 8108
adinn@lonestarlegal.org
cporter@lonestarlegal.org

Colin Cox
Texas Bar No. 24101653
Environmental Integrity Project
1206 San Antonio Street
Austin, TX 78701
832-316-0580
colincox@environmentalintegrity.org

*Counsel for Petitioner-Appellant Port Arthur Community Action Network*

# TABLE OF CONTENTS

**Contents**                                                                **Page(s)**

TABLE OF CONTENTS.......................................................................ii

GLOSSARY OF ACRONYMS AND ABBREVIATIONS...............................iv

TABLE OF AUTHORITIES .................................................................v

SUMMARY OF THE ARGUMENT .....................................................1

ARGUMENT .................................................................................2

    I.   FEDERAL BACT APPLIES TO PORT ARTHUR LNG.......................................2

        A.  Texas Cannot Adopt a Less Stringent BACT Definition for Major Sources..........................................................................3

        B.  Federal And State Courts Apply BACT To Major Sources..................4

    II.  FEDERAL BACT REQUIRES TCEQ TO CONSIDER LOWER EMISSION LIMITS AT RIO GRANDE LNG.......................................6

        A.  Rio Grande LNG's Lower Emission Limits must be Considered per EPA's BACT Guidance. ...............................................7

        B.  Rio Grande LNG's Lower Emission Limits must be Considered per TCEQ's BACT Guidance. ...........................................9

        C.  Operational Data is not Required. ........................................10

        D.  PALNG's own Permit Application Relies on Comparisons to Permitted Plants Without a History of Operational Data...................11

        E.  Rio Grande LNG was not Permitted "Too Late" in Port Arthur LNG's own Process. ...............................................14

    III.  RESPONDENTS AND INTERVENOR FAILED TO CONSIDER RIO GRANDE LNG'S LOWER BACT LIMITS. ....................................16

A.  The Record Reflects that TCEQ Failed to Consider the Lower Limits at any Stage of these Proceedings. ...............................16

B.  TCEQ and PALNG admit they did not Consider Rio Grande LNG. ..........................................................................................19

C.  While Rio Grande LNG's More Stringent Limits are not Necessarily BACT for Port Arthur LNG, the Law Requires their Consideration. ...............................................................20

D.  The Failure to Consider Rio Grande LNG and Document that Consideration is a Fatal Flaw in the Final Order. ...............................20

IV. THE EPA LETTER RELATES TO THIS PERMIT APPLICATION AND THE COMMISSION RECEIVED IT BEFORE THE FINAL ORDER. ......................21

A.  TCEQ Misdirects the Court Because the Administrative Record for this Proceeding is Broader than what was before the ALJs. ...............................................................22

B.  The EPA Letter Only Restates Published EPA Guidance from the NSR Manual Which is Persuasive Authority on the Application of BACT to this Permit. ...................................................23

V.  PACAN HAS STANDING TO CHALLENGE PORT ARTHUR LNG'S CARBON MONOXIDE POLLUTION. ...................................................25

CONCLUSION .................................................................30

CERTIFICATE OF SERVICE ...........................................32

CERTIFICATE OF COMPLIANCE .................................33

# GLOSSARY OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| ALJ | Administrative Law Judge |
| ADG 6110 | TCEQ's Air Permit Reviewer Reference Guide |
| BACT | Best Available Control Technology |
| CO | Carbon Monoxide |
| Commission / TCEQ | Texas Commission on Environmental Quality |
| DLN | Dry Low $NO_x$ |
| EPA | U.S. Environmental Protection Agency |
| EPA Letter | August 31, 2022 Letter from EPA to TCEQ |
| ED | Executive Director |
| FCAA | Federal Clean Air Act |
| Final Order | Commission's September 15, 2022 Order |
| LAER | Lowest Achievable Emission Rate |
| LNG | Liquefied Natural Gas |
| NAAQS | National Ambient Air Quality Standards |
| $NO_x$ | Nitrogen Oxides |
| NSR | New Source Review |
| NSR Manual | EPA's New Source Review Workshop Manual |
| PACAN | Port Arthur Community Action Network |
| PFD | Proposal for Decision |
| PM | Particulate Matter |
| PSD | Prevention of Significant Deterioration |
| PALNG / Applicant / Intervenor | Port Arthur LNG, LLC |
| ppm | parts per million |
| SIP | State Implementation Plan |
| TCAA | Texas Clean Air Act |

# TABLE OF AUTHORITIES

**Cases**

*Blue Skies Alliance v. Texas Comm'n on Envtl. Quality,*
  283 S.W.3d 525 (Tex. App.—Amarillo 2009, no pet.)..........................................5

*City of Quincy, Mass. v. Mass Dep't of Envtl. Prot.,*
  21 F.4th 8 (1st Cir. 2021) ......................................................24

*CleanCOALition v. TXU Power,*
  536 F.3d 469 (5th Cir. 2008) .................................................4

*Friends of Buckingham v. State Air Pollution Control Bd.,*
  947 F.3d 68 (4th Cir. 2020)...................................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ....................................................... 25, 28

*Helping Hand Tools v. U.S. Envtl. Prot. Agency,*
  848 F.3d 1185 (9th Cir. 2016)...............................................24

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ....................................................... 25, 27, 30

*Michigan v. U.S. E.P.A.,*
  581 F.3d 524 (7th Cir. 2009).................................................24

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott,*
  647 F.3d 202 (5th Cir. 2011) ................................................ 28, 29

*Save Our Cmty. v. U.S. E.P.A.,*
  971 F.2d 1155 (5th Cir. 1992)...............................................26

*Sierra Club v. Cedar Point Oil Co. Inc.,*
  73 F.3d 546 (5th Cir. 1996)................................................ 26, 28

*Sierra Club v. Morton,*
  405 U.S. 727 (1972) .........................................................25

*Sierra Club v. U.S. E.P.A.,*
  499 F.3d 653 (7th Cir. 2007)................................................24

v

*Texas Comm'n on Envtl. Quality v. Friends of Dry Comal Creek,*
  No. 03-21-00204-CV, 2023 WL 2733426 (Tex. App.—Austin, Mar. 31, 2023,
  no pet. hist.) ..................................................................................................5

*TransUnion LLC v. Ramirez,*
  159 U.S. — , 141 S.Ct. 2190 (2021) ...................................................................28

*United States v. Luminant Generation Co., L.L.C.,*
  905 F.3d 874 (5th Cir. 2018) ............................................................................4, 5

**Statutes**

30 TEX. ADMIN. CODE § 116.111(a) (1999)..................................................................5

30 TEX. ADMIN. CODE § 116.111(a)(2)(C) (1999)........................................................3

30 TEX. ADMIN. CODE § 80.275 (1996) ......................................................................22

30 TEX. ADMIN. CODE § 80.275(b) (1996)..................................................................22

30 TEX. ADMIN. CODE §116.160(c)(1)(A) (1993) ........................................................3

42 U.S.C. § 7479(3) (1990) ..................................................................................3, 4

TEX. GOV'T CODE § 2001.060 (1993)........................................................................22

TEX. GOV'T CODE § 2003.047(i-2)(2) (2015) .............................................................18

TEX. GOV'T CODE § 2003.047(i-3) (2015)..................................................................18

**Regulations**

40 C.F.R. § 51.165(a)(1)(xl) (2021) ............................................................................3

40 C.F.R. § 51.166(b) (1978)......................................................................................3

40 C.F.R. § 52.21(b)(12) (1978)..............................................................................3, 5

Approval and Promulgation of Implementation Plan State of Texas Prevention of
  Significant Deterioration, 57 Fed. Reg. 28093 (June 24, 1992)(to be codified at
  40 C.F.R. Part 52)..................................................................................................21

# SUMMARY OF THE ARGUMENT

The Federal BACT definition governs this major-source facility. TCEQ's misapplication of Texas' minor-source BACT definition in an attempt to narrow the scope of the BACT analysis is unlawful.

In this Federal BACT analysis, TCEQ and PALNG are required to review pollution limits at similar, recently permitted plants, and either match the most stringent of those limits or demonstrate why they are unable, for technical or economic reasons, to match those limits. This method is established TCEQ practice and is laid out in great detail in EPA and TCEQ guidance. Respondents and Intervenor now seek to distance themselves from this essential Federal BACT requirement, despite the fact that they trusted those very guidance documents in preparing this permit.

TCEQ and PALNG failed to consider the more stringent pollution limits at an already permitted LNG plant using the same turbines and the same type of controls, despite the fact that TCEQ itself found those limits were technically achievable and economically reasonable and thus BACT for that facility. TCEQ's failure to consider those more stringent limits is a fatal flaw in PALNG's BACT analysis, and, following an administrative hearing on this issue, the ALJs found the analysis legally deficient and recommended more stringent permit limits for the plant.

In its Final Order, the Commission fabricated the requirement that a facility be operational before its limits must be considered in a Federal BACT analysis. The Commission used this fabrication to justify TCEQ's failure to consider the more stringent pollution limits in the record. The Commission's justification here is contrary to Federal and Texas law, contrary to EPA and TCEQ's own guidance on BACT, and contrary to TCEQ and PALNG's process and statements evidenced in hearing and in PALNG's permit application.

The Commission's Final Order is thus invalid, arbitrary, and unreasonable. In their briefs, Respondents and Intervenor attempt to distract the Court from TCEQ's failure to follow its own procedure, the arbitrary decisions it made in issuing this permit against the recommendation of the ALJs, and the unlawful justification the Commission offered to cover its tracks.

# ARGUMENT

## I. FEDERAL BACT APPLIES TO PORT ARTHUR LNG.

The Federal BACT definition applies to Port Arthur LNG. TCEQ and PALNG concede that the Federal definition applies.[1] At odds with their concessions, both erroneously insist that the Texas BACT definition also applies here. Their arguments in favor of using the Texas definition to limit the scope of the BACT review are contrary to the plain language of the Federal and Texas Clean Air Acts, contrary to

---

[1] Respondents' Brief at 6-7; Intervenor's Brief at 8, 24.

Texas' SIP, and contrary to precedent in this Court and state courts that have reviewed BACT determinations in Texas.

The FCAA makes certain that major sources — that is, sources subject to PSD permitting — must apply the Federal definition of BACT at 42 U.S.C. § 7479(3) (1990) and 40 C.F.R. § 52.21(b)(12) (1978).

Texas law explicitly incorporates the § 52.21(b)(12) Federal BACT definition for major sources at 30 Tex. Admin. Code §116.160(c)(1)(A) (1993). And Texas law mandates the application of the Federal BACT definition to major sources at 30 Tex. Admin. Code § 116.111(a)(2)(C) (1999).

## A.     Texas Cannot Adopt a Less Stringent BACT Definition for Major Sources.

The FCAA is positive that, for major sources, states cannot adopt a definition of BACT that is less stringent than the Federal definition. 40 C.F.R. § 51.166(b) requires all State Implementation Plans to use the Federal BACT definition for major sources and states that deviations will be approved only "if the State specifically demonstrates that the submitted definition is more stringent, or at least as stringent, in all respects." 40 C.F.R. § 51.166(b) (1978); *see also* 40 C.F.R. § 51.165(a)(1)(xl) (2021).

Here, TCEQ attempts, wrongly, to use the Texas BACT definition to narrow the scope of the BACT analysis and justify its failure to consider pertinent

comparisons in the BACT analysis.[2] This error results in a permit that emits 80% more pollution compared to permitted LNG plants operating the same turbines in the same configuration with the same type of pollution control technology.[3] TCEQ's improper application of this minor-source Texas definition to this major source results in a significantly less stringent BACT limit, inconsistent with the plain language of the FCAA.

The law here is patent. The Federal BACT definition applies to major sources like Port Arthur LNG. Judicial precedent is also clear. This Court and Texas state courts utilize Federal BACT for all major sources.

## B.     Federal And State Courts Apply BACT To Major Sources.

When this Court reviewed BACT determinations for major sources in Texas, it applied the Federal BACT definition. *United States v. Luminant Generation Co., L.L.C.,* 905 F.3d 874, 878 (5th Cir. 2018)(in examining claims related to the failure to install BACT by a source subject to major source regulations, this Court applied the Federal definition of BACT at 42 U.S.C. § 7479(3)); *CleanCOALition v. TXU Power,* 536 F.3d 469, 477 (5th Cir. 2008) (when reviewing BACT rules for a major source, this Court cited only the portion of Texas' SIP that requires the State to apply

---

[2] ROA.6372.
[3] ROA.6381; ROA.12880.

4

the Federal BACT definition, 30 Tex. Admin. Code § 116.111(a) (1999) (quoted above)).

And just as this Court applies the Federal BACT definition, and only the Federal BACT definition, to major sources like Port Arthur LNG, so too do Texas state courts. *Blue Skies Alliance v. Texas Comm'n on Envtl. Quality,* 283 S.W.3d 525, 534 (Tex. App.—Amarillo 2009, no pet.)(reviewing BACT analysis for a major source, the court applied the Federal BACT definition at 40 C.F.R. § 52.21(b)(12)). "Thus, ascribing the common meaning to the words used in the BACT definition, we conclude that a BACT analysis must consider any control technology that may be applied to the proposed facility…." *Id.* at 535.

By contrast, when reviewing BACT for minor sources not subject to major-source, PSD regulations, state courts use the minor-source Texas BACT definition. *Texas Comm'n on Envtl. Quality v. Friends of Dry Comal Creek,* No. 03-21-00204-CV, 2023 WL 2733426, at *1 (Tex. App.—Austin, Mar. 31, 2023, no pet. his.)(applying the Texas BACT definition to a minor source and distinguishing the minor-source BACT analysis from the more "extensive requirements" for major sources in *Luminant*).

Courts, including this one, have repeatedly applied the Federal BACT definition to major sources and only referenced Texas BACT for minor sources. There are no cases in which a Federal or State court has applied the minor-source

Texas BACT definition to a major source, and Intervenor and Respondents cite no authority for their argument that Texas BACT can be used here to limit the universe of sources that must be considered in a Federal BACT analysis.

TCEQ's unlawful application of the minor-source Texas BACT definition to the major-source Port Arthur LNG in the Final Order must be rejected as invalid, arbitrary, and unreasonable.

## II.  FEDERAL BACT REQUIRES TCEQ TO CONSIDER LOWER EMISSION LIMITS AT RIO GRANDE LNG.

Respondents and Intervenor argue Rio Grande LNG's BACT emission limits of 5 ppm $NO_x$ with Dry Low $NO_x$ ("DLN") and 15 ppm CO with good combustion practices are irrelevant to Port Arthur LNG's BACT analysis and ultimate determination because Rio Grande LNG was not operational. Both argue that a history of operational data is essential before they must consider it as a relevant option in a BACT analysis. Their argument is contrary to the Federal BACT definition, TCEQ's BACT guidance, EPA's BACT guidance, and TCEQ's and PALNG's own statements.

The law, Federal and state guidance, and agency practice evidence that previously *permitted* facilities — and no party disputes that Rio Grande LNG was permitted with significantly lower pollution limits for $NO_x$ and CO well before TCEQ's issuance of Port Arthur LNG's permit — must be considered in a BACT analysis, regardless of whether the facility is in operation. TCEQ admits: "both

EPA's top-down method and TCEQ's three-tier approach to BACT require TCEQ to consider recently issued permits."[4]

## A. Rio Grande LNG's Lower Emission Limits must be Considered per EPA's BACT Guidance.

"[A]t the outset [of the EPA's Top-Down method], applicants should initially identify all control options with potential application to the emissions unit under review."[5] This initial identification should be a broad, good faith survey of the full range of potential options,[6] provided those technologies are "available" (those "with a practical potential for application to the emission unit and the regulated pollutant under evaluation"[7]).

Applicants must next ensure all identified options are "technical[ly] feasible."[8] Respondents and Intervenor latch onto this step to argue that Rio Grande LNG's lower limits need not be considered as BACT because that facility is not yet operational. While Port Arthur LNG's BACT analysis might be more "straightforward"[9] if Rio Grande LNG was operating, both parties obscure the rest of the analysis. If a technology has not "been installed and operated successfully on the type of source under review,"[10] the analysis does not end there. Instead, it

---

[4] Respondents' Brief at 36.
[5] ROA.10739; ROA.10737.
[6] ROA.10743.
[7] ROA.10737.
[8] ROA.10749.
[9] ROA.10749.
[10] ROA.10749.

continues to the question of whether the technology is "available" and "applicable."[11] Available technology is that which "can be obtained…through commercial channels" and applicable technology is that which "can reasonably be installed and operated on the source type under consideration."[12]

It is worth restating the obvious here, that neither party claims the *technology* is unavailable or inapplicable. Port Arthur LNG will use the same technology, DLN for $NO_x$ and good combustion practice for CO, as Rio Grande LNG. The dispute concerns whether Port Arthur LNG must meet the same limits that TCEQ has proscribed for similar permitted facilities. When reviewing technologies with a range of emissions performance levels, "the most effective level of control must be considered in the BACT analysis."[13] To identify technically feasible performance levels, "the applicant should use the most recent regulatory decisions."[14] "[I]t is presumed that the source can achieve the same emission reduction level as another source" absent a showing of compelling differences. When an applicant rejects a lower emission limit permitted at another facility, "the BACT analysis must be documented in the application."[15] In the absence of a showing of compelling differences between the proposed source and a "previously *permitted*" source, "the

---

[11] ROA.10749.
[12] ROA.10749.
[13] ROA.10755-56.
[14] ROA.10755.
[15] ROA.10756.

8

permit agency should conclude that the lower emissions limit is representative for that control alternative."[16]

Under the EPA's methodology, which PALNG used in its application and which TCEQ utilized in its evaluation, both must consider the previously permitted emission limits of 5 ppm $NO_x$ and 15 ppm CO. Rejection of those lower limits must be clearly documented on grounds of technical infeasibility or economic unreasonableness. Those lower limits cannot be ignored simply because Rio Grande LNG was not yet operational at the time Port Arthur LNG's permit was issued — that is not a relevant factor in the Top-Down method.

### B.     Rio Grande LNG's Lower Emission Limits must be Considered per TCEQ's BACT Guidance.

TCEQ's BACT guidance similarly requires consideration of all potentially applicable controls. "Failure to consider all potentially applicable control alternatives constitutes an incomplete BACT analysis."[17]

"Potentially applicable control alternatives" includes recently permitted limits on similar sources, like Rio Grande LNG, which operates the same model of turbine using the same liquefaction process and the same type of control technology as proposed for Port Arthur LNG.[18] Further, "[i]f any new or previously unconsidered emission reduction options [are] identified *during* the permit review, the permit

---

[16] ROA.10756. (emphasis added).
[17] ROA.11064.
[18] ROA.11089.

reviewer should instruct the applicant to perform a detailed technical and economic analysis of the identified option(s)."[19]

No party claims that the limits permitted for Rio Grande LNG are not at least "potentially applicable" to Port Arthur LNG. Applicant and TCEQ were therefore required to perform a detailed analysis of the more stringent $NO_x$ and CO limits in Rio Grande LNG's permit and vendor guarantee.[20] This consideration would have included a detailed analysis of the technical feasibility and economic reasonableness of those significantly more stringent limits.

It is essential to recognize that TCEQ has already determined that the lower $NO_x$ and CO limits at Rio Grande LNG are in fact achievable for that source using identical turbines.[21]

### C.    Operational Data is not Required.

Respondents' assertion that an emission limit does not become BACT until it has been in operation is contradicted by TCEQ's own guidance, which directs that recent *permits* are a primary comparison point in an analysis. "[T]he overall emission reduction performance level of a BACT proposal must be compared to the emission reduction levels that have been previously accepted as BACT in *recent permit reviews* for the same industry."[22]

---

[19] ROA.11070. (emphasis added); ROA.11065.
[20] ROA.11069-70.
[21] ROA.12880; ROA.37921.
[22] ROA.11069.

And permit reviewers are instructed to "identify any technological developments which have led to new emission reduction options that may not have been considered in past permit reviews for the same industry."[23] Any new options require a detailed technical and economic analysis.[24] "If the analysis demonstrates that the…option is technically practicable and economically reasonable, the applicant must propose an overall emission reduction performance level that is at least equivalent to that of the newly identified option."[25]

Here, BACT emission limits of 5 ppm $NO_x$ using DLN and 15 ppm CO using good combustion practices have been identified as technically feasible and economically reasonable in a *TCEQ-approved* permit for an LNG terminal operating the same turbines and subject to the same BACT requirements.[26] According to TCEQ's guidance, those lower limits necessitate a detailed analysis of their technical practicability and economic reasonableness, which Respondents and Intervenor entirely failed to provide.[27]

### D. PALNG's own Permit Application Relies on Comparisons to Permitted Plants Without a History of Operational Data.

PALNG's own application betrays its present argument that BACT limits from a permitted-but-not-yet-operational LNG facility are not relevant to Port Arthur

---

[23] ROA.11069.
[24] ROA.11069.
[25] ROA.11070.
[26] *Compare* ROA.7196; ROA.7199-200. *with* ROA.12880; ROA.11790-91; ROA.11800.
[27] ROA.11069-70.

LNG's BACT analysis. In its Top-Down BACT analysis, PALNG discusses several other LNG facilities but mentions nothing about their operational status and history.[28] Instead, PALNG focuses on when other LNG plants were *permitted*.[29] The application declares "available technology is [that which has reached] commercial sales" and that "[s]uitability for consideration as a BACT measure involves… commercial availability (as evidenced by past or *expected near-term deployment* on the same or similar type of emission limit)."[30]

Tellingly, and in direct contradiction to the arguments here, PALNG bases its $NO_x$ BACT determination for the turbines on technology that has itself *not been proven operational at LNG plants*. It justifies the choice as follows:

> It has been demonstrated that $NO_X$ emissions from refrigeration compressor combustion turbines can be controlled to 15 ppmvd… using Low-$NO_X$ burners. Low-$NO_X$ burner technology is considered as a viable stand-alone $NO_X$ control method for the refrigeration compressor combustion turbines. However, PALNG believes that an emission rate of nine (9) ppmvd @ 15% $O_2$ is achievable using Low-$NO_X$ burners based on successful demonstration in the electric generation industry, *although this level has not previously been achieved or demonstrated commercially for refrigeration compressor combustion turbines.*[31]

---

[28] ROA.1066-83.

[29] ROA.1082-83. In "Step 5—Select BACT" of PALNG's top-down BACT analysis for $NO_x$ emissions from the turbines, PALNG's application discusses Dominion Cove LNG, Golden Pass LNG, Driftwood LNG, Lake Charles LNG, and Rio Grande LNG (although only with respect to Rio Grande's 9 ppm limit).

[30] ROA.1069. (emphasis added).

[31] ROA.1081. (emphasis added).

PALNG's own permit application identified 9 ppm using DLN as BACT even though such a limit has not been proven operational at LNG plants. In this context, Intervenor's argument — that the lower permitted limits at Rio Grande LNG need not be considered because they have not been proven operational at LNG plants — is patently absurd.

And while TCEQ and PALNG now ask the Court to ignore Rio Grande LNG because it is not operating, PALNG's permit application cites *directly to an earlier version of Rio Grande LNG's permit* to justify its 9 ppm limit. "The proposed BACT is also consistent with the permit action for refrigeration compressor combustion turbines most recently issued by the TCEQ (i.e., Rio Grande LNG)."[32] Intervenor manufactured this argument because the correct method led to an undesirable result.

PALNG's three-tier BACT analysis further betrays its argument. There, PALNG selects 9 ppm $NO_x$ because it "is consistent with the *final permit action* for the refrigeration compressor combustion turbines at Cameron, and will achieve lower $NO_x$ emission rates than the water injection and good combustion practices *approved* as BACT at [Corpus Christi Liquefaction] and Sabine Pass" with no mention to any facility's operational history.[33]

---

[32] ROA.1083.
[33] ROA.1158. (emphasis added).

13

As the record shows, PALNG will consider permitted BACT limits from not-yet-operational LNG plants when those limits support its desired outcome. This collective evidence directly contradicts its position: revealing that the plant's operational status is of no concern. PALNG simply does not want to adopt Rio Grande LNG's lower limits of 5 ppm $NO_x$ and 15 ppm CO.

### E. Rio Grande LNG was not Permitted "Too Late" in Port Arthur LNG's own Process.

To hedge against the Court's realization of that Rio Grande LNG's operational status is not the true issue in this case, Intervenor suggests that Rio Grande LNG's most recent permit was issued too late to effect Port Arthur LNG's permitting process.[34] This proposition finds no support in the record and Intervenor cites to no authority for it.[35] And no such authority exists. "The BACT emission limit in a new source permit is not set until the final permit is issued...the permit agency can consider new information it learns, including recent permit decisions, subsequent to the submittal of a complete application."[36] PALNG admits that BACT is not final until the final permit is issued.[37] And, "all potential sources of information" must be reviewed "*most importantly* as it relates to any more effective control options than the one chosen."[38]

---

[34] Intervenor's Brief at 26, 40-41.
[35] Intervenor's Brief at 40.
[36] ROA.10786-87.
[37] ROA.13382.
[38] ROA.10787. (emphasis added).

Besides, Intervenor's timeline is off by a year.[39] No disagreement exists that Rio Grande LNG has lower permitted limits for $NO_x$ and CO. TCEQ issued that permit in November 2020,[40] fourteen months before the hearing on the merits and almost two years before the Commission's Final Order. Moreover, TCEQ received the application and thus was aware of the proposed limits in July 2020.[41] The Commission's Final Order includes Findings of Fact that Rio Grande LNG has permitted BACT limits of 5 ppm $NO_x$ using DLN and 15 ppm CO using good combustion practices.[42] Intervenor editorializes that no one can ascertain "why" Rio Grande LNG was permitted at 5 ppm.[43] This inquiry is neither germane nor dispositive to this appeal. *All* potential emission reduction options previously accepted as BACT are to be considered by the applicant.[44] To the extent Intervenor or Respondents wish to claim Rio Grande's lower limits are "Beyond BACT" due to technical or economic factors, they bore responsibility for documenting it carefully and fully as part of a legally sufficient BACT analysis. Unfortunately, they failed to do so.

---

[39] Intervenor incorrectly references the date that TCEQ approved the Rio Grande LNG permit amendment as November 2021. Intervenor's Brief at 14, 33. The correct date is November 13, 2020. ROA.37921. TCEQ concurs with the 2020 approval. Respondents' Brief at 15.
[40] ROA.6054; ROA.37921.
[41] ROA.12877.
[42] ROA.6435-36.
[43] Intervenor's Brief at 26.
[44] ROA.11069-70.

### III.  RESPONDENTS AND INTERVENOR FAILED TO CONSIDER RIO GRANDE LNG'S LOWER BACT LIMITS.

As explained above, TCEQ was required to consider the more stringent BACT limits permitted at Rio Grande LNG, and document that consideration.[45] TCEQ was further required to provide detailed technical and economic justification for its rejection of the more stringent limits.[46] However, the evidence shows that TCEQ did not consider the lower $NO_x$ and CO limits permitted for Rio Grande LNG, despite the fact that the permit was issued in November 2020, two years before the Final Order.[47] In lieu of the legally required justification, the Commission used legally irrelevant factors to manufacture a post-hoc defense of TCEQ's failure to consider those limits.

#### A.   The Record Reflects that TCEQ Failed to Consider the Lower Limits at any Stage of these Proceedings.

Pre-filed testimony of TCEQ's permit reviewer[48] and PALNG's application preparer[49] did not include any consideration of Rio Grande LNG's lower $NO_x$ and CO limits[50] approved by TCEQ in November 2020.[51] Thus, the record shows that TCEQ and PALNG failed to document any consideration of Rio Grande LNG's

---

[45] ROA.11069-70.
[46] ROA.10767; ROA.10786-87.
[47] ROA.37921.
[48] ROA.8683-87.
[49] ROA.33940-41; ROA.33857.
[50] ROA.12877; ROA.12880.
[51] ROA.12880; ROA.37921; *see also* ROA.13106-07.

lower limit[52] prior to the ED's final decision on the Draft Permit for Port Arthur

LNG in March 2021.[53]

TCEQ further failed to consider Rio Grande LNG's more stringent limits after

2021. Despite a written discovery request in late 2021 for all relevant permits, TCEQ

did not produce the Rio Grande LNG permit amendment in discovery.[54] TCEQ's

counsel even apologized on the record for not producing the relevant records,[55]

claiming the permit reviewer "missed" all documents related to Rio Grande LNG's

2020 permit when gathering relevant documents.[56] This Court may infer from this

acknowledged omission that the permit reviewer did not produce them because they

were not in files he reviewed. Again, TCEQ's collective action suggests that the

permit reviewer likely never considered the amended 5 ppm $NO_x$ and 15 ppm CO

limits in reviewing Port Arthur LNG's permit up through his testimony at the hearing

despite TCEQ approving the Rio Grande LNG permit over sixteen months earlier.[57]

The ALJs expressly allowed oral testimony from PALNG's witness on contents of

the data sheet and vendor guarantee supporting Rio Grande LNG's 2020 permit[58]

that TCEQ failed to produce during discovery.[59]

---

[52] ROA.12877; ROA.12880.
[53] ROA.812-14.
[54] ROA.13222; ROA.13220-21.
[55] ROA.13222.
[56] ROA.13222.
[57] ROA.12880; ROA.37921.
[58] ROA.13524-26.
[59] ROA.13222.

PACAN provided the ALJs evidence of the lower BACT limits for Rio Grande LNG during the hearing.[60] These lower limits were pertinent to the determination of BACT for the later-permitted Port Arthur LNG.[61] Moreover, neither TCEQ nor PALNG disputed those limits.[62] Thus, PACAN met its burden at the hearing to establish lower permitted limits relevant to the selection of BACT for the Port Arthur LNG turbines based on the federal definition of BACT and relevant guidance from EPA and TCEQ. PACAN refuted the presumption that PALNG and TCEQ performed a legally sufficient BACT analysis. TEX. GOV'T CODE § 2003.047(i-2)(2) (2015). At that point, the burden shifted to TCEQ and PALNG to justify why those lower limits should not be BACT for Port Arthur LNG. TEX. GOV'T CODE § 2003.047(i-3) (2015). No documentation of that justification exists in the record.

While PALNG's expert, Higgins, claimed he reviewed Rio Grande LNG's permit,[63] PALNG produced no corresponding documentation of why it rejected the more stringent limits. Higgins later admitted under cross examination that he had only reviewed portions of the application on the eve of the hearing and was "not familiar" with Rio Grande LNG's vendor guarantee.[64] In fact, Intervenor's

---

[60] ROA.6054; ROA.6070; ROA.12880.
[61] ROA.13419-23; ROA.33857; ROA.37921.
[62] Respondents' Brief at 31; Intervenor's Brief at 15; *see also* ROA.6435.
[63] ROA.13419-23; ROA.33857; ROA.37921.
[64] ROA.13522-23.

application showed that it considered a range of NO$_x$ limits from 9 ppm to 25 ppm, but this list did not include 5 ppm using DLN.[65]

Accordingly, the ALJs found that TCEQ and PALNG had not adequately considered Rio Grande LNG's lower limits and thus had not meet their required burden on BACT for the turbines.[66]

### B.    TCEQ and PALNG admit they did not Consider Rio Grande LNG.

Instead of considering Rio Grande LNG's lower pollution limits as the law required, the Commission's Final Order offered an arbitrary and unreasonable defense of TCEQ's lack of consideration. The Commission admitted, as TCEQ does in its brief,[67] that Rio Grande LNG "has a lower permitted emissions limit than what is in PALNG's Draft Permit," but claimed that those limits were not relevant to the BACT analysis because the facility is "not in operation and there is no operational data to prove that their permitted limits are achievable at this time."[68] This justification equates to a post-hoc rationalization made contrary to law, guidance, and previous actions merely to paper over the reality that neither TCEQ nor PALNG contemplated the lower pollution limits permitted at Rio Grande LNG.

---

[65] ROA.1081; ROA.1201-04.
[66] ROA.6070; ROA.6072.
[67] Respondents' Brief at 25.
[68] ROA.6372; *see also* ROA.6333.

**C.**  **While Rio Grande LNG's More Stringent Limits are not Necessarily BACT for Port Arthur LNG, the Law Requires their Consideration.**

Intervenor misrepresents PACAN's simple argument that Federal BACT applies to the Commission's consideration of Port Arthur LNG's permit.[69] PACAN has maintained that the record must show that TCEQ and PALNG considered the lower limits and justified their rejection of those limits. Intervenor's representation, that PACAN is instead arguing that the existence of lower limits necessarily means they are BACT for every subsequent facility, is in bad faith.[70] Intervenor argues against a straw person because Respondents and Intervenor are wrong on the law and cannot overcome PACAN's legal position.

**D.**  **The Failure to Consider Rio Grande LNG and Document that Consideration is a Fatal Flaw in the Final Order.**

The failure to consider Rio Grande LNG's lower limits of 5 ppm $NO_x$ and 15 ppm CO was an error by TCEQ and Intervenor. Here, TCEQ failed to consider substantial evidence of lower limits in a permit *it had itself approved* for another facility two years prior. The Commission's approval of Port Arthur LNG's permit and post-hoc defense of TCEQ's failure to consider the more stringent limits in the record is invalid, arbitrary, and unreasonable because it does not comport with the

---

[69] Intervenor's Brief at 17, 41.
[70] *Id.*

Federal definition of BACT nor either EPA or TCEQ BACT methodology utilized in PALNG's permit application.

## IV. THE EPA LETTER RELATES TO THIS PERMIT APPLICATION AND THE COMMISSION RECEIVED IT BEFORE THE FINAL ORDER.

Both TCEQ and PALNG would prefer that this Court ignore the EPA's August 31, 2022 letter sent to Tonya Miller, Director of the Office of Air for TCEQ, and TCEQ's ED Toby Baker,[71] explaining the Commission's noncompliance with the Federal definition of BACT.[72] As explained in Petitioner's opening brief, the EPA's letter took issue with the TCEQ's erroneous application of EPA's NSR Manual with respect to this permit.[73] The EPA Letter manifests its intention to "continue its close working relationship with the State and, through informal consultation and formal comments on draft permits, to resolve any issues regarding the adequacy of PSD permits." 57 Fed. Reg. 28093, 28095 (June 24, 1992). PACAN attached the EPA Letter to its Motion for Rehearing,[74] ensuring its inclusion in this

---

[71] ROA.24530.

[72] ROA.24530.

[73] EPA submitted its letter to TCEQ Docket 2021-0942-AIR / SOAH Docket 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. TCEQ received the EPA Letter before the Final Order. The docket contains an EPA cover email stamped September 1 by the Chief Clerk. **In the same filing, a handwritten note documents that the EPA email went to the Chairman.** TCEQ failed to include the EPA Letter in the record despite the Chairman's receipt.

Publicly available at https://www14.tceq.texas.gov/epic/eCID/index.cfm?clear=Y (search: TCEQ Docket No. 2021-0942-AIR).

[74] ROA.24423-5047.

administrative record.[75] Further, the Court may take judicial notice of EPA's letter

because EPA published it in its public database of guidance for air quality permits.[76]

### A.    TCEQ Misdirects the Court Because the Administrative Record for this Proceeding is Broader than what was before the ALJs.

In addition to the EPA Letter's relevance here, two state statutes expressly

define the administrative record after a contested case hearing. TEX. GOV'T CODE §

2001.060 (1993)(general agency rule); 30 TEX. ADMIN. CODE § 80.275 (1996)

(TCEQ-specific rule). Both versions include, in pertinent part, the following items

in the record:

- proposed findings, exceptions, [and briefs]; and

- all staff memoranda or data submitted to or considered by the hearing officer [judge] or members of the agency who are involved in making the decision [Commissioners].

TEX. GOV'T CODE § 2001.060(5),(7); 30 TEX. ADMIN. CODE § 80.275(b)(6),(9).

Thus, the EPA Letter is properly before this Court in three possible ways: (1) an

exhibit to PACAN's Motion for Rehearing;[77] (2) part of the information provided to

TCEQ staff and members of the agency, including the ED and Chairman, making

the decision; or, (3) in the alternative, the exceptions made by EPA to the ED's

exceptions earlier filed with the ALJ.

---

[75] ROA.24530-34.
[76] EPA, 2022 BACT Clarification, New Source Review Policy and Guidance Document Index, available at https://www.epa.gov/system/files/documents/2022-09/2022%20BACT%20Clarification.pdf
[77] ROA.24530-34.

TCEQ's argument that PACAN should have moved to reopen the record before the ALJs is a red herring. EPA wrote in support of the ALJs' Proposal for Decision to explain to *the Commission* why the ED's position on BACT did not comply with the Federal definition or EPA guidance.[78] Analyzing its context and stated intent, the EPA Letter informs TCEQ (not the ALJs)[79] that the ED incorrectly applied EPA guidance to the permit at issue.[80]

### B. The EPA Letter Only Restates Published EPA Guidance from the NSR Manual Which is Persuasive Authority on the Application of BACT to this Permit.

The EPA letter confirms what is already stated in its published guidance, the NSR Manual.[81] Every party in this proceeding offered expert testimony that the NSR Manual was relevant, cited to, and relied on by those charged with making BACT determinations and permitting decisions on this application.[82] Thus, TCEQ and PALNG's recent attempts to disavow the applicability of the NSR Manual[83] does not match the parties' and their experts' testimony at the hearing.[84]

Moreover, Courts like this one reference and rely on the NSR Manual when discussing the proper application of BACT principles. *See City of Quincy, Mass. v.*

---

[78] ROA.24533-34.
[79] ROA.24531.
[80] ROA.24533-34.
[81] ROA.24533-34.
[82] ROA.13602-03; ROA.33927; ROA.13411; ROA.9766-67; ROA.8679; ROA.37904.
[83] Intervenor's Brief at 17; Respondents' Brief at 34.
[84] ROA.13602-03; ROA.33927; ROA.13411; ROA.9766-67; ROA.8679; ROA.37904.

*Mass. Dep't of Envtl. Prot.,* 21 F.4th 8, 11 (1st Cir. 2021); (citing to the NSR Manual throughout Court's analysis of BACT for different emissions sources); *Helping Hand Tools v. U.S. Envtl. Prot. Agency*, 848 F.3d 1185, 1190 (9th Cir. 2016) (same); *Sierra Club v. U.S. E.P.A.,* 499 F.3d 653, 654 (7th Cir. 2007) (same); *Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 73 (4th Cir. 2020) (referencing the NSR Manual); *see also Michigan v. U.S. E.P.A.*, 581 F.3d 524, 530 (7th Cir. 2009) (same). Likewise, this Court should not reject the guidance found in either the EPA Letter or the NSR Manual when deciding the definition of achievability in the Federal definition of BACT. Both sets of guidance are at the very least persuasive, reliable authorities regarding federal BACT law for this Court and should be considered.

Finally, it should not go unmentioned that TCEQ and PALNG selectively cite to the NSR Manual in support of their arguments,[85] but refute its guidance when the same manual supports the position taken by PACAN.[86] Given the specificity of the EPA Letter criticizing the ED's application of the NSR Manual for this permit, it is hard to justify their views on its selective applicability here.

---

[85] *See, e.g.,* Respondents' Brief at 28, 30; Intervenor Brief at 36, 37.
[86] Intervenor's Brief at 17; Respondents' Brief at 34.

## V.    PACAN HAS STANDING TO CHALLENGE PORT ARTHUR LNG'S CARBON MONOXIDE POLLUTION.

Intervenor's challenge to PACAN's standing rests on the unsupported argument that PACAN must make a specific showing of injury for each individual pollutant from the plant. This inquiry is far beyond the demonstration of injury required in any environmental case, and Intervenor cites no legitimate authority for its argument.

As the Supreme Court has repeatedly held, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 183 (2000) (citing *Sierra Club v. Morton,* 405 U.S. 727, 735 (1972); *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 562-63 (1992)). In *Laidlaw*, "injury in fact was adequately documented by the affidavits and testimony of [Plaintiff's] members asserting that Laidlaw's pollutant discharges, and the affiants' reasonable concerns about the effects of those discharges, directly affected those affiants' recreational, aesthetic, and economic interests." *Id*. at 169.

Mr. Beard's testimony and PALNG's admissions show: (1) that he uses the areas affected by Intervenor's pollution, including his home and multiple parks,

25

some within a few hundred feet of the plant,[87] (2) that he has reasonable concerns about the harms that Intervenor's pollution will cause him and his family,[88] and (3) that Intervenor's pollution will interfere with his use and enjoyment of his home and the parks and public spaces that he currently frequents.[89] For these reasons, the ALJ found that "[t]he evidence established that operation of the Proposed Facility will increase air pollutants at Mr. Beard's residence, and that he will be affected to some degree by the emissions from the Proposed Facility."[90]

PACAN has provided far more evidence of standing and injury than the "low threshold" and "identifiable trifle" that this Court has required in past environmental cases. *Sierra Club v. Cedar Point Oil Co. Inc.,* 73 F.3d 546, 557 (5th Cir. 1996)(explaining that standing affidavits satisfied "low threshold" to establish "injury in fact"); *Save Our Cmty. v. U.S. E.P.A.*, 971 F.2d 1155, 1161 (5th Cir. 1992)(explaining "fairly traceable" element does not require plaintiffs "show to a scientific certainty" that defendant's pollution caused the harm suffered.).

And the record shows that Port Arthur LNG will emit far more CO pollution than it will $NO_x$ and PM combined. Port Arthur LNG is permitted to emit, annually, 1,904 tons of $NO_x$, 428 tons of PM, and 3,195 tons of CO.[91] The record further shows

---

[87] ROA.4523; ROA.4527; ROA.4534.
[88] ROA.4525-27; ROA.4532-33,
[89] ROA.4523-25; ROA.4527-32.
[90] ROA.5150.
[91] ROA.502.

that PALNG predicts that its pollution will increase ambient 1-hour CO concentrations by up to 1874 $\mu g/m^3$.[92] This increase is far higher than the pollution concentrations that PALNG admits it will cause for 1-hour $NO_2$ of up to 16 $\mu g/m^3$ and 24-hour $PM_{2.5}$ of up to 2 $\mu g/m^3$.[93]

The cases Intervenor cites do not support its argument. Intervenor focuses on cherry-picked, partial quotations from, and misleading citations to, *Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*, 937 F.3d 533, 538 (5th Cir. 2019). But this case supports PACAN's standing here and affirms the above Supreme Court precedent: "[T]o establish standing plaintiffs must show that they use the area affected by the challenged activity…." *Ctr. for Biological Diversity,* 937 F.3d at 538 (5th Cir. 2019) (quoting *Lujan,* 504 U.S. at 588). Intervenor's reading that this case somehow created new per-pollutant requirements for environmental standing must be rejected. There, this Court found that plaintiffs lacked standing either for failing to show a geographical nexus to the defendant's pollution or for actively seeking out the pollution and self-inflicting their injuries. *Ctr. for Biological Diversity,* 937 F.3d at 539-40. This holding is distinguishable from the current case, where Intervenor admits its pollution will fall on Mr. Beard's home and on public parks where Mr. Beard recreates.[94] PACAN has established the geographical nexus

---

[92] ROA.514.
[93] ROA.513-14.
[94] ROA.4523-27; ROA.4532-33; ROA.4606.

to the injury Intervenor will cause. And Mr. Beard is not seeking our Intervenor's pollution, rather that pollution is being forced on him even in his own home.[95]

Intervenor also relies on *TransUnion,* which is distinguishable as a Fair Credit Reporting Act case in which some of the plaintiffs failed to demonstrate injury because the inaccurate information Transunion placed in their credit reports was never sent to a third party. *TransUnion LLC v. Ramirez,* 159 U.S. — , 141 S.Ct. 2190 (2021). *TransUnion's* only tenuous connection to environmental law is a suggestion that someone in Maine could sue a plant in Maine for pollution that harmed property only in Maine, and that someone in Hawaii could not sue that Maine plant. *Id.* at 2205. *TransUnion* did not overrule Fifth Circuit authority but only reaffirmed the well-established rule that a violation of a federal law alone is not an Article III injury. Here, PACAN, through Mr. Beard, is the Maine plaintiff in *TransUnion's* hypothetical. Mr. Beard lives, works, and recreates near Port Arthur LNG and will personally experience the effect of its pollution. *Laidlaw,* 528 U.S. at 183-84; *Sierra Club,* 73 F.3d at 557.

Intervenor's final reference, *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011), is irrelevant and distinguishable as a constitutional challenge to multiple provisions of a Texas statute limiting the ability of for-profit companies to engage in different types of solicitation. There, the

---

[95] ROA.4523-25.

plaintiffs failed to show injury from one of the challenged statutes (which they admitted concerned activity they were not engaged in). *Id.* at 209.

*Abbott*'s facts diverge from ours. PACAN makes one claim – that TCEQ acted in an invalid, arbitrary and unreasonable manner when it failed to consider information that it is required by law to consider before issuing an air pollution permit. That pollution will impact the areas where Mr. Beard lives and recreates.[96] The fact that TCEQ's departure from the law and its own practice affected multiple pollutants from the same source does not create multiple discrete causes of action arising from different laws. And PACAN seeks one form of relief, an order remanding Port Arthur LNG's invalid permit back to the TCEQ for a legally sufficient BACT analysis on pollutants from the plant's turbines. Comparisons to *TransUnion* and *Abbott* are thus inappropriate.

No authority exists to support Intervenor's argument that PACAN lacks standing to challenge CO emissions here.

Because PACAN has shown that its member, Mr. Beard, will use the area affected by PALNG's pollution and that Mr. Beard's property, aesthetic, and recreational interests will be harmed by that pollution,[97] it demonstrated standing to

---

[96] ROA.4523-27; ROA.4532-33; ROA.4606; ROA.4702-03.
[97] ROA.4523-34; ROA.37784-86; ROA.37623-27; ROA.4606; ROA.4702-03.

challenge the inadequate BACT analysis for NO$_x$ and CO pollution from the turbines. *Lujan,* 504 U.S. at 562-63.

## CONCLUSION

The Commission departed from Federal and State Law, EPA's BACT methodology, its BACT methodology, and its own established practice when it granted a permit to Port Arthur LNG despite its failure to consider lower limits in the Federal BACT analysis. The Court must remedy this fatal flaw in Port Arthur LNG's permit.

Respondents' insistence that substantial evidence supports the Commission's decision here belies the fact that the Commission unlawfully narrowed the scope of the BACT analysis and excluded evidence *it is by law required to consider.*

Petitioner-Appellant Port Arthur Community Action Network respectfully requests that the Court find that Respondents failed to follow applicable law in issuing a new air permit for the Port Arthur LNG liquefied natural gas export terminal and that its Final Order issuing the air permit is invalid, arbitrary, and unreasonable given the record before the Court. Petitioner respectfully requests that the Court remand Port Arthur LNG's invalid air permit to TCEQ for a legally sufficient BACT analysis.

Submitted by:

*/s/ Colin Cox*
Colin Cox
Texas Bar No. 24101653
Environmental Integrity Project
1206 San Antonio Street
Austin, TX 78701
832-316-0580
colincox@environmentalintegrity.org

Amy Catherine Dinn
Texas Bar No. 24026801
Chase Porter
Texas Bar No. 24102368
Lone Star Legal Aid
1415 Fannin Street
Houston, TX 77002
713-652-0077 ext 8108
adinn@lonestarlegal.org
cporter@lonestarlegal.org

COUNSEL FOR APPELLANT
PORT ARTHUR COMMUNITY ACTION
NETWORK

# CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2023, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system to the following counsel of record:

| Attorneys for Respondents | Attorneys for Intervenors |
|---|---|
| Erin Kathleen Snody | Aaron M. Streett |
| J. Amber Ahmed | Beau Carter |
| Office of the Attorney General of Texas | Baker Botts LLP |
| Environmental Protection Division | One Shell Plaza |
| P.O. Box 12548, MC-066 | 910 Louisiana Street |
| Austin, Texas 78711-2548 | Houston, Texas 77002-4995 |
| erin.snody@oag.texas.gov | aaron.streett@bakerbotts.com |
| | beau.carter@bakerbotts.com |

Derek McDonald
Baker Botts LLP
98 San Jacinto Blvd, Ste 1500
Austin, Texas 78701-4082
derek.mcdonald@bakerbotts.com

/s/ Colin Cox
Counsel for Appellant
Port Arthur Community Action Network

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1,  this document contains 6,427 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2301 Build 16.0.16026.20002) in Times New Roman 14 point font.

*/s/ Colin Cox*
Counsel for Appellant
Port Arthur Community Action Network