No. 22-60556

# In the United States Court of Appeals for the Fifth Circuit

PORT ARTHUR COMMUNITY ACTION NETWORK,

*Petitioner,*

*v.*

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; JON
NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE
TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

*Respondents.*

On Appeal from the Texas Commission on Environmental Quality

## PETITION FOR REHEARING EN BANC

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
   Litigation

KELLIE BILLINGS-RAY
Chief, Environmental Protection
   Division

ERIN K. SNODY
J. Amber Ahmed
Assistant Attorneys General

AARON L. NIELSON
Solicitor General
Aaron.Nielson@oag.texas.gov

LANORA C. PETTIT
Principal Deputy Solicitor General

WILLIAM F. COLE
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Respondents

# Certificate of Interested Persons

No. 22-60556

## Port Arthur Community Action Network,
*Petitioner,*

*v.*

## Texas Commission on Environmental Quality; Jon Niermann, in his official capacity as Chairperson of the Texas Commission on Environmental Quality,
*Respondents.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondents, as governmental parties, need not furnish a certificate of interested persons.

/s/ Aaron L. Nielson

Aaron L. Nielson
*Counsel of Record for Respondents*

i

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................i

Table of Authorities ............................................................................iii

Introduction ..........................................................................................1

Issues Meriting En Banc Consideration .................................................2

Statement of the Case ...........................................................................2

Argument...............................................................................................5

    I.   The Decision Improperly Orders Vacatur Rather than Remand
        Under the Federal Natural Gas Act .........................................5

    II.  The Decision Creates Erroneous Circuit Precedent Out of a
        Misunderstanding of Nonbinding Texas Agency Guidance ......8

        A.  TCEQ did not deviate from established agency policy .........8

        B.  TCEQ adequately explained its reasoning in the order......12

Conclusion........................................................................................... 15

Certificate of Service........................................................................... 16

Certificate of Compliance ................................................................... 17

# Table of Authorities

**Page(s)**

**Cases:**

*City of Allen v. Pub. Util. Comm'n*,
  161 S.W.3d 195 (Tex. App.—Austin 2005, no pet.)........................................6-7

*City of El Paso v. El Paso Elec. Co.*,
  851 S.W.2d 896 (Tex. App.—Austin 1993, writ denied) ........................ 7, 12, 13

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022) ................................................................6

*Edwards v. Assoc. Press*,
  512 F.2d 258 (5th Cir. 1975) ................................................................1

*Entergy Tex., Inc. v. Pub. Util. Comm'n of Tex.*,
  No. 03-14-00706-CV, 2016 WL 1179085
  (Tex. App.—Austin, Mar. 24, 2016, no pet.) (mem. op.)................................ 13

*Flores v. Garland*,
  72 F.4th 85 (5th Cir. 2023)................................................................5-6

*Hersh v. U.S. ex rel. Mukasey*,
  553 F.3d 743 (5th Cir. 2008) ................................................................1

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
  53 F.4th 869 (5th Cir. 2022)................................................................5

*Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*,
  406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.) ................................ 7, 12, 13

*Osborn v. Bank of the U.S.*,
  22 U.S. 738 (1824) ................................................................7

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................7, 8

*Shrimpers & Fishermen of RGV v. TCEQ*,
  968 F.3d 419 (5th Cir. 2020) ........................................1, 4, 7, 8, 13-14

*Tawakkol v. Vasquez*,
  No. 22-50434, 2023 WL 8446086 (5th Cir. Dec. 6, 2023) ................................8

*TCEQ v. Friends of Dry Comal Creek*,
  669 S.W.3d 506 (Tex. App.—Austin 2023, pet. denied) ................................ 12

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
  989 F.3d 368 (5th Cir. 2021) ................................................................6

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) ........................................................ 2, 8
*Town of Weymouth v. Mass. Dep't of Env't Prot.*,
  973 F.3d 143 (1st Cir. 2020) (per curiam) ........................................ 6
*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................ 8
*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
  6 F.4th 1321 (D.C. Cir. 2021) ....................................................... 6
*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983) ................................................................... 7
*Weingarten Realty Invs. v. Miller*,
  661 F.3d 904 (5th Cir. 2011) ......................................................... 2
*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022) ................................................................ 8

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const. amend XI ...................................................................... 7
15 U.S.C.:
  §717r ..................................................................................... 1, 7
  §717r(d)(3) .............................................................................. 4, 5
Tex. Gov't Code:
  §2001.174 ................................................................................ 6
  §2003.049(g) ............................................................................ 13
Tex. Health & Safety Code §382.0518 ................................................. 3
40 C.F.R.:
  §51.166(j)(2) ............................................................................ 3
  §52.21(b)(12) ........................................................................... 14
  §52.2270 ................................................................................. 2
30 Tex. Admin. Code §116.10(1) ................................................. 3, 11, 14
Fed. R. App. P.:
  35(b)(1)(A) .............................................................................. 1
  35(b)(1)(B) ............................................................................. 1, 5

# Introduction and Rule 35(b) Statement

As Judge Oldham has noted, the Natural Gas Act ("NGA"), 15 U.S.C. §717r, lies at—if not beyond—the outer limits of Article III by purporting to vest in federal courts jurisdiction to review challenges to state-agency permitting decisions based on state law that are brought pursuant to state-law causes of action in cases between non-diverse parties, *Shrimpers & Fishermen of RGV v. TCEQ*, 968 F.3d 419, 427 (5th Cir. 2020) ("*Shrimpers*") (Oldham, J., concurring). This Court has long recognized a "duty" under such circumstances "to construe statutes narrowly to avoid constitutional problems" unless to do so would be "to ignore clear trends in a [S]tate's application of its own law," *Edwards v. Associated Press*, 512 F.2d 258, 265 & n.25 (5th Cir. 1975), or the express intent of Congress, *e.g.*, *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 753-54 (5th Cir. 2008). Here, the panel took an extraordinarily broad view of its authority to vacate a state administrative action when such drastic relief is not authorized by the NGA. And in the process, it misconstrued the very state law it purported to apply.

Even if the decision's legal errors were insufficient to justify en banc review, Fed. R. App. P. 35(b)(1)(A), the underlying subject matter underscores why this case presents "question[s] of exceptional importance," *Id.* R. 35(b)(1)(B). Port Arthur LNG proposes to build a facility capable of producing up to 6.76 million metric tons of liquified natural gas ("LNG") per year. ROA.6356. If completed, it will be a vital component of Texas's vibrant energy economy, but it will qualify as a major source of air contaminants under the Clean Air Act ("CAA"), and thus requires a permit issued by the Texas Commission on Environmental Quality ("TCEQ")'s

Prevention of Significant Deterioration ("PSD") Program. "[A]n experiment in cooperative federalism," the CAA requires careful consideration of both "state and federal regulation," which together create a "comprehensive program for controlling and improving the nation's air quality." *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016). Here, by exceeding the bounds of its jurisdiction under the NGA, the decision threw off that delicate balance and thereby threatened "a broad impact on relations between the states and the federal government." *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 910 n.9 (5th Cir. 2011), *abrogated on other grounds by Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). Such a case warrants the full Court's attention.

## Issues Meriting En Banc Consideration

1. Whether the decision exceeds the bounds of the NGA by vacating an air-quality permit it deemed insufficiently explained as a matter of state law.

2. Whether the decision enshrines into circuit precedent its misunderstanding of nonbinding state-agency precedent.

## Statement of the Case

Port Arthur LNG proposes to build a greenfield natural gas liquefaction plant and liquefied natural gas export terminal in Port Arthur, Texas. ROA.948. Because the plant—like any such facility—constitutes a major source of air pollution under the CAA, it requires a permit under Texas's PSD permitting program, which TCEQ administers as part of its EPA-approved State Implementation Plan ("SIP"). 40 C.F.R. §52.2270. Under the SIP, before issuing a permit, TCEQ must find that an

applicant has demonstrated that the project will use the "best available control technology" ("BACT"). Tex. Health & Safety Code §382.0518; *see also* 40 C.F.R. §51.166(j)(2). BACT is "[a]n air pollution control method for a new or modified facility that through experience and research, has proven to be operational, obtainable, and capable of reducing or eliminating emissions from the facility, and is considered technically practical and economically reasonable for the facility." 30 Tex. Admin. Code §116.10(1). Port Arthur LNG proposed a nitrogen oxides ("NOx") emissions limit for the facility's refrigeration compression turbines of 9 parts per million, volume dry (ppmvd), and a carbon monoxide (CO) limit of 25 ppmvd. ROA.434-35.

After TCEQ issued a draft permit and preliminary decision proposing to approve Port Arthur LNG's application, Port Arthur Community Action Network ("PACAN") initiated a contested-case hearing before the agency. ROA.13699-729. At the hearing, PACAN disputed, among other things, whether the proposed emissions limits represented BACT. ROA.6556. PACAN argued that these limits did not satisfy the BACT requirement because another facility using similar technology, Rio Grande LNG, had recently been granted a permit amendment with emissions limits of 5 ppmvd for NOx and 15 ppmvd for CO. ROA.12880; *see also* ROA.13106-07.

After reviewing the evidence in the record, including a technical-review document for Rio Grande LNG's 2020 permit-amendment application, as well as applicable law and agency guidance (state and federal), the Commission ultimately issued the requested permit. ROA.6355-423. The Commission found that while Rio

Grande LNG had recently been permitted to operate in the *future* at lower emissions limits using similar technology, there was no operational data proving that those limits were "achievable" within the meaning of BACT. ROA.6372. As result, though the 9 ppmvd NOx limit and 25 ppmvd CO limit proposed by Port Arthur LNG were nominally higher than Rio Grande LNG's permit, they still met the requirements of BACT. *Cf.* ROA.6372.

PACAN sought judicial review of the Commission's final order under a provision of the NGA, which allows this Court to remand a state agency order for further proceedings if the court finds that the order is inconsistent with the federal law governing the permit. 15 U.S.C. §717r(d)(3). Because "States have the primary responsibility for implementing" the SIP, federal law effectively incorporates aspects of state law (here the definition of BACT) as part of the *substantive* rule of decision. *Shrimpers*, 968 F.3d at 421-22.

In performing that review, the decision invalidated the permit not because it violated *substantive* rules of state law incorporated into federal law but that it was *procedurally* invalid under the *state* Administrative Procedure Act. Specifically, the decision held that TCEQ's decision was arbitrary because it departed from the agency's past nonbinding policy of "adhering to earlier permit limits" without adequately explaining the agency's reasoning for the departure. Op.13-14. Rather than remanding the order to TCEQ to provide a more fulsome explanation, however, the decision vacated the Commission's order in its entirety. Op.15.

## ARGUMENT

### I. The Decision Improperly Orders Vacatur Rather than Remand Under the Federal Natural Gas Act.

To start, en banc review is warranted because—regardless of the merits of the underlying state administrative-law claim—the decision improperly vacated the Commission's order granting the permit at issue. Op.15. In doing so, it departed from the text of the relevant statute and the rulings of this Court's sister circuits. It also set the NGA on a direct collision course with the Constitution.

Assuming that the panel was correct that the NGA incorporates some aspects of state law as rules of decision and that TCEQ improperly applied such state law—thereby issuing an order that "is inconsistent with the Federal law governing the permit"—the NGA provides only one remedy: "the Court *shall* remand the proceeding to the agency to take appropriate action consistent with the order of the Court" and "*shall* set a reasonable schedule and deadline for the agency to act on remand." 15 U.S.C. §717r(d)(3) (emphases added). In this Circuit, "shall" imposes a mandatory obligation. *E.g.*, *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 886 (5th Cir. 2022). Rather than follow that obligation and remanding to the state agency, the decision *vacates* the challenged permit—an action the statute nowhere authorizes.

The decision presents a question of "exceptional importance" by creating—at best—tension, and at worst, a "decisional[al] conflict[] with the authoritative decision of other United States Courts of Appeals," Fed. R. App. P. 35(b)(1)(B), which this Court "[is] always chary" to do, *Flores v. Garland*, 72 F.4th 85, 88 (5th

Cir. 2023). In a directly analogous case, the First Circuit revised its opinion to remand rather than vacate. *See Town of Weymouth v. Mass. Dep't of Env't Prot.*, 973 F.3d 143, 146 (1st Cir. 2020) (per curiam). Although the First Circuit stopped short of holding that vacatur was never proper under the NGA, it did meticulously apply the federal test for to remand without vacatur, looking at "the severity of the errors, the likelihood that they can be mended without altering the order, and on the balance of equities and public interest considerations." *Id.* at 145 (cleaned up). The decision discussed none of those things, mentioning vacatur only in announcing its judgment. Op.15.

The departure from the First Circuit was critical to the outcome in this case. True, for the vast majority of federal APA claims, "[t]he default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). But this Court has previously recognized that a simple failure to explain is a narrow class of cases in which "[r]emand, not vacatur, is generally appropriate." *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021); *accord Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021)

The departure is concerning because it led the panel to authorize relief that would not be available in a *state* court reviewing an agency decision under Texas Government Code section 2001.174, which like the NGA "authorizes the reviewing court to reverse or remand—but not vacate—an agency decision if the agency's findings, inferences, conclusions, or decisions exceeded its statutory authority." *City of Allen v. Pub. Util. Comm'n*, 161 S.W.3d 195, 199 n.11 (Tex. App.—Austin

2005, no pet.). Indeed, even the authority upon which the decision relies remanded without vacatur. *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 899 (Tex. App.—Austin 1993, writ denied); *Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*, 406 S.W.3d 253, 272 (Tex. App.—Austin 2013, no pet.).

But the error is most pressing because the panel's overbroad reading of the NGA sets it on a direct collision course with two constitutional limitations on this Court's jurisdiction. To start, as Judge Oldham has observed, the Court's federal-question jurisdiction—upon which the NGA depends—generally does not extend to allowing the federal courts to decide issues of state law in nondiverse cases. *Shrimpers*, 968 F.3d at 427-28 (Oldham, J., concurring). Section 717r likely avoids this problem when applied to TCEQ's *substantive* regulations because the cooperative nature of the CAA means the Court's determination still "involves application of a body of substantive federal law," and thus the case as a whole "'arises under' federal law, within the meaning of Article III." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 497 (1983). But there is little, if any, federal "ingredient" in the question of whether TCEQ adequately explained its decision for the purposes of state administrative law. *Osborn v. Bank of the U.S.*, 22 U.S. 738, 823-24 (1824).

Even if this case fell within the scope of Article III, however, the decision's exclusive reliance on a state procedural rule appears to run afoul of sovereign immunity. It is blackletter law that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). A claim that TCEQ violated its own procedures is just such a claim.

*Shrimpers*, 968 F.3d at 422. As the panel nowhere concludes that the procedural violation here also violated *federal law*, its remedy does nothing "to vindicate federal rights," *Pennhurst*, 465 U.S. at 105, and thus falls within the scope of sovereign immunity, *Tawakkol v. Vasquez*, No. 22-50434, 2023 WL 8446086, at *3 (5th Cir. Dec. 6, 2023) ("[T]he Supreme Court has … instructed that the exception must be 'narrowly construed' to serve only [its] original purpose." (quoting *Pennhurst*, 465 U.S. at 114 n.25)).

The limitations on federal-court jurisdiction are core aspects of the separation of powers and are thus necessarily important questions. *Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021). Here, that is particularly so as the decision also distorts Congress's carefully reticulated and "comprehensive program for controlling and improving the nation's air quality." *EPA*, 829 F.3d at 411.

## II. The Decision Creates Erroneous Circuit Precedent Out of a Misunderstanding of Nonbinding Texas Agency Guidance.

To make matters worse, the decision reflects a misunderstanding of Texas law both as to whether TCEQ deviated from prior practice and whether it adequately explained its decision. Apart from the importance of just the permit at issue (which is great), questions of how to regulate major pollution emitters are among the most hotly litigated, politically salient issues of our time. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2611-14 (2022).

### A. TCEQ did not deviate from established agency policy.

The decision's analysis of state law is founded on a false premise: that TCEQ's decision to permit Port Arthur LNG at emissions limits higher than those recently

permitted to a facility using similar emission control technology, Rio Grande LNG, "contravened its policy of adhering to previously imposed emissions limits." Op.1. This fundamentally misunderstands the TCEQ policy at issue—guidance document APDG 6110—and the administrative record.

**1.** APDG 6110 instructs permit reviewers to adopt emissions-limits proposals that are "at least equivalent to those previously accepted as BACT." ROA.8775. But the decision conflates two key concepts, often using them interchangeably: emissions limits that have been previously *permitted*, *e.g.*, Op.1, 10, 14, and emissions limits that have been previously *accepted as BACT*, *e.g.*, Op.5, 13, 15. Although the two concepts often overlap, TCEQ's guidance recognizes they are not the same: TCEQ reviewers must *consider* the former—*i.e.*, "recently issued/approved permits"—but applicants are only legally required to match the latter—i.e., limits "previously accepted as BACT." ROA.8778. Put another way, APDG 6110 recognizes that prior permits may have accepted controls and limits that are "beyond BACT." ROA.8772. Such limits are highly salutary because they will result in greater emissions reductions as well as encourage the adoption of technology that will improve BACT in the future. But, under the policy, these newer technologies go from encouraged to legally required only when their heightened limit meets the statutory and regulatory definition of BACT. ROA.6372.

The distinction between permitted as *at least equivalent to* BACT and accepted *as* BACT informs how the Court should read the record—both here and in future cases. Here, when evaluating Port Arthur LNG's permit application, TCEQ considered the emissions limits in Rio Grande LNG's 2020 permit amendment to go

9

beyond what had been "previously accepted as BACT." *See* ROA.6372. Because the facility was not yet operational, however, the proposed emissions limits for NOx and CO "do[] not satisfy the EPA's or the TCEQ's definition of BACT" because there is no operational data demonstrating that the limits are "achievable." ROA.6372. Consequently, the agency determined that Port Arthur LNG did not have to match those limits to satisfy BACT.

Because the decision ignores "beyond BACT" as a concept, it misreads TCEQ's guidance to provide that that *any* prior permit—no matter how aspirational the limits—automatically creates a new default BACT standard. In support of this remarkable conclusion, the decision relies on single technical-review document from Rio Grande LNG's 2020 permit amendment. Op.4. That document certainly reflects that "BACT is satisfied," Op.4—that is, that the proposal is "at least equivalent to those previously accepted as BACT," ROA.8775—because Rio Grande LNG's proposed emissions controls for CO and NOx "are consistent with the lowest levels of control for Refrigeration Compressor Turbines." ROA.12880. When the statement is read—as it should have been—*in* context of TCEQ's full BACT discussion, it is clear that TCEQ meant "beyond BACT": TCEQ describes *different* proposed control options as being "accepted as BACT," "meet[ing] BACT," or "selected as BACT." ROA.12880-81. By contrast, as TCEQ explained in its order, Rio Grande LNG's amended limits had not been demonstrated in practice and, therefore, had not been "proven to be operational, obtainable, and capable of reducing or eliminating emissions" within the meaning of BACT.

ROA.6372. As a result, Rio Grande LNG's proposed CO and NOx limits *satisfied* BACT, but did not become *accepted* as a new BACT.

**2.** In concluding otherwise, the decision also made a subsidiary error by holding that TCEQ had inconsistently defined the term "operational" in determining whether permitted facilities establish a new BACT. Op.14. But there is no inconsistency; "operational" is a common term, which was being used in two different contexts. TCEQ's minor-source rule defines BACT as an emissions limit "that through experience and research, has proven to be operational, obtainable, and capable of reducing or eliminating emissions from the facility." 30 Tex. Admin. Code §116.10(1). But Rio Grande LNG's suite of emissions controls was aspirational. ROA.6372-73; *see also* ROA.13517-18. Because it was not yet operational at the time Port Arthur LNG applied for a permit, ROA.11107, by definition, it could not have been BACT under the minor-source rule because there was no "experience and research" by which the technology *could* "ha[ve] proven to be operational." 30 Tex. Admin. Code §116.10(1). Put another way, TCEQ's order found that Rio Grande LNG could not be considered to set a new standard for future applications because it lacked the operational data necessary to determine whether Rio Grande LNG's new technology could live up to its aspirations. ROA.6372. Thus, TCEQ effectively deemed this technology "beyond BACT."

The decision's elimination of this distinction is critical. Without this distinction, applicants are discouraged from proposing limits that go beyond established BACT for fear of setting a new, unattainable standard. *See* ROA.13549. Such a chilling effect would be contrary to the goal of BACT, which is to encourage the

advancement of emissions controls through the implementation of new—and sometimes experimental—control technology. Incorporation of a fundamentally flawed understanding of TCEQ policy into the binding law of this circuit warrants the full Court's attention.

### B.  TCEQ adequately explained its reasoning in the order.

The decision compounded its error in finding that TCEQ "depart[ed] from the Commission's policy of adhering to earlier permit limits" by holding that a state agency can only change state policy if a federal court deems it to have provided an adequate explanation. Op.14. As the panel acknowledges, Op.12-13, Texas administrative law—like its federal counterpart—permits a state agency to depart from past precedent or non-binding agency guidance. *TCEQ v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 521 (Tex. App.—Austin 2023, pet. denied). State courts have claimed the right to require the agency to explain itself when it "appears to have departed from its earlier administrative policy or to be inconsistent in its determinations." *Oncor,* 406 S.W.3d at 267. But this requirement has never been created by the Legislature; the state court of appeals that currently hears many administrative-law cases has held that by implication, the Texas APA allows it to require TCEQ "to supply any reasons or explanations necessary for the reviewing court to understand the Commission's final order." *City of El Paso*, 851 S.W.2d at 900. It has elaborated, however, that this requirement "should not be confused with a statutory requirement"—found in the text of the APA—that requires "an agency to supply findings of fact in support of its conclusions of law"; "reasons" as understood in this context may "relate to law, policy, and discretion rather than to

facts. Nevertheless, agencies frequently use findings of fact to explain the conclusions which express their choices in matters of discretion, law, and policy." *Id.* (internal citation omitted).

Nowhere does this decision explain why this issue fails to provide adequate explanation. Instead, relying on *Oncor* and *City of El Paso*, it starts by articulating the incorrect standard: The selected language (at Op.13) discusses the Public Utility Commission's failure to "state in writing its specific reason and the legal basis for changing the ALJ's findings of fact and conclusions of law," which is a textual requirement of the Texas APA. *Oncor*, 406 S.W.3d at 268 (citing Tex. Gov't Code §2003.049(g)). The *Oncor* court discussed its own implied power to require an explanation for a policy change separately because it is a separate power. *Id.* at 267 (collecting cases). From that incorrect standard, the panel (perhaps unsurprisingly) concluded that TCEQ acted arbitrarily by failing to "set forth no 'statutory, rule-based, or precedential support or analysis' to justify why it disregarded its own policy, nor did it even acknowledge that it had done so." Op.14. But there is no such requirement in state law. *Oncor,* 406 S.W.3d at 267; *City of El Paso*, 851 S.W.2d at 900; *Entergy Tex., Inc. v. Pub. Util. Comm'n of Tex.*, No. 03-14-00706-CV, 2016 WL 1179085, at *4 (Tex. App.—Austin, Mar. 24, 2016, no pet.) (mem. op.). And nothing in the CAA or NGA permits federal courts to superintend state agencies in the way the panel contemplates.

To the extent that this judge-made obligation applies to what is effectively the application of a consistent standard to different facts, *supra* pp. 9-10, *and* it is incorporated into federal law through the NGA, *but see Shrimpers*, 968 F.3d at 427

13

(Oldham, J., concurring), TCEQ satisfied it. TCEQ provided nearly a page of reasons why it decided not to impose Rio Grande LNG's limits on the Port Arthur facility, including specific references to governing regulations and evidence in the record. ROA.6372. TCEQ explained that "[t]he EPA defines BACT as an emissions limitation that the Administrator, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such source." ROA.6372 (citing 40 C.F.R. §52.21(b)(12)). In determining what is "achievable," TCEQ defines BACT "through experience and research," and what emission controls "ha[ve] proven to be operational, obtainable, and capable of reducing or eliminating emissions from the facility, and is considered technically practical and economically reasonable for the facility." ROA.6372 (citing 30 Tex. Admin. Code §116.10(1)). "Based on these definitions," TCEQ conclude that Rio Grande LNG's limits "do[] not satisfy the EPA's or the TCEQ's definition of BACT" because "a BACT analysis requires a demonstration that the emissions limitations are achievable." ROA.6372. A key component of that inquiry is whether those limitations have been achieved at facilities that are in operation and have operational data. *See* ROA.6372. To the extent the Commission's reliance on operational data is considered a departure from past agency policy, the Commission explained its reasoning: "[t]he permitting of new technologies and controls is an important step to ensure that BACT evolves as technology progresses, but the change in BACT occurs *after* the controls have been demonstrated to be achievable." ROA.6372 (emphasis added).

Given the interests at stake in these statutory schemes generally, and this permit specifically, that error demands the full Court's attention.

## Conclusion

The Court should grant en banc rehearing.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

James Lloyd
Deputy Attorney General for Civil Litigation

Kellie Billings-Ray
Chief, Environmental Protection Division

Erin K. Snody
J. Amber Ahmed
Assistant Attorneys General

/s/ Aaron L. Nielson
Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

Lanora C. Pettit
Principal Deputy Solicitor General

William F. Cole
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Defendants-Appellants

## Certificate of Service

On December 19, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
Aaron L. Nielson

## CERTIFICATE OF COMPLIANCE

This petition complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,795 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
AARON L. NIELSON

Appendix A:  Opinion

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2023

Lyle W. Cayce
Clerk

_____

No. 22-60556
_____

PORT ARTHUR COMMUNITY ACTION NETWORK,

*Petitioner*,

*versus*

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; JON
NIERMANN, *in his official capacity as Chairperson of the Texas Commission
on Environmental Quality*,

*Respondents*.

_____

Appeal from Texas Commission on Environmental Quality
Agency No. 2021-0942-AIR
_____

Before WIENER, GRAVES, and DOUGLAS, *Circuit Judges*.

JAMES E. GRAVES, JR., *Circuit Judge*:

When a Texas state agency departs from its own administrative policy, or applies a policy inconsistently, Texas law requires it to adequately explain its reasons for doing so. In this case, the Texas Commission on Environmental Quality ("TCEQ") declined to impose certain emissions limits on a new natural gas facility that it had recently imposed on another such facility. In doing so, it contravened its policy of adhering to previously imposed emissions limits, but it did not adequately explain why. It therefore acted arbitrarily and capriciously under Texas law. Accordingly, we VACATE the

Commission's order granting the emissions permit at issue and REMAND for proceedings consistent with our opinion.

## I. BACKGROUND

The federal Clean Air Act authorizes the Environmental Protection Agency to establish nationwide air pollution standards, including standards for emissions of carbon monoxide (CO) and nitrogen oxides ($NO_X$). 42 U.S.C. §§ 7408-7409; 40 C.F.R. § 50. EPA outsources some enforcement of those standards to the states, which, in turn, must adopt EPA-approved State Implementation Plans ("SIPs").

In Texas, TCEQ is charged with enforcing the federal Clean Air Act and the Texas Clean Air Act. Under Texas's SIP, TCEQ is responsible for issuing Prevention of Significant Deterioration ("PSD") permits before any "major stationary source" of pollution may be constructed in an area that has attained EPA clean air standards. 40 C.F.R. § 52.21(a)(2)(i). A major stationary source is a facility that has the potential to emit more than 250 tons of a regulated pollutant per year. 40 C.F.R. § 52.21(b)(1)(i)(B).

To receive a PSD permit, an applicant must demonstrate that the emissions sources at its facility will satisfy Best Available Control Technology, or "BACT." 42 U.S.C. § 7475(a)(4); Tex. Health & Safety Code § 382.0518(b)(1). Generally, BACT requires new facilities to reduce pollution to the maximum degree possible, accounting for cost and other practical concerns. *See* 40 C.F.R. § 52.21(b)(12); 30 Tex. Admin. Code § 116.10(1). TCEQ and EPA have each adopted definitions of BACT, though TCEQ's definition incorporates EPA's definition by reference. *See* 30 Tex. Admin. Code § 116.160(c)(1)(A).

EPA and TCEQ have also developed guidance to aid applicants and permit reviewers. EPA's five-step method is detailed in its New Source Review Manual ("NSR Manual"). TCEQ's three-tier method is detailed in

its Air Permit Reviewer Reference Guide ("APDG 6110"). EPA approved TCEQ's three-tier method subject to a short list of conditions, including that TCEQ consider "[r]ecently issued/approved permits within the state of Texas." In accordance with that condition, Tier I of the APDG 6110 analysis requires TCEQ to compare each application "to the emission reduction performance levels accepted as BACT in recent [New Source Review] permit reviews."

Intervenor Port Arthur LNG, L.L.C. plans to build a liquified natural gas plant and export terminal in Port Arthur, Texas. Because the proposed facility has the potential to emit more than 250 tons of a regulated pollutant per year, and therefore would be classified as a major stationary source , Port Arthur LNG applied for a PSD from TCEQ in September 2019. Port Arthur LNG identified emissions sources including turbines, engines, oxidizers, and flares, and it proposed emission rates for each. As relevant here, Port Arthur LNG proposed, for its refrigeration compression turbines, emission rates of 9 parts per million by volume, dry ("ppmvd") of NOx and 25 ppmvd of CO.

After a technical review, TCEQ's Executive Director issued a preliminary decision and draft permit on June 2, 2020. The draft permit included Port Arthur LNG's proposed emission rates of 9 ppmvd of $NO_X$ and 25 ppmvd of CO for the refrigeration compression turbines. After soliciting public comments, the Executive Director issued a final decision on March 24, 2021, concluding that Port Arthur LNG's draft permit complied with the applicable law. The Executive Director's final decision was referred to the Commission[1] for consideration at a subsequent public meeting.

---

[1] In this opinion, we use "Commission" to refer to the adjudicative body that decided Port Arthur LNG's application and "TCEQ" to refer to the respondents in this case.

No. 22-60556

Petitioner Port Arthur Community Action Network ("PACAN") is a not-for-profit community organization in Port Arthur focused on environmental issues. PACAN requested a contested case hearing in response to the Executive Director's final decision. *See* Tex. Health & Safety Code § 382.056(n). It contested numerous aspects of the draft permit, including whether the proposed controls on various emission sources would satisfy BACT. Its request for a hearing was granted, and the Commission referred the application to the State Office of Administrative Hearings. *See* Tex. Gov't Code § 2003.047(a). An administrative law judge ("ALJ") held a preliminary hearing and determined that PACAN met the requirements for associational standing. *See* Tex. Water Code § 5.115(a).

Two ALJs then held a hearing on the merits of PACAN's challenge on February 22-24, 2022. In support of its application, Port Arthur LNG filed a certified copy of its application, the Executive Director's preliminary decision, and the draft permit. That was sufficient for Port Arthur LNG to make a prima facie case that the draft permit satisfied the applicable legal requirements. Tex. Gov't Code § 2003.047(i-1).

In response, PACAN introduced, as an exhibit, a 2020 amendment to a permit for Rio Grande LNG, a liquid natural gas facility in Texas that has been approved but not yet constructed. Rio Grande LNG had proposed using the same refrigeration compression turbines as the Port Arthur facility: General Electric Frame 7EA combustion turbines equipped with Dry-Low $NO_X$ combustors. The amendment decreased the CO and NOx limits for Rio Grande LNG's refrigeration compression turbines from 9 ppmvd of NOx and 25 ppmvd of CO—Port Arthur LNG's proposed emission rates—to 5 ppmvd of NOx and 15 ppmvd of CO. The amendment stated that the new, decreased limits were "consistent with the lowest levels of control for Refrigeration Compressor Turbines; therefore, BACT is satisfied."

On May 20, 2022, the ALJs issued a Proposal for Decision and Proposed Order. Their analysis relied heavily on APDG 6110. Under APDG 6110's Tier I analysis, "a specific BACT proposal may be different than those accepted as BACT in recent permit reviews, [but] the proposal must have an overall emission reduction performance that is at least equivalent to those previously accepted as BACT." In some cases, the analysis may still proceed to Tier II, but only if "the applicant has demonstrated compelling technical differences between their process and others within the same industry."

The ALJs noted that Rio Grande LNG "utilizes the same GE Frame 7EA turbines in refrigerant compressor service" as Port Arthur LNG's proposed project, but that the NOx and CO limits proposed by Port Arthur LNG were higher. They also noted that Port Arthur LNG "failed to identify Rio Grande LNG in its BACT analysis[] and failed to demonstrate why a CO emission limit of 15 ppmvd is not BACT for the Facility." Further, "neither the [Executive Director] nor Applicant offered additional evidence to demonstrate that there is a 'compelling technical difference' as to why Applicant's CO BACT proposal is less than what has been accepted as BACT in recent permit reviews."

The ALJs explained that "because Applicant's proposed emission reduction level of 25 ppmvd for CO is not 'at least' equivalent to Rio Grande LNG, which is also located in an attainment area and recently permitted with a BACT CO emission limit of 15 ppmvd through the use of good combustion practices, the third step of [APDG's] Tier I analysis has not been demonstrated." Accordingly, the ALJs proposed that the Commission approve the application subject to amendments that limited Port Arthur LNG's refrigeration compression turbine emissions to 5 ppmvd of $NO_X$ and 15 ppmvd of CO, the same as Rio Grande LNG.

No. 22-60556

TCEQ's Executive Director objected to the ALJs' proposal for decision. Citing EPA's NSR Manual and APDG 6110, he wrote that Rio Grande LNG's emissions limits had not been "demonstrated in practice," as Rio Grande LNG was "not in operation."

On August 31, 2022, David Garcia, a permitting staff member in EPA's regional office, submitted a letter disagreeing with the Executive Director.[2] Garcia explained that, under EPA's definition of BACT, a limit "is not always required to be operational or actually demonstrated in practice to be considered technically feasible and BACT." He also wrote that "[w]hile it is not mandatory to select a specific limit as BACT solely because another similar source has done so, the basis for selecting a less stringent limit should be documented in the permit record for evaluation."

Port Arthur LNG's application and the ALJs' proposal for decision then went to the Commission. Under Texas law, the Commission may amend a proposal for decision, "including any finding of fact," when it deems appropriate, but its amendments must be based on the record, and the Commission must explain the basis of the amendments. TEX. GOV'T CODE § 2003.047(m).

The Commission held a hearing on the ALJs' proposal for decision on September 7, 2022. On September 15, 2022, it granted Port Arthur LNG's permit application and rejected the ALJs' proposed amendments. It explained, as relevant here, that while Rio Grande LNG had stricter refrigeration compression emissions limits, no "operational data" showed

---

[2] TCEQ argues that this letter cannot be considered by this court because it was never part of the administrative record. However, "[t]he record in a contested case shall include the following: (1) all pleadings, motions, and intermediate rulings." 30 TEX. ADMIN. CODE § 80.275. Because PACAN attached the letter as an exhibit to its motion for rehearing, it is part of the agency record.

that those limits are actually achievable. It also deleted the ALJs' conclusions of law referring to APDG 6110 and EPA's NSR Manual because they "exclude important elements of a BACT analysis" and because "TCEQ's and EPA's BACT guidance documents are non-regulatory and do not establish binding legal requirements."

PACAN moved for rehearing. The Commission did not act within 55 days, so the motion was overruled by operation of law. *See* 30 Tex. Admin. Code §§ 55.211(f), 80.272(e)(1). PACAN timely petitioned this court for review.

## II. STANDARD OF REVIEW

Federal appellate courts reviewing state agency proceedings generally adhere to the applicable state law standard of review. *See Township of Bordentown v. FERC*, 903 F.3d 234, 270 (3d Cir. 2018) ("Federal courts reviewing state agency action afford the agencies the deference they would receive under state law."). The parties here agree that this court should apply the standard of review that would apply to TCEQ in Texas state courts.

Under Texas law, the only issue for a reviewing court to decide is "whether the [Commission's] action is invalid, arbitrary, or unreasonable." Tex. Health & Safety Code § 382.032(e). Texas courts interpret this statute to incorporate the standard of review under the Texas Administrative Procedure Act. *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 801 (Tex. App.—Austin 2000, pet. dism'd); *Smith v. Hous. Chem. Servs., Inc.*, 872 S.W.2d 252, 257 n.2 (Tex. App.—Austin 1994, writ denied). Under the Texas APA, a court shall reverse or remand the case if the agency's findings, inferences, conclusions, or decisions are, *inter alia*, "not reasonably supported by substantial evidence" or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code §§ 2001.174(2)(E),(F). Whether that

standard is met is a question of law reviewed *de novo*. *Grissom*, 17 S.W.3d at 801; *see also Phillips Petroleum Co. v. Tex. Comm'n on Env't Quality*, 121 S.W.3d 502, 505 (Tex. App.—Austin 2003, no pet.) (citation omitted) (explaining that "[w]hether the Commission failed to follow its own rules presents a question of law" and is therefore subject to *de novo* review).

## III. DISCUSSION

### a. Standing

As a preliminary matter, Port Arthur LNG argues that PACAN lacks Article III standing to challenge the Commission's permit approval. As an association, PACAN may invoke the standing of its members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). To do so, it must demonstrate, *inter alia*, that its members have individual standing. *Id.* (citation omitted). That is, its members must have suffered (1) an injury in fact, (2) fairly traceable to the challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). Here, PACAN invokes the standing of its president and founder, John Beard.

Port Arthur LNG argues that PACAN failed to allege that Beard suffered any injury traceable to CO emissions in particular. PACAN points to Beard's declaration submitted to the State Office of Administrative Hearings. There, Beard declared that his home is less than four miles from the proposed facility and that "[i]f Port Arthur LNG is allowed to emit *all of the air pollution it says it will emit* . . . I will . . . have to limit how much time I spend outside at my house." (Emphasis added.) He declared that he was concerned about health effects "as a result of *the additional pollution* Port Arthur LNG will add to the air at my property." (Emphasis added.) After detailing the ongoing recreational activities in which he has long engaged at nearby Pleasure Island and Keith Lake Cut, he declared, "I am concerned

that *air pollution* will harm recreational opportunities at Pleasure Island and near Pleasure Island, such as the Keith Lake Cut. I am worried because I am concerned that *air pollution* will harm air quality, water quality, and plant life in this area." (Emphasis added.)

The Supreme Court has found similar testimony of association members—reflecting reasonable concerns about the negative effect of pollution on their personal interests—to be sufficient to establish standing. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 182-84 (2000). The Court did not require that testimony to refer to specific pollutants. *See id.*

Accordingly, Beard's declaration is sufficient to support PACAN's standing.

### b. The PSD Permit

PACAN argues that because Rio Grande LNG's emissions limits were BACT, the Commission erred by allowing higher CO and $NO_X$ limits for Port Arthur LNG. TCEQ responds that the Commission's determination that those levels were not demonstrated and therefore not achievable, and thus should not be required, is consistent with governing clean air regulations.

"We may judge the sufficiency of the Commission's order solely on the basis given by the agency itself for its decision; to do otherwise would constitute an invasion of the agency's province." *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 899 (Tex. App.—Austin 1993, writ denied); *see also Morgan Drive Away, Inc. v. R.R. Comm'n of Tex.*, 498 S.W.2d 147, 152 (Tex. 1973) ("We may consider only what was written by the Commission in its order, and we must measure its statutory sufficiency by what it says.").

No. 22-60556

In the Explanation of Changes section of its order, the Commission explained why it rejected the limits the ALJs proposed for Port Arthur LNG's refrigeration compression turbines. As relevant here, it concluded "that a $NO_X$ emissions limit of five ppmvd and a CO emissions limit of 15 ppmvd does not satisfy EPA's or the TCEQ's definition of BACT." It explained, quoting EPA's regulations, that EPA's definition is based on a case-by-case determination of what is "achievable," accounting for "energy, environmental, and economic impacts and other costs." *See* 40 C.F.R. § 52.21(b)(12). It also explained, quoting the Texas Administrative Code, that TCEQ defines BACT as a pollution-control method that "through experience and research, has proven to be operational, obtainable, and capable of reducing or eliminating emissions" while being "technically practical and economically reasonable for the facility." *See* Tex. Admin. Code § 116.10(1). Any BACT analysis "requires a demonstration that the emissions limitations are achievable," using those federal and state definitions of BACT to guide the determination.

The Commission concluded that the ALJs' recommended limits "were not demonstrated to be achievable or proven to be operational, obtainable, and capable of being reached." It distinguished Port Arthur LNG from several other facilities. As to Rio Grande LNG, the Commission acknowledged that lower emissions limits had been approved for the refrigeration compression turbines there, but that facility was "not in operation and there is no operational data to prove that [its] permitted limits are achievable at this time."

The issue, then, is whether the Commission committed legal error by disregarding the Rio Grande LNG emissions limits because Rio Grande LNG is "not in operation." Contrary to the Commission's analysis, both state and federal guidelines direct the agency to adhere to previously imposed emissions limits in evaluating BACT. As the ALJs concluded, APDG 6110,

TCEQ's guidance document, says that a proposal "must have an overall emission reduction performance that is at least equivalent to those previously accepted as BACT." If the proposal falls below that level, "but the applicant has demonstrated compelling technical differences between their process and others within the same industry," the analysis proceeds to Tier II.

Meanwhile, the NSR Manual, EPA's guidance document, states that "a permit requiring application of a certain technology or emission limit to be achieved for such technology is sufficient justification to assume the technical feasibility of that technology or emission limit." It also states that "a commercially available control option will be presumed applicable if it has been or is soon to be deployed (e.g., is specified in a permit) on the same or a similar source type."

But the Commission concluded that "the TCEQ's and EPA's BACT guidance documents are non-regulatory and do not establish binding legal requirements." We agree—to an extent. As to the NSR Manual, EPA itself has explained that Texas is not "required to follow EPA's interpretations and guidance issued under the Act in the sense that those pronouncements have independent status as enforceable provisions of the Texas PSD SIP, such that mere failure to follow such pronouncements, standing alone, would constitute a violation of the Act." 57 Fed. Reg. 28,095 (June 24, 1992). The Supreme Court has also noted that "[n]othing in the Act or its implementing regulations mandates [the NSR Manual's] top-down analysis." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 476 n.7 (2004) (citing 42 U.S.C. § 7479(3); 40 C.F.R. § 52.21(j)).

As to APDG 6110, TCEQ points to a recent decision of the Texas Court of Appeals concerning a different guidance document, called Modeling and Effects Review Applicability, or "MERA." The Court of Appeals concluded that MERA was not binding because it gave TCEQ discretion to

deviate when appropriate. *Tex. Comm'n on Env't. Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 521 (Tex. App.—Austin 2023, no pet. h.). Indeed, the MERA guidance explicitly stated that it "is not regulatory" and that "staff may deviate from this guidance with approval from their supervisors or from the Air Permits Division (APD) director." *Id.*

APDG 6110 contains essentially identical language:

> [T]his document is not regulatory and does not limit the permit reviewer's ability to require the applicant to provide additional information . . . In some instances, permit reviewers may deviate from this guidance on a case-by-case basis; deviation from the guidance may only occur with the approval of the permit reviewer's supervisors or of the Air Permits Division (APD) director.

Thus, like the MERA guidance—and EPA's NSR manual—APDG 6110 is not a binding rule.

But whether the guidelines are strictly binding does not render them irrelevant. An agency must explain its reasoning "when it appears to have departed from its earlier administrative policy or to be inconsistent in its determinations." *Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*, 406 S.W.3d 253, 267 (Tex. App.—Austin 2013, no pet.); *see also City of El Paso*, 851 S.W.2d at 900. In *Oncor*, an electric utility challenged the state Public Utility Commission's ruling that the utility could not recover expenses incurred in earlier rate-setting proceedings without prior authorization. *Id.* at 259, 266. On appeal, the utility argued that the commission's prior authorization requirement was inappropriate because the commission had never imposed it in the past. *Id.* at 265. Indeed, the utility pointed to a number of cases where no prior authorization had been sought by a utility, but expenses were nonetheless recovered. *Id.* at 266. The commission countered that the utility had failed to point to an actual policy

or practice showing that the commission always allowed the expenses without prior authorization. *Id.*

The court sided with the utility. *Id.* at 267. Among the persuasive factors was the number of cases where the commission had allowed utilities to recover expenses without prior authorization. *Id.* Those cases established a policy, which the commission's new prior authorization rule contradicted. *Id.* Further, while the court based its conclusion in part on those prior cases, it explained that the question is one of law—that is, whether the commission legally erred by applying a new standard and "failing to adequately explain the reasoning for its change in position." *Id.* at 269. In particular, the commission failed to "provide any statutory, rule-based, or precedential support or analysis," or any evidence, to justify the prior authorization rule. *Id.* at 268. Thus, the commission "acted arbitrarily and capriciously by changing its position . . . without providing any explanation for its change in its prior practice and by denying Oncor's expenses on the basis of its new position." *Id.* at 272.

In this case, the Commission rejected the ALJs' proposed CO and $NO_X$ emissions limits because they were "not demonstrated to be achievable or proven to be operational, obtainable, and capable." Even though those limits had been approved for Rio Grande LNG, there was no "operational data to prove" they were achievable.

Unlike the court in *Oncor*, we need not examine the Commission's decisions in other proceedings to see that this requirement was a change in policy. First, TCEQ's own guidance manual states that a new facility must reduce emissions to a degree "at least equivalent" to prior facilities that were "previously accepted" as BACT. Here, the record is clear—the limits imposed on Port Arthur LNG are not "at least equivalent" to those imposed on Rio Grande LNG. Therefore, the Commission's own policy directed it to

consider Rio Grande LNG's limits, even if Rio Grande LNG was not currently in operation.

TCEQ argues that APDG 6110 also "generally" requires an "emission reduction option" to have been "successfully demonstrated" before it can be imposed on a facility. But even assuming that the "emissions reduction options" at Rio Grande LNG were not "successfully demonstrated" when Rio Grande LNG's limits were accepted as BACT, APDG 6110 still requires consideration of those options subject to a number of factors—some of which are set forth in APDG 6110, but none of which the Commission discussed.

Second, TCEQ admitted at oral argument that it has defined the term "operational" inconsistently. Its counsel explained that, as used in TCEQ's BACT definition, 30 Tex. Admin. Code § 116.160(c), the term means "*capable of* operating." Nevertheless, counsel explained that when the Commission evaluated Port Arthur LNG's permit application, it construed the term to mean "*currently* operating," thereby disqualifying Rio Grande LNG's limits from consideration.

Those facts demonstrate that the Commission's order, including its "operational data" requirement, departed from the Commission's policy of adhering to earlier permit limits. *Oncor*, 406 S.W.3d at 267. That departure triggered the Commission's burden to "adequately explain" why it did what it did. *Id.* at 269. But the Commission set forth no "statutory, rule-based, or precedential support or analysis" to justify why it disregarded its own policy, nor did it even acknowledge that it had done so. That was an error of law. As the Texas Court of Appeals has explained, an agency acts arbitrarily and capriciously when it changes its requirements without adequately explaining why doing so was justified. *See Oncor*, 406 S.W.3d at 269.

The Commission is not forever bound to the emissions limits that it set for Rio Grande LNG for all subsequent permits. Indeed, BACT determinations are intrinsically case-by-case determinations. *See* 40 C.F.R. § 52.21(b)(12). But in making those individualized determinations, the Commission must demonstrate that it is treating permit applications consistently. *See Oncor*, 406 S.W.3d at 267.

"The requirement of explanations or reasons is frequently imposed when it appears to the reviewing court that an agency has departed from its earlier administrative policy or there exists an apparent inconsistency in agency determinations." *City of El Paso*, 851 S.W.2d at 900. Here, the Commission departed from the policy contained in APDG 6110 that a facility "must have an overall emission reduction performance that is at least equivalent to those previously accepted as BACT." It then failed to adequately explain why it did so. Because the Commission failed to justify its deviation from its policy, it acted arbitrarily and capriciously. *See Oncor*, 406 S.W.3d at 269.

## CONCLUSION

The Commission's order granting Port Arthur LNG's PSD permit application is VACATED and the matter is REMANDED to the Commission for proceedings consistent with our opinion.