No. 22-60556

# In the United States Court of Appeals for the Fifth Circuit

PORT ARTHUR COMMUNITY ACTION NETWORK,

*Petitioner,*

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; JON NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

*Respondents.*

On Petition for Review from the
Texas Commission on Environmental Quality

**BRIEF FOR THE GOVERNOR OF TEXAS
AS AMICUS CURIAE IN SUPPORT OF
RESPONDENTS' PETITIONS FOR REHEARING EN BANC**

GREG ABBOTT
Governor of Texas

Office of the Governor
P.O. Box 12428
Austin, Texas 78711
Tel.: (512) 936-3306
Fax: (512) 463-1932

JAMES P. SULLIVAN
General Counsel

TREVOR W. EZELL
Deputy General Counsel
trevor.ezell@gov.texas.gov

CALEB GUNNELS
Assistant General Counsel

*Counsel for Amicus Curiae*

# SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

No. 22-60556

PORT ARTHUR COMMUNITY ACTION NETWORK,
*Petitioner*,

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; JON NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,
*Respondents.*

In accordance with Fifth Circuit Rule 29.2, undersigned counsel of record certifies that the following listed persons and entities have an interest in this amicus brief. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Greg Abbott, Governor of Texas
2. James P. Sullivan, counsel for Amicus Curiae
3. Trevor W. Ezell, counsel for Amicus Curiae
4. Caleb Gunnels, counsel for Amicus Curiae

/s/ Trevor W. Ezell
TREVOR W. EZELL
*Counsel of Record for Amicus Curiae*

i

# TABLE OF CONTENTS

Page

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES ................................ i
TABLE OF AUTHORITIES .............................................................. iii
INTEREST OF AMICUS CURIAE ........................................................ 1
ARGUMENT ............................................................................... 3

I. The Panel's Finding that TCEQ Violated State Law Exceeded Any Statutory Jurisdiction and Violated the Constitution's Guarantee of Sovereign Immunity. ...................... 3

II. That EPA Has Approved Texas's SIP Provides No Workaround—Because TCEQ Still Executes State Law. ............ 7

CONCLUSION ........................................................................... 11
CERTIFICATE OF SERVICE ......................................................... 12
CERTIFICATE OF COMPLIANCE ................................................... 12

## Table of Authorities

Page(s)

**Cases:**

*Alden v. Maine,*
 527 U.S. 706 (1999) .................................................................. 6

*Atwater v. City of Lago Vista,*
 532 U.S. 318 (2001) .................................................................. 8

*Bonaparte v. Appeal Tax Court,*
 104 U.S. 592 (1881) .................................................................. 9

*Collins v. Yellen,*
 141 S. Ct. 1761 (2021) .............................................................. 5

*Columbia Riverkeeper v. U.S. Coast Guard,*
 761 F.3d 1084 (9th Cir. 2014) .................................................. 8

*Denezpi v. United States,*
 596 U.S. 591 (2022) .................................................................. 7

*Dominion Transmission, Inc. v. Summers,*
 723 F.3d 238 (D.C. Cir. 2013) ............................................. 5, 8

*Franchise Tax Bd. of Cal. v. Hyatt,*
 139 S. Ct. 1485 (2019) .............................................................. 6

*Gilmore v. Ebbert,*
 895 F.3d 834 (6th Cir. 2018) .................................................. 9

*Islander E. Pipeline Co. v. Conn. Dep't of Envtl. Prot.,*
 482 F.3d 79 (2d Cir. 2006) ...................................................... 5

*Murphy v. NCAA,*
 138 S. Ct. 1461 (2018) ............................................................ 10

*New York v. United States,*
 505 U.S. 144 (1992) ................................................................ 10

*Parker Drilling Mgmt. Serv., Ltd. v. Newton,*
 139 S. Ct. 1881 (2019) .............................................................. 7

*PennEast Pipeline Co. v. New Jersey,*
 141 S. Ct. 2244 (2021) .............................................................. 6

*Pennhurst State Sch. & Hosp. v. Halderman,*
 465 U.S. 89 (1984) ................................................................ 6, 7

*Printz v. United States,*
 521 U.S. 898 (1997) .................................................................. 2

*Shrimpers & Fishermen of RGV v. TCEQ*,
  968 F.3d 419 (5th Cir. 2020) ............................................................... 6
*Town of Weymouth v. Mass. Dep't of Envtl. Prot.*,
  961 F.3d 34 (1st Cir. 2020) ................................................................. 7
*United States v. Balsys*,
  524 U.S. 666 (1998) ......................................................................... 10
*Williams ex rel. J.E. v. Reeves*,
  981 F.3d 437 (5th Cir. 2020) ............................................................... 6
*Wis. Dep't of Health & Family Servs. v. Blumer*,
  534 U.S. 473 (2002) ......................................................................... 10
*Ex parte Young*,
  209 U.S. 123 (1908) ........................................................................... 6

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const., amend. XI ............................................................................. 6
5 U.S.C.:
  § 3372(a)(1) ...................................................................................... 8
  § 3372(a)(2) ...................................................................................... 8
8 U.S.C. § 1357(g) ................................................................................... 8
15 U.S.C.:
  § 717b(d)(2) ...................................................................................... 8
  § 717b(e)(1) ...................................................................................... 8
  § 717r(d) ..................................................................................... 3, 5
  § 717r(d)(1) ................................................................................ 2, 4, 5
  § 717r(d)(3) ................................................................................ 2, 4, 5
18 U.S.C. § 13(a) ..................................................................................... 7
28 U.S.C.:
  § 543(a) ............................................................................................ 8
  § 543(b) ............................................................................................ 9

42 U.S.C.:
   § 7407(a) .................................................................................................. 1
   § 7409 ...................................................................................................... 1
   § 7410(a)(1)–(3) ...................................................................................... 1
   § 7410(a)(2)(C) ....................................................................................... 1
   § 7410(c)(1) ............................................................................................. 2
   § 7413(b)–(c) .......................................................................................... 2
   § 7475(a)(1), (4) ..................................................................................... 8
   § 7479(3) ................................................................................................. 8
   § 7509(a)(1)–(4) ...................................................................................... 2
   § 7509(b)(1)–(2) ..................................................................................... 2

49 U.S.C. § 44922(a) ...................................................................................... 8

TEX. CONST. art. IV, § 10 ............................................................................... 5

TEX. CODE CRIM. PROC.:
   art. 2.122 ............................................................................................. 8, 9
   art. 2.124 ................................................................................................. 8
   art. 51.01 ................................................................................................. 9

TEX. HEALTH & SAFETY CODE:
   § 361.011 ................................................................................................. 4
   § 382.011 ................................................................................................. 4
   § 382.0518 ............................................................................................... 5
   § 382.051961 ........................................................................................... 5

TEX. NAT. RES. CODE § 40.005 ...................................................................... 4

TEX. WATER CODE:
   § 5.002 ..................................................................................................... 4
   § 5.051 ..................................................................................................... 4
   § 5.052 ..................................................................................................... 5
   § 5.058 ..................................................................................................... 5
   § 5.101 ..................................................................................................... 4
   § 5.102 ..................................................................................................... 4
   § 5.103 ..................................................................................................... 4

S.B. 4, § 2, 88th Leg., 4th C.S. (Tex. 2023) ................................................. 7

N.C. GEN. STAT. § 15A-406(b) ...................................................................... 8

FED. R. APP. P. 29(b) ...................................................................................... 3

40 C.F.R.:
   §§ 52.2270–52.2312 ............................................................................... 7
   § 52.21(b)(12) ......................................................................................... 8

30 TEX. ADMIN. CODE:
　§ 116.10...........................................................................................5
　§ 116.110.........................................................................................5
　§ 116.111.........................................................................................5
　§ 116.160.........................................................................................5
　§ 116.161.........................................................................................5
　§ 116.162.........................................................................................5
　§ 116.163.........................................................................................5

**Other Authorities:**

Amicus Brief for Texas and Louisiana, *Williams ex rel. J.E. v. Reeves*, No. 19-60069, 2020 WL 2947997 (5th Cir. May 26, 2020) ............................................................................... 1–2
TCEQ, APDG 6110, Air Permit Reviewer Reference Guide, Air Pollution Control (2011) ............................................................... 4

## INTEREST OF AMICUS CURIAE

The Texas Commission on Environmental Quality ("TCEQ") and Port Arthur LNG, L.L.C. ("Intervenor") both argue that the panel opinion here got state law wrong. TCEQ PFREB 6, 8–14; Intervenor PFREB 8–18. They are right about that. But it's fair to ask *why* the panel set out to decide state-law questions in the first place.

The Clean Air Act tasks the Environmental Protection Agency ("EPA") with setting national ambient air quality standards ("NAAQS") for certain pollutants. 42 U.S.C. § 7409. Seeing obvious challenges posed by the prospect of enforcing such NAAQS in 50 different jurisdictions, Congress purported to enlist the help of States to ensure regional compliance. Under a regime of cooperative federalism, States may voluntarily choose to submit a state implementation plan ("SIP") pursuant to their own environmental laws and regulations for EPA's approval. *Id.* §§ 7407(a), 7410(a)(1)–(3). Among other plan components, States are asked to include measures to ensure NAAQS compliance during the "modification or construction of a[] stationary source." *Id.* § 7410(a)(2)(C).

But States, their Governors, and their executive agencies have no obligation to do any of that. They may choose not to assume this voluntary undertaking to begin with or not to follow through on it later. "Choosing to take one route rather than the other is not a 'violation' of federal law." Amicus Brief for Texas and Louisiana, *Williams ex rel. J.E.*

*v. Reeves*, No. 19-60069, 2020 WL 2947997, at *4 (5th Cir. May 26, 2020). Precisely because Congress cannot "impress into its service—and at no cost to itself—the [regulators] of the 50 States," *Printz v. United States*, 521 U.S. 898, 922 (1997), EPA has only sticks and carrots at its disposal. So, if a State fails to submit a plan, submits a defective plan, or fails to implement an approved plan, 42 U.S.C. § 7509(a)(1)–(4), EPA's Administrator may promulgate a federal plan instead, *id.* § 7410(c)(1), or withdraw certain highway funds, *id.* § 7509(b)(1)–(2). EPA may also seek civil or criminal penalties against industry actors themselves who allegedly violate an EPA-approved SIP. *Id.* § 7413(b)–(c).

Entirely independent of that Clean Air Act regime, the Natural Gas Act authorizes federal court review of action by a state agency "acting pursuant to Federal law to issue, condition, or deny" a permit to construct, expand, or operate a liquefied natural gas terminal, 15 U.S.C. § 717r(d)(1), and authorizes a judicial remedy only if that agency action is "[1] inconsistent with the Federal law governing such permit and [2] would prevent the construction, expansion, or operation of the facility," *id.* § 717r(d)(3). The Port Arthur Community Action Network ("PACAN") invoked these provisions to challenge TCEQ's decision applying *state* law to *permit* Intervenor to construct a liquefied natural gas terminal. The panel was wrong to accept that invitation. Applying a state (not federal) standard of review, vacating a permit that allowed (not prevented) construction of a facility, and ordering a state agency to comply with

state-law regulations flouted not only the express limits of § 717r(d), but also the Constitution's guarantee of sovereign immunity. EPA's approval of Texas's SIP for federal regulatory purposes does not change any of that because TCEQ continues to implement state—not federal—law as a state agency accountable to the Governor of Texas, not to the President of the United States.

The panel (or en banc Court) should grant rehearing and dismiss the petition for review.[1]

## ARGUMENT

### I. The Panel's Finding that TCEQ Violated State Law Exceeded Any Statutory Jurisdiction and Violated the Constitution's Guarantee of Sovereign Immunity.

**A.** The panel unquestionably applied state law, perhaps because PACAN argued that the Texas Administrative Procedure Act controlled. In its merits brief, the challenger described the standard of review "[u]nder Texas law" and applied that state-law standard to state-law regulations. PACAN BOM 18–19, 34–58. The panel even noted "[t]he parties here agree that this court should apply the standard of review that would apply to TCEQ in Texas state courts." Op. at 7; *see* TCEQ BOM 20–24; Intervenor BOM 18–20.

---

[1] All parties consent to the filing of this brief. No counsel for any party authored this brief in whole or in part; no party or counsel made monetary contributions to fund its preparation or submission; and no person other than amicus or his counsel made such a contribution. FED. R. APP. P. 29(b).

3

Unsurprisingly, then, the panel rested its decision on that state-law basis. Its entire frame of analysis is keyed to "Texas law" and "the Texas APA." Op. at 7–8. It relied almost exclusively on state-law cases. Op. at 9–10, 12–15. And it focused on state—not federal—regulations: The panel *disavowed* reliance on EPA's NSR Manual and relied on TCEQ guidance instead. Op. at 11–12 (citing TCEQ, APDG 6110, Air Permit Reviewer Reference Guide, Air Pollution Control (2011)). The panel decision was state law all the way down.

**B.** But the Natural Gas Act does not give this Court statutory jurisdiction to police (alleged) errors of state law by a state agency. Unfortunately, the party invoking this Court's jurisdiction barely considered statutory jurisdiction here. *See* PACAN BOM 6; *see also* Intervenor BOM 11; TCEQ BOM 20. Section 717r(d)(1) authorizes judicial review of action by a state agency "acting pursuant to Federal law" with respect to permitting for a liquefied natural gas terminal. And § 717r(d)(3) authorizes a judicial remedy only for actions "inconsistent with the Federal law" governing such permits and which "would prevent the construction, expansion, or operation of the facility."

TCEQ is "an agency of the state" of Texas authorized to implement environmental "laws of this state." TEX. WATER CODE §§ 5.002, 5.051, 5.101–5.103; *see, e.g.*, TEX. HEALTH & SAFETY CODE §§ 361.011, 382.011; TEX. NAT. RES. CODE § 40.005. Because TCEQ ultimately answers to the "Chief Executive Officer" of Texas and not to the President of the United

4

States, TEX. WATER CODE §§ 5.052, 5.058; TEX. CONST. art. IV, § 10, it ordinarily may not wield federal executive power, *Collins v. Yellen*, 141 S. Ct. 1761, 1783–87 (2021). And in choosing to award an air quality standard permit for the facility at issue here, it plainly "act[ed] pursuant to" *state* statutes and regulations. *See* TEX. HEALTH & SAFETY CODE §§ 382.0518, 382.051961 (establishing permit requirement and directing TCEQ to issue permitting rules); 30 TEX. ADMIN. CODE §§ 116.10, 116.110–116.111, 116.160–116.163 (TCEQ permitting rules).

Even if TCEQ could somehow be deemed to be executing federal laws for purposes of § 717r(d)(1), the panel identified nothing in TCEQ's orders that was "inconsistent with federal law"—only *state law*. Op. at 7–15. And TCEQ's orders, in any event, "would [not] prevent the construction, expansion, or operation of the facility" at all—but would instead *permit* it. Op. at 3, 6–7. Those are two independent limits in § 717r(d)(3), as other circuits recognize. *See, e.g.*, *Islander E. Pipeline Co. v. Conn. Dep't of Envtl. Prot.*, 482 F.3d 79, 85, 94 (2d Cir. 2006) (highlighting both prerequisites to judicial relief); *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 241–42 (D.C. Cir. 2013) (state agency order was reviewable because it would have *prevented* construction). At every possible turn, the panel exceeded its jurisdiction under § 717r(d).

**C.** In the process, the panel also transgressed the Constitution. For, in addition to the sovereign immunity that States enjoy in their own courts, they also enjoy two distinct immunities in federal court: Eleventh

5

Amendment immunity and structural immunity. *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2263–64 & n.1 (2021) (Gorsuch, J., dissenting). Structural immunity derives from the Constitution's inherent recognition of "States" as formerly independent sovereigns entitled not to be sued without their consent—a privilege they largely retained when forming into a Union. *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1493–99 (2019). *Ex parte Young*'s narrow exception to that prerogative, allowing federal courts to order state actors not to violate *federal law*, has no application where federal courts grant "relief against state officials on the basis of *state law*." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (emphasis added); *see also Williams ex rel. J.E. v. Reeves*, 981 F.3d 437, 441–43 (5th Cir. 2020) (Jones, J., dissenting from denial of rehearing en banc) (discussing *Pennhurst* doctrine).[2]

The panel here did just what *Pennhurst* prohibits: It applied the Texas APA to Texas regulations in order to command a Texas agency to undertake further administrative actions "consistent with [this Court's] opinion" on the meaning of "Texas law." Op. at 1, 15; *see also Shrimpers & Fishermen of RGV v. TCEQ*, 968 F.3d 419, 428 (5th Cir. 2020) (Oldham,

---

[2] Although *Pennhurst* occasionally referred to "Eleventh Amendment immunity," 465 U.S. at 97–99, that was "a misnomer," *Alden v. Maine*, 527 U.S. 706, 713 (1999). The case involved structural immunity because it was brought by Pennsylvania citizens, *see Pennhurst*, 465 U.S. at 92, not "Citizens of another State," U.S. CONST. amend. XI.

J., concurring) (flagging *Pennhurst* problem). "It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

## II. That EPA Has Approved Texas's SIP Provides No Workaround—Because TCEQ Still Executes State Law.

**A.** PACAN might respond that state law *became* federal law when EPA approved Texas's SIP. *See* 40 C.F.R. §§ 52.2270–52.2312 (incorporating Texas statutes and regulations by reference); *Town of Weymouth v. Mass. Dep't of Envtl. Prot.*, 961 F.3d 34, 39 n.2 (1st Cir. 2020). But approving a different sovereign's law does not transmogrify that law into something it is not. As a general matter, one sovereign may adopt the laws of another. The federal government, for example, may adopt state law for federal-law purposes. *See, e.g.*, *Parker Drilling Mgmt. Serv., Ltd. v. Newton*, 139 S. Ct. 1881, 1886 (2019); 18 U.S.C. § 13(a). State governments may do the same. *See, e.g.*, S.B. 4, § 2, 88th Leg., 4th C.S. (Tex. 2023).

None of that means the laws of Sovereign A, when approved by Sovereign B, become anything other than the laws of Sovereign A. *See, e.g.*, *Denezpi v. United States*, 596 U.S. 591, 595–96, 598–99 (2022) (tribal criminal laws remained distinct from identical federal criminal laws even after being "approved" by the federal government). When the colonies enacted "reception" statutes adopting the English common law on this

7

side of the Atlantic, those enactments in no way altered the nature of the common law in England. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 338 n.9 (2001). EPA may have indicated that it approves of Texas's environmental statutes and TCEQ's regulations implementing them. But those state rules do not cease to be state rules the moment the federal government blesses them. And the state agency tasked with carrying those state laws into execution does not suddenly become a federal field office acting pursuant to federal executive power.[3]

**B.** That does not mean one sovereign can never exercise another's sovereign power. The federal government can deputize state actors. *See, e.g.*, 5 U.S.C. § 3372(a)(2); 8 U.S.C. § 1357(g); 28 U.S.C. § 543(a); 49 U.S.C. § 44922(a). And state governments can deputize federal actors. *See, e.g.*, 5 U.S.C. § 3372(a)(1); TEX. CODE CRIM. PROC. arts. 2.122, 2.124; N.C. GEN. STAT. § 15A-406(b). But such cross-sovereign exercises of sovereign power

---

[3] Even if TCEQ could be deemed to wield federal power on EPA's behalf in other scenarios, there is another reason not to view its conduct that way here. Under the Clean Air Act, EPA purports to require a "major emitting facility" to obtain a preconstruction permit showing it would employ "the best available control technology" for covered pollutants. 42 U.S.C. § 7475(a)(1), (4); *see id.* § 7479(3); 40 C.F.R. § 52.21(b)(12). Whatever permitting authority EPA may have over other facilities, the Natural Gas Act gives the Federal Energy Regulatory Commission "the *exclusive authority* to approve or deny an application for the siting, construction, expansion, or operation of an *LNG terminal*." 15 U.S.C. § 717b(e)(1) (emphases added). Elsewhere that Act preserves "the rights of States" to permit such facilities, *id.* § 717b(d)(2); *see Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1088 (9th Cir. 2014); *Dominion Transmission*, 723 F.3d at 243–44, but contains no similar carveout for EPA. Because FERC thus divests EPA (but not States) of permitting authority for the kind of facility at issue here, EPA has no federal power for TCEQ to wield on its behalf.

are normally subject to strict limits, like cabining the scope of the deputy's authority or subjecting him to oversight by the sovereign doing the deputizing. *See* TEX. CODE CRIM. PROC. art. 2.122(a) (conferring arrest authority on federal agents for state "felony offenses only"); 28 U.S.C. § 543(b) (making deputized U.S. Attorneys "subject to removal by the Attorney General"). Additionally, such arrangements formally confer authority to act where none existed before. Absent express permission from Texas, for example, federal officers have no power to arrest suspects under the laws of this State.

That is unlike, say, one State conducting a criminal investigation, detaining a suspect, and extraditing him to another State. If Texas apprehended a suspected criminal who fled to Dallas after committing a murder in Tulsa, no one would say the State of Texas was acting pursuant to the criminal laws of the State of Oklahoma if it later surrendered the suspect to its northern neighbor. *See* TEX. CODE CRIM. PROC. art. 51.01. That is because Texas has independent sovereign power to investigate crime in Texas, without first appealing to Oklahoma for power that State has no power to confer outside of its territory. *See Bonaparte v. Appeal Tax Court*, 104 U.S. 592, 594–95 (1881). Texas exercises *its own* sovereign authority even when it assists an independent sovereign in facilitating that State's criminal laws. *See Gilmore v. Ebbert*, 895 F.3d 834, 836 (6th Cir. 2018) (discussing Interstate Agreement on Detainers).

9

**C.** Cooperative-federalism regimes—like the one the Clean Air Act envisions operating between EPA and state agencies like TCEQ—are more like extradition than deputization. Texas needed no conferral of sovereign authority to regulate air pollutants within its borders. That police power existed long before the Clean Air Act came on the scene in 1963, and Congress has not chosen to preempt it—assuming it even could. Instead, Congress settled on a cooperative scheme.

And the very premise of that scheme is that it requires at least two separate sovereigns capable of cooperating with one another. In other words, it consists in "the teamwork of state and national officials" administering distinct sovereign authority to facilitate the same end. *United States v. Balsys*, 524 U.S. 666, 694 (1998); *see also Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 495–96 (2002); *New York v. United States*, 505 U.S. 144, 167–68 (1992). The federal government cannot coerce States to participate in such schemes. *See Murphy v. NCAA*, 138 S. Ct. 1461, 1475–77 (2018). But Texas has chosen to wield its own power to assist the federal government in ensuring compliance with EPA's NAAQS—just like it has chosen to wield its own law-enforcement power to assist other States in bringing fugitive criminals to justice. Even when assisting with federal environmental priorities, TCEQ remains a state agency that implements state-law environmental rules. The panel had no business recasting it as a footstool of the federal government.

## Conclusion

The Court should grant rehearing and dismiss the petition for review.

Respectfully submitted.

GREG ABBOTT
Governor of Texas

JAMES P. SULLIVAN
General Counsel

/s/ Trevor W. Ezell
TREVOR W. EZELL
Deputy General Counsel
trevor.ezell@gov.texas.gov

CALEB GUNNELS
Assistant General Counsel

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

On December 26, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Microsoft Defender and is free of viruses.

<div style="text-align: right;">

/s/ Trevor W. Ezell
TREVOR W. EZELL

</div>

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,566 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

<div style="text-align: right;">

/s/ Trevor W. Ezell
TREVOR W. EZELL

</div>