No. 22-60556

# In the United States Court of Appeals for the Fifth Circuit

PORT ARTHUR COMMUNITY ACTION NETWORK,

*Petitioner,*

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; AND JON NIERMANN, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

*Respondents.*

On Appeal from Texas Commission on Environmental Quality
Docket No. 2021-0942-AIR

## PETITIONER PORT ARTHUR COMMUNITY ACTION NETWORK'S RESPONSE TO PETITIONS FOR REHEARING EN BANC BY RESPONDENTS AND INTERVENOR-RESPONDENT

Amy Catherine Dinn
Chase Porter
Caroline Crow
LONE STAR LEGAL AID
1415 Fannin Street
Houston, TX 77002
713-652-0077 ext 8108
713-652-3141 Fax

*Counsel for Petitioner*
*Port Arthur Community Action Network*

# TABLE OF CONTENTS

**Contents**                                                          **Page(s)**

TABLE OF CONTENTS ..................................................................... ii

CERTIFICATE OF INTERESTED PERSONS .................................. iv

GLOSSARY OF ACRONYMS AND ABBREVIATIONS ............................. vi

TABLE OF AUTHORITIES ............................................................ viii

INTRODUCTION ......................................................................... 1

   I.   FEDERAL LAW CONTROLS TCEQ'S ISSUANCE OF PSD PERMITS FOR MAJOR SOURCES LIKE PALNG'S PROPOSED FACILITY............................. 1

   II.  PALNG'S PSD PERMIT DID NOT COMPLY WITH FEDERAL OR STATE LAW........................................................................................ 3

ARGUMENT.................................................................................. 4

   I.   THE FIFTH CIRCUIT HAS ORIGINAL AND EXCLUSIVE JURISDICTION OVER THIS PSD PERMIT. ..................................................................... 5

   II.  THE COURT HAS THE POWER TO VACATE THE STATE-ISSUED PERMIT......... 8

      A.  Texas recognized the scope of Federal review in *Shrimpers*. ............. 8

      B.  Sovereign immunity provides no bar to this suit. .............................. 10

   III. TCEQ AND PALNG REARGUE ISSUES CORRECTLY DECIDED..................... 10

      A.  This Court held TCEQ to appropriate standards for review of an agency action. ..................................................................... 10

      B.  TCEQ and PALNG continue to apply inapplicable law to explain inconsistent permitting....................................................... 12

      C.  TCEQ's decision is not supported by its APDG-6110 guidance......... 14

D. TCEQ presumably considered Rio Grande LNG's emissions limits were achievable when TCEQ granted the permit amendment. ........................................................................... 16

CONCLUSION ................................................................................17

CERTIFICATE OF SERVICE................................................................18

CERTIFICATE OF COMPLIANCE.........................................................19

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

**Respondents:**

Jon Niermann, Chairperson of the Texas Commission on Environmental Quality

Texas Commission on Environmental Quality

Counsel:  Office of the Attorney General of Texas, Austin, TX

- Ken Paxton, Attorney General of Texas
- Brent Webster, First Assistant Attorney General
- James Lloyd, Deputy Attorney General for Civil Litigation
- Kellie Billings-Ray, Chief, Environmental Protection Division
- Erin K. Snody, Assistant Attorney General
- J. Amber Ahmed, Assistant Attorney General
- Lanora C. Pettit, Principal Deputy Solicitor General, Office of the Attorney General of Texas Austin, TX
- William F. Cole, Assistant Solicitor General, Office of the Attorney General of Texas
- Aaron L. Nielsen, Solicitor General, Office of the Attorney General of Texas Austin, TX

Toby Baker, Former Director of the Texas Commission on Environmental Quality Austin, TX

**Petitioner:**

Port Arthur Community Action Network

Counsel for Petitioner:  Lone Star Legal Aid, Houston, TX

- Amy Catherine Dinn
- Chase Porter
- Caroline Crow

Environmental Integrity Project

**Intervenor-Respondent:**

Port Arthur LNG, L.L.C.

Counsel:  Baker Botts, LLP

- Aaron Streett, Houston, TX
- Beau Carter, Houston, TX
- Derek R. McDonald, Austin, TX

Counsel:  Akin Gump Strauss Hauer & Feld LLP

- Z.W. Julius Chen, Washington DC
- Martine E. Cicconi, Washington DC
- Michael Weisbuch, San Francisco, CA

Related Corporate Entities:

- Black Silverback ZC 2022 LP
- Conoco Phillips Port Arthur LNG LLC
- KKR Denali Holdco LLC
- KKR Pinnacle Investor L.P.
- PALNG Operator Company, LLC
- Port Arthur Liquefaction Holdings, LLC
- Sempra Global Holdings, LP
- Sempra Infrastructure Partners, LP
- Sempra LNG Holding, LP
- Sempra PALNG Holdings, LLC

*/s/ Amy Catherine Dinn*
Attorney of Record for Petitioner
Port Arthur Community Action Network

# GLOSSARY OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| ALJ | Administrative Law Judge |
| APDG 6110 | TCEQ's Air Permit Reviewer Reference Guide |
| APA | Administrative Procedure Act |
| BACT | Best Available Control Technology |
| CO | Carbon Monoxide |
| Commission / TCEQ | Texas Commission on Environmental Quality |
| CWA | Clean Water Act |
| EPA | U.S. Environmental Protection Agency |
| FCAA | Federal Clean Air Act |
| Order | Commission's September 15, 2022 Order |
| LNG | Liquefied Natural Gas |
| NAAQS | National Ambient Air Quality Standards |
| NGA | Natural Gas Act |
| $NO_x$ | Nitrogen Oxides |
| PACAN | Port Arthur Community Action Network |
| PSD | Prevention of Significant Deterioration |
| PALNG / Applicant / Intervenor | Port Arthur LNG, LLC |
| ppm | parts per million |
| SIP | State Implementation Plan |
| SOAH | State Office of Administrative Hearings |
| TCAA | Texas Clean Air Act |

| ABBREVIATION | DATE FILED | SHORT TITLE |
|---|---|---|
| Pet. Rev. | 10/17/22 | Petition for Review by PACAN |
| PACAN Br. | 02/15/23 | Opening Brief of PACAN |
| TCEQ Br. | 03/24/23 | Merits Brief of TCEQ |
| PALNG Br. | 03/31/23 | Merits Brief of PALNG |
| Rule 28(j) Notice | 07/28/23 | Rule 28(j) Notice by TCEQ |
| Oral Arg. | 08/08/23 | Oral Argument before Panel[1] |
| Op. | 11/14/23 | Opinion of the Court |
| TCEQ Pet. Reh'g En Banc | 12/19/23 | TCEQ Petition for Rehearing En Banc |
| PALNG Pet. Reh'g En Banc | 12/19/23 | PALNG Petition for Rehearing En Banc |
| PALNG Pet. Panel Reh'g | 12/19/23 | PALNG Petition for Panel Rehearing |
| Amicus Br. | 12/26/23 | Amicus Brief by Governor of Texas |

---

[1] Oral Argument recording available here:
https://www.ca5.uscourts.gov/OralArgRecordings/22/22-60556_8-9-2023.mp3.

# TABLE OF AUTHORITIES

## Cases

*AT&T Commc'ns v. BellSouth Telecomms. Inc.*,
238 F.3d 636 (5th Cir. 2001) ...........................................................10

*City of El Paso v. El Paso Elec. Co.,*
851 S.W.2d 896 (Tex. App.—Austin, 1993, writ denied) ............................10, 11

*CleanCOALition v. TXU Power,*
536 F.3d 469 (5th Cir. 2008) ........................................................... 1

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.,*
45 F.4th 846 (5th Cir. 2022) ..................................................... 9

*Del. Riverkeeper Network v. Sec'y Penn Dep't of Env't Prot.,*
903 F.3d 65 (3d Cir. 2018), *cert. denied,* 139 S.Ct 1648 (2019) ...................... 8

*Del. Riverkeeper Network v. Sec'y Penn. Dep't of Env't. Prot.*,
833 F.3d 360 (3d Cir. 2016) ....................................................6, 7, 10

*Dominion Transmission Inc. v. Summers,*
723 F.3d 238 (D.C. Cir. 2013)........................................................... 6

*Food Mktg. Inst. v. ICC,*
587 F.2d 1285 (D.C. Cir. 1978).......................................................11

*Gen. Motors Corp. v. United States*,
496 U.S. 530 (1990) ........................................................... 1

*Islander E. Pipeline v. State of Conn. Dep't of Env't. Prot.,*
482 F.3d 79 (2d Cir. 2006) ...............................................2, 6, 10, 11

*Luminant Generation Co. v. U.S. EPA,*
714 F.3d 841 (5th Cir. 2013) ........................................................... 7

*Miner v. FCC,*
663 F.2d 152 (D.C. Cir. 1980).......................................................11

*Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*,
406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.) ...................................10, 11

*S.E.C. v Chenery Corp.,*
  332 U.S. 194 (1947) ................................................................14

*Schneidewind v. ANR Pipeline Co.,*
  485 U.S. 293 (1988) ................................................................ 2

*Sierra Club v. U.S. Dep't of the Interior,*
  899 F.3d 260 (4th Cir. 2018) ................................................. 8

*Teamsters Loc. Union 769 v. NLRB,*
  532 F.2d 1385 (D.C. Cir. 1976) ...........................................11

*Tex. Comm'n on Env't. Quality v. Vecinos Para El Bienestar De La Comunidad
  Costera,*
  No. 03-21-00395-CV, 2023 WL 4670340 (Tex. App.—Austin July 21, 2023, no
  pet.) ......................................................................................... 2

*Texas v. Biden,*
  20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds,* 597 U.S. 785 (2022) ....... 9

*Town of Weymouth v. Mass. Dep't of Env't Prot.,*
  961 F.3d 34 (1st Cir. 2020)..............................................5, 6, 8

*United Steel v. Mine Safety & Health Admin.,*
  925 F.3d 1279 (D.C. Cir. 2019) ............................................ 9

**Statutes**

5 U.S.C. § 704 ............................................................................ 9

5 U.S.C. § 706 ............................................................................ 9

5 U.S.C. § 706(2) ....................................................................... 9

5 U.S.C. § 706(2)(A) .................................................................. 9

15 U.S.C. § 717(a) ..................................................................... 2

15 U.S.C. § 717b(d) ................................................................... 2

15 U.S.C. § 717r(d)..............................................................2, 5, 6, 8

15 U.S.C. § 717r(d)(1) ............................................................... 2

15 U.S.C. § 7475(a)(1) ........................................................................ 7

28 U.S.C. § 2106 ............................................................................... 8

30 Tex. Admin. Code § 116.10(1) ..................................................... 3

30 Tex. Admin. Code § 116.111(a)(2)(G) ........................................16

30 Tex. Admin. Code § 116.160(c)(1) ...........................................1, 12

30 Tex. Admin. Code § 116.160(c)(1)(A) ......................................... 7

30 Tex. Admin. Code § 116.160(c)(2)(A) ......................................... 7

30 Tex. Admin. Code § 80.17(a) .......................................................16

42 U.S.C. § 7407 ............................................................................... 1

42 U.S.C. § 7410(a)(2)(C)-(D) ........................................................ 1

42 U.S.C. § 7410(c) .......................................................................... 1

42 U.S.C. § 7475 ............................................................................... 1

42 U.S.C. § 7475(4) ......................................................................1, 4

## Regulations

40 C.F.R. § 52.21(b)(12) ...............................................................2, 12

40 C.F.R. § 52.21(j) .......................................................................... 2

40 C.F.R. § 52.2270 ........................................................................ 7

## Rules

Fed. R. App. P. 35(b)(1) ................................................................... 4

## Other Authorities

TCEQ's Corrected Response to Petitioners' Supplemental Letter Brief,
  *Shrimpers and Fishermen of the RGV v. Tex. Comm'n on Env't Quality,*
  968 F.3d 419 (5th Cir. 2020) (No. 19-60558), 2019 WL 7469921 ...................... 9

# INTRODUCTION

## I. FEDERAL LAW CONTROLS TCEQ'S ISSUANCE OF PSD PERMITS FOR MAJOR SOURCES LIKE PALNG'S PROPOSED FACILITY.

The Federal Clean Air Act ("FCAA") is a "comprehensive national program" requiring major sources of air pollution obtain preconstruction permits to further compliance with the federally defined National Ambient Air Quality Standards ("NAAQS"). *CleanCOALition v. TXU Power,* 536 F.3d 469, 471 (5th Cir. 2008) (quoting *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990)).

States may volunteer to participate in this scheme by obtaining federal approval of a state implementation plan ("SIP"), which must include an appropriate permitting program. 42 U.S.C. §§ 7407, 7410(a)(2)(C)-(D). If a state does not choose to participate, the EPA administers permitting in the state. 42 U.S.C. § 7410(c).

Acting pursuant to federal law and its federally-approved SIP, the Texas Commission on Environmental Quality ("TCEQ") issues air permits in Texas, including "Prevention of Significant Deterioration" ("PSD") permits. *CleanCOALition,* 536 F.3d at 472 (explaining Congress mandated major sources of pollution must obtain PSD permits to meet the FCAA's goals); 42 U.S.C. § 7475. To get PSD permits, the FCAA (and therefore Texas' SIP) require facilities to demonstrate Best Available Control Technology ("BACT"), defined by federal regulations. 42 U.S.C. § 7475(4); 30 TEX. ADMIN. CODE § 116.160(c)(1)

(incorporating by reference BACT definition at 40 C.F.R. § 52.21(b)(12) and requirement to adopt BACT at 40 C.F.R. § 52.21(j)).

Due to recognized public interest in regulating the sale and transportation of natural gas, the federal Natural Gas Act ("NGA") regulates liquified natural gas ("LNG") facilities and "has long been recognized as a comprehensive scheme of federal regulation." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300–01 (1988)(internal quotation omitted); 15 U.S.C. § 717(a). The NGA largely preempts state involvement but does not preempt a state's role in implementing FCAA requirements. 15 U.S.C. § 717b(d). In the Energy Policy Act of 2005, Congress amended section 19 of the NGA, corresponding to 15 U.S.C. § 717r(d), to assign judicial review of state-issued permits to federal appellate courts. *Islander E. Pipeline v. State of Conn. Dep't of Env't. Prot.,* 482 F.3d 79, 83, 85 (2d Cir. 2006) (explaining the purpose of section 19(d) is to hasten judicial review).

As a major source of pollutants, PALNG applied to TCEQ for its federally required PSD permit. Because TCEQ acted pursuant to federal law in issuing that permit, PACAN petitioned this Circuit for review as required by 15 U.S.C. § 717r(d)(1). *Tex. Comm'n on Env't. Quality v. Vecinos Para El Bienestar De La Comunidad Costera*, No. 03-21-00395-CV, 2023 WL 4670340 (Tex. App.—Austin July 21, 2023, no pet.); PACAN Pet. for Rev. 1.

2

## II.   PALNG's PSD Permit Did not Comply with Federal or State Law.

Based on PALNG's application for a PSD Permit, TCEQ issued a draft permit proposing BACT limits for certain turbines of 9ppm NOx and 25ppm CO. ROA.909; ROA.411-99. PACAN's comments highlighted deficiencies in PALNG's BACT analysis and requested a contested case hearing. ROA.10533.

TCEQ referred PACAN's request to the State Office of Administrative Hearings ("SOAH"). ROA.13819-21. An Administrative Law Judge ("ALJ") granted PACAN's request and conducted a contested evidentiary hearing. ROA.5145-51; ROA.12900-13693. Based on the record, two ALJs issued a Proposal for Decision in which they found BACT for the turbines should be 5ppm NOx and 15ppm CO. ROA.6032-126; ROA.6125. Central to that determination was that another TCEQ-issued permit for identical turbines at another LNG export facility, Rio Grande LNG, adopted those lower limits. ROA.6070; ROA.6073.

The Commission dismissed the ALJs' findings and issued an Order adopting the original, higher limits. ROA.6372-77. The Order offered only one reason for rejecting lower emissions limits: Rio Grande LNG was not yet operating. ROA.6372-73. As justification, TCEQ repeatedly refers to language in what the agency calls its "minor source" definition of BACT, 30 Tex. Admin. Code § 116.10(1). TCEQ Pet. Reh'g En Banc 11; PALNG Pet. Reh'g En Banc 4. However, PALNG is a major source of pollutants so the federal definition of BACT applies.

3

42 U.S.C. § 7475(4); 30 TEX. ADMIN. CODE § 116.160(c)(1). Notably, TCEQ and PALNG acknowledged the correct application of the federal definition of BACT to PALNG's permit in their merits briefs. TCEQ Br. 6-7; PALNG Br. 8.

Noting TCEQ offered the Panel a strained, inconsistent interpretation of the (wrong) BACT definition to justify inconsistent permitting, the Panel found TCEQ's Order arbitrary and capricious for failing to adequately explain inconsistent decision-making. Op. 14-15.

## ARGUMENT

This case does not warrant en banc review under Federal Rule of Appellate Procedure 35(b)(1). Forgetting Petitioners' express agreement to this Court's review under the NGA and the application of the federal definition of BACT to this state permitting decision, their issues of "exceptional importance" merely rehash the merits of a well-reasoned decision. And the State raises unfounded concerns of uncooperative federalism and sovereign immunity despite a well-understood statutory scheme of state delegation with federal oversight and expedited judicial review. Here, if the Court adopts Petitioners' arguments, it will *create* conflict with other Circuits that have reviewed arbitrary state agency actions under their NGA authority. And contrary to Petitioners' outcry over the result, the Panel did not instruct TCEQ to deviate from administrative policy, norms, or previous decisions. Instead, the Panel instructed TCEQ to adhere to basic and established responsibilities

4

as an administrative agency. The decision rests on well-settled law at both the federal and state level.

## I. THE FIFTH CIRCUIT HAS ORIGINAL AND EXCLUSIVE JURISDICTION OVER THIS PSD PERMIT.

TCEQ has backpedaled on the threshold issue of jurisdiction. *Compare* TCEQ R. 28(j) Notice, *with* TCEQ Pet. Reh'g En Banc 7-8. In its merits brief, TCEQ acknowledged "this action provides a sufficient federal 'ingredient' to bring it within the ambit of Article III." TCEQ Br. 20, n. 51. TCEQ then endorsed a state court decision holding the Fifth Circuit has original and exclusive jurisdiction to conduct judicial review of a state-issued LNG permit and finding Texas state courts lack that jurisdiction. *Vecinos,* 2023 WL 4670340 at *2; TCEQ R. 28(j) Notice. Post-decision, however, TCEQ reversed its position on jurisdiction, questioning its early estimation of how much of a federal 'ingredient' is present here. TCEQ Pet. Reh'g En Banc 7-8. This Court should ignore TCEQ's flipflop; this Court has original and exclusive jurisdiction under the NGA, 15 U.S.C. § 717r(d). To accept TCEQ's arguments would prevent judicial review of any NGA-regulated facility's federally-required permit in Texas.

In asserting jurisdiction, this Court has good company. Five other Courts of Appeals have exercised jurisdiction under 15 U.S.C. § 717r(d) and overturned state permitting actions under the same principles of law. *Town of Weymouth v. Mass. Dep't of Env't Prot.,* 961 F.3d 34, 40-41 (1st Cir. 2020); *Islander,* 482 F.3d at 85-

86; *Friends of Buckingham v. State Air Pollution Control Bd.,* 947 F.3d 68, 72 (4th Cir. 2020); *Dominion Transmission Inc. v. Summers,* 723 F.3d 238, 240-41 (D.C. Cir. 2013); *Del. Riverkeeper Network v. Sec'y Penn. Dep't of Env't. Prot.*, 833 F.3d 360, 371 (3d Cir. 2016).

In the FCAA cases, circuits assumed jurisdiction because the state agency was acting pursuant to federal law to issue a permit required by federal law. *Town of Weymouth,* 961 F.3d at 40-41 (holding state agency's decision to depart from prior policy and reject BACT option was arbitrary and capricious and that finding otherwise would frustrate Congress' purpose in enacting Section 717r(d)); *see also Islander,* 482 F.3d at 85-86 (explaining legislative history of NGA section 19(d) codified at 15 U.S.C. § 717r(d)); *Dominion Transmission,* 723 F.3d at 240-41 (explaining the FCAA and NGA allow states to "have a hand in air quality regulation" "if states wish to"); *Friends of Buckingham,* 947 F.3d at 72 (noting that a state's SIP incorporates federal laws, such as the FCAA's requirement that major sources to be subject to [BACT] and its federal definitions).

Similarly in a CWA appeal, the Third Circuit wrote "[a] water quality certification is not merely required by federal law, it cannot exist without federal law…To say otherwise would be to ignore EPA's supervisory role in the setting of state water quality standards, and the role of the federal government in regulating

water quality as envisioned [by Congress.]" *Del. Riverkeeper Network,* 833 F.3d at 371.

This Court may safely follow this precedent because all parties agreed  federal law not only requires PALNG to get a PSD permit but also that the federal definition of BACT applies here. TCEQ Br. 6-7; PALNG Br. 8. Under the FCAA's PSD program, "major emitting facilities" require a permit to begin construction. 15 U.S.C. § 7475(a)(1). Texas issues such permits according to its SIP authorized by the FCAA, which was reviewed and approved by the EPA to ensure Texas would "comply with its responsibilities under the [FCAA]." *Luminant Generation Co. v. U.S. EPA*, 714 F.3d 841, 845 (5th Cir. 2013). Texas' PSD program incorporates by reference numerous federal regulations and definitions, including the requirement of adopting BACT as defined in federal regulations. 30 TEX. ADMIN. CODE §§ 116.160(c)(1)(A), 116.160(c)(2)(A). And, Texas SIP is incorporated into federal law at 40 C.F.R. § 52.2270. Here, when TCEQ issued PALNG's permit, TCEQ granted a permit required by federal law to achieve federally determined air quality standards. PALNG is subject to BACT as defined by the FCAA and federal regulations. TCEQ Br. 6-7; PALNG Br. 8.

## II.    THE COURT HAS THE POWER TO VACATE THE STATE-ISSUED PERMIT.

### A.    Texas recognized the scope of Federal review in *Shrimpers*.

This Court vacated the underlying Order and remanded the matter to TCEQ. Op. 1, 14. Under the NGA, a reviewing court has the power to declare the state agency's action in conflict with federal law and remand the matter to TCEQ. 28 U.S.C. § 2106; 15 U.S.C. § 717r(d). Precedent in the First, Third and Fourth Circuit Courts of Appeals support this outcome following federal review of a state agency action under the NGA. *See Friends of Buckingham,* 947 F.3d at 80 (vacating and remanding the state order after finding state action on the permitting decision was arbitrary and capricious); *Town of Weymouth*, 973 F.3d at 145 (explaining the decision to "vacate the agency's decision or instead remand without vacating was 'within our discretion as the reviewing court'"); *Del. Riverkeeper Network v. Sec'y Penn Dep't of Env't Prot.,* 903 F.3d 65, 78 (3d Cir. 2018), *cert. denied,* 139 S.Ct 1648 (2019) (recognizing that review under the NGA "is quite capacious" in the review that it confers:  the reviewing federal circuit court may vacate or remand if it determines the final agency action violated applicable state law); *Sierra Club v. U.S. Dep't of the Interior,* 899 F.3d 260, 295 (4th Cir. 2018) ("Respondents argue that this Court lacks authority to vacate the agency actions under the NGA. However, Respondents' position is contrary to the plain text of the NGA… in this case, the NGA's judicial review provision does not modify the APA's default rule, which

empowers this Court to 'hold unlawful and set aside agency action.' *See* 5 U.S.C. § 706(2)(A)."). Here, allowing this PSD permit to continue after identifying these flaws in the BACT analysis runs contrary to federal and state law.

Previously, Ken Paxton, the Texas Attorney General, expressly acknowledged that this "Court has authority to remand or vacate an order that it reviews on the merits pursuant to the Natural Gas Act and [the federal] APA." *See* TCEQ's Corrected Response to Petitioners' Supplemental Letter Brief at 2, *Shrimpers and Fishermen of the RGV v. Tex. Comm'n on Env't Quality,* 968 F.3d 419 (5th Cir. 2020) (No. 19-60558), 2019 WL 7469921. In *Shrimpers*, TCEQ accepted, when conducting a merits review of a Texas-permitted LNG facility under the NGA, that this Court's reviewing authority included remand or vacatur under the federal APA, 5 U.S.C. §§ 704, 706. *Id.*

The federal APA gives courts the power to "hold unlawful and set aside agency action[s]." 5 U.S.C. § 706(2). The default rule is that vacatur is the appropriate remedy. *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.,* 45 F.4th 846, 859-60 (5th Cir. 2022); *Texas v. Biden,* 20 F.4th 928, 1000 (5th Cir. 2021), *rev'd on other grounds,* 597 U.S. 785 (2022)("[B]y default, remand with vacatur is the appropriate remedy."); *United Steel v. Mine Safety & Health Admin*., 925 F.3d 1279, 1287 (D.C. Cir. 2019)("The ordinary practice is to vacate unlawful agency action.").

**B.     Sovereign immunity provides no bar to this suit.**

The State of Texas cannot claim sovereign immunity because Texas voluntarily waived this defense. *AT&T Commc'ns v. BellSouth Telecomms. Inc*., 238 F.3d 636, 639 (5th Cir. 2001) ("When Congress bestows a gift or gratuity upon a state of a benefit which cannot be obtained by the state's own power, Congress may attach to the gratuity the condition of a voluntary waiver by the state of its Eleventh Amendment immunity."). By developing its federally-approved SIP and issuing permits to facilities such as PALNG, Texas voluntarily participates in the FCAA's regulatory scheme. *Del. Riverkeeper*, 833 F.3d at 371 (discussing Pennsylvania's voluntary participation in the similar CWA); *accord* Amicus Br. 1. A state "knowingly waive[s]" its immunity by continuing its "federally deputized role" of issuing air permits to NGA-regulated facilities under the FCAA. *Islander,* 483 F.3d at 90-91 (explaining that through the NGA, "Congress wholly preempted and federalized the area of natural gas regulation" and granted a benefit to the states by allowing their continued implementation of the FCAA.).

**III.    TCEQ AND PALNG REARGUE ISSUES CORRECTLY DECIDED.**

**A.     This Court held TCEQ to appropriate standards for review of an agency action.**

This Court holds TCEQ to the same standard as Texas courts have held other state agencies. Op. 12-13, 15 (citing *Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*, 406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.) and *City of El*

*Paso v. El Paso Elec. Co.,* 851 S.W.2d 896 (Tex. App.—Austin, 1993, writ denied)). As *Oncor* and the numerous cases it relies on instruct, "both state and federal courts require that an agency explain its reasoning when it appears to have departed from its earlier administrative policy or to be inconsistent in its determinations." *Oncor*, 406 S.W.3d at 267 (internal citations omitted). An agency should carefully "spell out the bases of its decisions when departing from prior norms." *Miner v. FCC*, 663 F.2d 152, 157 (D.C. Cir. 1980) (quoting *Food Mktg. Inst. v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978)). Agencies must "apply the same basic standard of conduct to all parties." *Miner,* 663 F.2d at 157 (quoting *Teamsters Loc. Union 769 v. NLRB*, 532 F.2d 1385, 1392 (D.C. Cir. 1976)). As such, an agency may not gloss over or swerve from prior precedents without discussion. *Id.* Accordingly, Courts frequently require an explanation or a reason why it appears there is a departure from earlier administrative policy or an apparent inconsistency in the agency's determinations. *City of El Paso v. El Paso Elec. Co.,* 851 S.W.2d 896, 900 (Tex. App.—Austin, 1993, writ denied) (internal citations omitted). Thus, agencies must "adequately examine…relevant record evidence" and "articulate rational connections" between facts and the bases for its decision. *Islander,* 482 F.3d at 85-86. TCEQ expresses outrage that this Court simply requires TCEQ to follow its own philosophy "to apply regulations clearly and consistently" amongst applicants[2] when issuing permits to

---

[2] TCEQ's Agency Philosophy, available at https://www.tceq.texas.gov/agency/mission.html.

major sources of pollution under federal standards. TCEQ Pet. Reh'g En Banc 13; Op. 15.

### B.    TCEQ and PALNG continue to apply inapplicable law to explain inconsistent permitting.

TCEQ failed to provide a clear or coherent explanation for inconsistent permitting actions, and in rationalizing its inconsistency, relies on inapplicable law.

TCEQ and PALNG repeatedly cite TCEQ's inapplicable "minor source" definition of BACT, 30 TEX. ADMIN CODE § 116.10(1). PALNG is a major source, seeking to obtain a PSD permit, and therefore must adopt the "major source" definition of BACT as defined in 30 TEX. ADMIN. CODE § 116.160(c)(1), which incorporates by reference the federal definition of BACT located at 40 C.F.R § 52.21(b)(12). TCEQ Br. 6-7; PALNG Br. 8; Oral Arg. 17:20 ("There is no dispute here that the *major source* definition applies.").

TCEQ further admits it used the minor source definition to dismiss Rio Grande LNG's limits TCEQ Pet. Reh'g En Banc 11 ("Because [Rio Grande LNG] was not yet operational at the time [PALNG] applied for a permit…it could not have been BACT under the *minor-source* rule.") (emphasis added). TCEQ's actions are especially egregious as it used that *inapplicable* law to justify higher limits than allowed under *applicable* law.

The decision to vacate TCEQ's actions reflects the Court's warranted concerns after oral argument. Op. 14. TCEQ rationalized using the wrong definition

to inform its BACT determinations for major sources, saying BACT for minor sources helps identify which emissions limits are "achievable" as required by the applicable major source definition. Oral Arg. 17:40, 18:10. However, when asked by Judge Weiner whether TCEQ interprets "operational" found in the minor source definition as "the equivalent of actually operating or the ability to operate," TCEQ counsel stated it means the latter, "the ability to operate," rather than actually operating. Oral Arg. 21:25. When Judge Graves asked if the only way to determine if something is "operational" is that it is "operating" elsewhere, Counsel answered "I wouldn't say that it is the only way to do that." Oral Arg. 18:55.

Judge Graves followed up by again asking, "[W]hen TCEQ determined in this case that it didn't have to match the limits that were set for Rio Grande, that determination was made on the fact that Rio Grande wasn't operating or had been operating, is that right?" TCEQ Counsel responded, "[y]es." Judge Graves asked again—"you are telling me you can determine if something is operational without it ever operating, you can do that…?" Counsel responded that TCEQ "prefers it to be operational…" Oral Arg. 19:10.

Counsel concluded oral argument by stating, "TCEQ can and does consider facilities that aren't operational…" Oral Arg. 22:45.

TCEQ's confusing and conflicting responses capture the gravamen of this case—even if the minor source definition is relevant, TCEQ, at best, articulated an

inconsistent, incoherent approach to implementing BACT. "If the administrative action is to be tested by the basis upon which it purports to rest, that must be set forth with such clarity as to be understandable." *S.E.C. v Chenery Corp.,* 332 U.S. 194, 196 (1947). TCEQ's inability to respond coherently means this Court must "guess at the theory underlying the agency's action" or "chisel that which must be precise from what the agency has left vague." *Chenery Corp.,* 332 U.S. 196-97. The Court cannot do that without "inva[ding] the agency's province." Op. 9 (citing *City of El Paso,* 851 S.W.2d at 900).

### C.     TCEQ's decision is not supported by its APDG-6110 guidance.

TCEQ's own BACT guidance document does not support its decision and shows TCEQ's BACT policies require a thorough review of Rio Grande LNG's lower permit limits. PACAN Br. 36-41. However, TCEQ and PALNG continue to selectively quote from that guidance to justify TCEQ's out-of-hand dismissal of Rio Grande LNG due to its permitted—but not yet operational—status.

The first step of TCEQ's guidance states "BACT progresses as technology progresses or as process developments occur." ROA.11069. Therefore, "[b]efore accepting a BACT proposal, the permit reviewer should try to identify any technological developments which have led to the new emission reduction options that may not have been considered in past permit reviews for the same industry." ROA.11069. This method contradicts PALNG's assertion that BACT only advances

when adopted and operated "voluntarily" by a similar or identical source. *See* PALNG Pet. Reh'g En Banc 6, 11.

TCEQ and PALNG favor half of the BACT standard while ignoring the rest. A BACT proposal is accepted if "no such emission reduction options are identified" and "the overall emission reduction performance level of the BACT proposals is at least equivalent to what has been accepted in recent permit reviews for the same industry." ROA.11069. TCEQ and PALNG repeatedly quote the latter requirement but fail to acknowledge that is half of the test; a permit review must look beyond previously accepted BACT proposals if new reduction options are available. ROA.11070.

The fact that Rio Grande LNG permit limits were reviewed and approved by TCEQ would indicate a "new" option. And when "any new or previously unconsidered emission reduction options have been identified during the permit review, the permit reviewer should instruct the applicant to perform a detailed technical and economic analysis of the identified option(s)." ROA.11070. "The new or unconsidered option should be adopted if shown to be "technically practicable and economically reasonable." ROA.11070. BACT can be "highly-complex and time-intensive" insisting on, among other requirements, "a detailed technical and economic analysis which should…eliminate technically infeasible options [and] perform quantitative cost analysis to determine cost effectiveness." APDG-6110

establishes a policy of performing in depth reviews of emission options, not merely asking whether a facility is "operating." TCEQ's policy provides that the Applicant and TCEQ cannot ignore Rio Grande LNG's so-called "beyond BACT" limits absent a detailed review showing they are technically infeasible and/or not cost effective. The ALJs found no evidence of such analysis in the record, which was also TCEQ and PALNG's burden. ROA.10753; ROA.6041; ROA.37506; 30 TEX. ADMIN. CODE § 80.17(a). Nor did TCEQ Final Order cite any such analysis. ROA.6372-73.

### D.    TCEQ presumably considered Rio Grande LNG's emissions limits were achievable when TCEQ granted the permit amendment.

By arguing that TCEQ cannot determine if Rio Grande LNG's emissions limits are "achievable" until it operates, the agency ignores its role in approving that permit. Texas law requires that "in order to be granted a permit, amendment, or special permit amendment, the application must include…information which demonstrates…the proposed facility will achieve the performance specified in the permit application." 30 TEX. ADMIN. CODE § 116.111(a)(2)(G). Presumably, then, TCEQ was sufficiently confident that Rio Grande LNG's emissions limits were demonstrably achievable when it granted its amended permit. ROA.12880; ROA.11801; ROA.13524-26. TCEQ now pleads ignorance of Rio Grande LNG's "achievability" and, despite its state-approved permit to Rio Grande LNG to operate, argues that "Rio Grande LNG's limits 'do[] not satisfy the EPA's or the TCEQ's

16

definition of BACT.'" TCEQ Pet. Reh'g En Banc 14; ROA.6372. TCEQ's arguments only confirm the Court's valid expressed concerns about the agency's consistency in permitting. Op. 1-2.

## CONCLUSION

TCEQ acted pursuant to federal law in issuing PALNG's PSD air permit. The Panel appropriately exercised jurisdiction and applied appropriate legal principles to determine TCEQ's Order was arbitrary and capricious as to BACT for PALNG's turbines.

Because no party has raised any other concerns or issues of exceptional importance, the Petitions for Rehearing En Banc should be denied.

Submitted by:

*/s/ Amy Catherine Dinn*
Amy Catherine Dinn
Texas Bar No. 24026801
Chase Porter
Texas Bar No. 24102368
Caroline Crow
Texas Bar No. 24118360
Lone Star Legal Aid
1415 Fannin Street
Houston, TX 77002
713-652-0077 ext 8108
adinn@lonestarlegal.org
cporter@lonestarlegal.org
ccrow@lonestarlegal.org

COUNSEL FOR PETITIONER
PORT ARTHUR COMMUNITY ACTION
NETWORK

# CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of January, 2024, an electronic copy of

the foregoing response was filed with the appellate CM/ECF system of the U.S.

Court of Appeal for the Fifth Circuit, which currently provides electronic service on

all counsel of record.

*/s/ Amy Catherine Dinn*
Counsel for Petitioner
Port Arthur Community Action Network

# CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of FED. R. APP. P. 35(b)(2)(A) because it contains 3,767 words.

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in Times New Roman 14 point font.

*/s/ Amy Catherine Dinn*
Counsel for Petitioner
Port Arthur Community Action Network
