

Sara B. Baumgardner  
Assistant Solicitor General

(512) 463-9920  
sara.baumgardner@oag.texas.gov

March 17, 2025

**Via CM/ECF**

Lyle W. Cayce, Clerk
U.S. Court of Appeals for the Fifth Circuit

> **Re:** **22-60556,** *Port Arthur Community Action Network v. Texas Commission on Environmental Quality*

Dear Mr. Cayce:

Respondents submit this letter brief in answer to three questions on which the Court requested supplemental briefing. The Court should deny PACAN's petition for review.

*1. Does the Court have subject-matter jurisdiction over petitioner Port Arthur Community Action Network's (PACAN's) claims?*

PACAN has invoked only the Natural Gas Act (NGA) as a basis for this Court's jurisdiction, *see* 15 U.S.C. § 717r(d)(1); ECF 1 at 1; ECF 102 at 6, and as a matter of the Court's precedent, PACAN's claims fall within that statute's textual ambit. Under the NGA, the

> United States Court of Appeals for the circuit in which a facility subject to section 717b of this title . . . is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a . . . State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval . . . required under Federal law.

15 U.S.C. § 717r(d)(1). Everyone agrees that Port Arthur LNG's proposed facility is "subject to section 717b." *See id.* §§ 717a(11), 717b(e); ECF 1 at 1.

Under this Court's case law, the Texas Commission on Environmental Quality (TCEQ) "issue[d]" its order "pursuant to Federal law." 15 U.S.C. § 717r(d)(1). The Court has noted that a state implementation plan (SIP) "ha[s] the force and effect of federal law" such that when a state agency "conduct[s] a required review under the [federal Clean Air Act (CAA)] for the issuance of permits" under its SIP, that agency "implement[s]" federal law, not just state law. *Sierra Club v. La. Dep't of Env't Quality* (*LDEQ*), 100 F.4th 555, 564 (5th Cir. 2024); *see* 42 U.S.C. § 7411(c)(1). *See generally* 40 C.F.R. § 52.2270 (the Environmental Protection Agency's (EPA's) approval of Texas's SIP). Under that holding, TCEQ acted "pursuant to Federal law" when it issued its order here. *See* 15 U.S.C. § 717r(d)(1). *But see generally* ECF 220.

And the permit that TCEQ issued is "required under Federal law." *Id.* The CAA states that "[n]o major emitting facility . . . may be constructed" in an area that complies with the NAAQS unless the facility receives a New Source Review (NSR) permit "setting forth emission limitations for such facility." 42 U.S.C. § 7475(a), (a)(1); *see also id.* §§ 7407(d)(1)(A)(ii), 7479(1) (defining "major emitting facility"); 40 C.F.R. § 52.21(a)(2)(i), (b)(1)(i); *Luminant Generation Co. v. U.S. EPA*, 675 F.3d 717, 922 (5th Cir. 2012) (discussing NSR). Federal law thus required Port Arthur LNG to seek the NSR permit—and to seek it from TCEQ. States must include such a permitting program in their SIPs. 42 U.S.C. § 7410(a)(2)(C) (requiring a SIP to include "a permit program as required in part[] C"); *see also id.* §§ 7470-92 (Part C, "Prevention of Significant Deterioration of Air Quality"). And Texas "ha[s] the primary responsibility for assuring air quality within [its] entire geographic area" via its SIP. *Id.* § 7407(a); *see also id.* § 7401(a)(3).

To be sure, PACAN's exclusive reliance on a state procedural rule, *see infra* pp. 5-6, appears to run afoul of Texas's sovereign immunity, ECF 205 at 7-8; *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 428 (5th Cir. 2020) (Oldham, J., concurring). But PACAN's claims fall within the text of 15 U.S.C. § 717r(d)(1).

*2. How does the Texas Supreme Court's decision addressing the definition of "best available control technology" affect PACAN's claims before this Court?*

Under the Supreme Court of Texas's answer to this Court's certified question, the Court should deny PACAN's petition. In certifying a "determinative question of law to the Supreme Court of Texas," this Court explained that "[t]his case turns on whether Rio Grande LNG's emissions limits were BACT under Texas law." *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality* (*PACAN II*), 92 F.4th 1150, 1152 (5th Cir. 2024) (per curiam). "'[B]est available control technology' is control technology that is currently available, technically practicable, and economically reasonable." *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality* (*PACAN III*), No. 24-0116, 2025 WL 492750, at *3 (Tex. Feb. 14, 2025). TCEQ's regulatory definition "further elucidate[s] the natural, everyday meaning of th[at] statutory text." *Id.* Specifically, the Texas Supreme Court held that the phrase "proven to be operational" in TCEQ's BACT definition, 30 Tex. Admin. Code § 116.10(1), means "demonstrated, real-world experience rather than the experience of previous permit applications," *PACAN III*, 2025 WL 492750, at *4.

"By asking whether a technology 'has proven,' 'through experience and research,' to be 'operational,' 'obtainable,' and 'capable of reducing or eliminating emissions,'" Texas law "asks an empirical question that looks to past experience and research." *Id.* (quoting 30 Tex. Admin. Code § 116.10(1)). Specifically, TCEQ's rule "refers to matters already proven in the past" and "requires that the pollution control method has already been demonstrated to be operational in the real world. Theoretical proof" of future operability "is not enough." *Id.* Thus, the Supreme Court of Texas has "reject[ed] the . . . suggestion that BACT might include 'methods that TCEQ deems to be capable of operating in the future.'" *Id.* (quoting *PACAN II*, 92 F.4th at 1152).

TCEQ therefore rightly concluded that Rio Grande LNG's permitted emissions limits did not constitute BACT. ROA.6372. PACAN has argued that because Rio Grande LNG's permit authorizes lower emissions limits, TCEQ acted arbitrarily when it did not require Port Arthur LNG to adhere to the same limits. *E.g.*, ECF 102 at 50-51. But Rio Grande LNG is "not in operation and there is no operational data to prove that [its] permitted limits are achievable at this time." ROA.6372. "[T]o say that a technology 'has proven to be operational,' we must already have the proof

in hand." *PACAN III*, 2025 WL 492750, at *4 (quoting 30 Tex. Admin. Code § 116.10(1)). Indeed, the Supreme Court of Texas expressly rejected "the notion—advanced by [PACAN] in this case—that if a permit has previously been issued to another facility at a given degree of pollution," all future, "similar facilities must propose at least as rigorous a degree of pollution control." *Id.*

To be sure, past permits "may certainly have some relevance to th[e] [BACT] inquiry"—"perhaps a great deal of relevance, depending on the circumstances." *Id.* at *5. That is why, in its BACT review, TCEQ considers permits that have recently been issued or approved. ROA.7249, 8775. But "when a previously permitted facility has not yet been built," like Rio Grande LNG, that facility's "example will often be of limited usefulness in determining the degree of pollution control that 'has proven,' 'through experience and research,' to be 'operational,' 'obtainable,' etc." *PACAN III*, 2025 WL 492750, at *5 (quoting 30 Tex. Admin. Code § 116.10(1)). At the very least, "previously issued permits are not determinative of BACT in the way [PACAN] ha[s] suggested in this case." *Id.*

PACAN's insistence that Port Arthur LNG must match Rio Grande LNG's emissions limits also fails because a "previously permitted emissions level for one facility is neither necessary nor sufficient to establish BACT for other, similar facilities." *Id.* (footnote omitted). As the Supreme Court of Texas explained, "TCEQ has an *obligation* to issue a permit if it finds, among other things, that the proposed facility 'will use *at least*'" BACT. *Id.* (quoting Tex. Health & Safety Code § 382.0518(b)(1) (emphasis added)). Thus, "when Facility A applies for a permit, TCEQ's inquiry is not whether Facility A's proposed control technology is BACT for all such facilities. Instead, the inquiry is whether Facility A's proposal is *at least* BACT, meaning that the proposal controls pollution at least as much as would the 'best available control technology.'" *Id.* This means "that if Facility A proposes to control pollution to a degree that is actually beyond what is currently available, technically practical, and economically reasonable, then TCEQ is statutorily required to issue the permit to Facility A." *Id.* But the "issuance of a permit to Facility A . . . is not a finding . . . that future, similar facilities must meet the pollution control standards in Facility A's permit," *id.*—and under the Texas Clean Air Act (TCAA), it couldn't be, *see* Tex. Health & Safety Code § 382.0518(b)(1). Instead, such a permit's issuance "is merely a finding that Facility A 'will use *at least* the best available control technology.' Such a finding does not necessarily tell us anything

about BACT for Facility B." *PACAN III*, 2025 WL 492750, at *5 (quoting Tex. Health & Safety Code § 382.0518(b)(1) (emphasis added)).

Thus, "the existence of a previous permit issued to [Rio Grande LNG] does not necessarily have any bearing on the standards [Port Arthur LNG] must meet to satisfy" BACT. *Id.* "If a dispute arises over whether [Port Arthur LNG's] proposal is 'at least BACT,' resolution of the dispute requires" an "inquiry . . . grounded in real-world experience and research." *Id.* That is why PACAN is wrong when it insists that "the lowest previously permitted limit for a control technology must be considered BACT." ECF 102 at 47.

As TCEQ's order noted, Rio Grande LNG's emissions limits did not constitute BACT because Rio Grande LNG is "not in operation and there is no operational data to prove that" its limits are "achievable at this time." ROA.6372. Rio Grande LNG's limits may be beyond BACT, but PACAN has not presented any evidence establishing that those limitations are BACT. *See Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) (stating that the contestant of Texas agency actions has the burden to prove that an agency's decision lacks substantial evidence).

PACAN's insistence that Rio Grande LNG's emissions limits constitute BACT thus fails. The Court should deny PACAN's petition.

> 3. *If the Court determines that respondents have violated the federal Clean Air Act and the Texas Clean Air Act, what is the proper procedural remedy under Texas law?*

As an initial matter, TCEQ has not violated the federal or state CAAs. The Supreme Court of Texas analyzed TCEQ's rule in light of its enabling statute in the TCAA. *PACAN III*, 2025 WL 492750, at *2-*5. Indeed, that Court noted that "the text of [TCEQ's] administrative definition" of BACT reflects "an honest effort to further elucidate the natural, everyday meaning of the [TCAA's] statutory text." *Id.* at *3. TCEQ properly applied that definition. ROA.6372. And TCEQ has already shown how that definition aligns with and complements federal law. *See* Br. for Respondents at 3-11, *PACAN III*, 2025 WL 492750 (Tex. Feb. 14, 2025) (No. 24-0116), 2024 WL 2702318. *Compare* 42 U.S.C. §§ 7475(a)(4) (requiring a proposed major source to be "subject to the best available control technology"), 7479(3), *and* 40 C.F.R. § 52.21(b)(12), *with PACAN III*, 2025 WL 492750, at *2-*5.

Assuming that the NGA incorporates some aspects of state law as rules of decision, *but see Shrimpers*, 968 F.3d at 427-28 (Oldham, J., concurring), and that TCEQ's order runs afoul of the federal or state CAAs, this Court must remand the order to TCEQ. PACAN has alleged that TCEQ's order is "invalid, arbitrary, or unreasonable," ECF 102 at 13, 18, invoking the state statute for challenging TCEQ orders in state court, *see generally* Tex. Health & Safety Code § 382.032. That provision states that "[i]n an appeal of an action of the commission or executive director . . . , the issue is whether the action is invalid, arbitrary, or unreasonable." *Id.* § 382.032(e); *see* ECF 102 at 18. Texas courts of appeals have stated that "'[t]he invalid, arbitrary, or unreasonable' standard incorporates the entire scope of review allowed by the 'substantial evidence' standard codified in the [Texas] Administrative Procedure Act." *E.g.*, *Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 516 (Tex. App.—Austin [3d Dist.] 2023, pet. denied) (quoting *TJFA, L.P. v. Tex. Comm'n on Env't Quality*, 632 S.W.3d 660, 666 (Tex. App.—Austin [3d Dist.] 2021, pet. denied (citations omitted)); *see* Tex. Gov't Code § 2001.174 (Texas APA's substantial-evidence rule). Critically, under the substantial-evidence standard, "[t]he findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant"—PACAN—"to prove otherwise." *Charter Med.*, 665 S.W.2d at 453.

If the Court believes that TCEQ has violated the federal and state CAAs, it must remand this case to TCEQ, Tex. Gov't Code § 2001.174(2)—it may not vacate the order. As TCEQ and Port Arthur LNG have pointed out, ECF 195 at 9-10; ECF 205 at 6-7, Texas law does not contemplate vacatur of a state agency's order, *e.g.*, *City of Allen v. Pub. Util. Comm'n of Tex.*, 161 S.W.3d 195, 199 n.11 (Tex. App.—Austin [3d Dist.] 2005, no pet.) (explaining that a state trial court "lack[s] power to vacate the [agency's] order"); *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 109 S.W.3d 130, 137-38 (Tex. App.—Austin [3d Dist.] 2003, no pet.) (same); *BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93 S.W.3d 570, 581 (Tex. App.—Austin [3d Dist.] 2002, pet. denied) (same). Instead, the Texas APA authorizes courts only to "reverse or remand [a] case for further proceedings" in certain circumstances. Tex. Gov't Code § 2001.174(2).

Here, remand is the proper remedy for the reasons TCEQ and Port Arthur LNG have previously articulated. ECF 195 at 5-6; ECF 204 at 15-18; ECF 205 at 6-7; ECF 238 at 1-3. In its initial opinion, the Court found that TCEQ purportedly erred by

insufficiently explaining its conclusion. *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality* (*PACAN I*), 86 F.4th 653, 663 (5th Cir. 2023), *opinion withdrawn and superseded on denial of reh'g*, 92 F.4th 1150. Texas courts remand where an agency "has not 'genuinely engaged in reasoned decision-making.'" *Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Env't Quality*, 393 S.W.3d 417, 423 (Tex. App.—Austin [3d Dist.] 2012, pet. denied) (quoting *Starr County v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. App.—Austin [3d Dist.] 1979, writ ref'd n.r.e.)). Under state law, remand constitutes the correct remedy here.

And that is the only available remedy. Under the NGA, "[i]f the Court finds that" TCEQ's order "is inconsistent with the Federal law governing [the] permit and would prevent the construction, expansion, or operation of the facility, . . . the Court shall remand the proceeding to [TCEQ] to take appropriate action." 15 U.S.C. § 717r(d)(3). But TCEQ's order here would not "prevent the construction, expansion, or operation" of anything—rather, it *permits* construction of Port Arthur LNG's facility. *See id.* PACAN thus cannot avail itself of § 717r(d)(3)'s remedy. *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 295 (4th Cir. 2018). PACAN has attempted to import the federal APA's vacatur remedy, *see* ECF 226 at 8-9, but PACAN has never invoked the federal APA in this case. Moreover, "the federal APA by its terms does not apply to [S]tates." *LDEQ*, 100 F.4th at 562 (quoting *Town of Weymouth v. Mass. Dep't of Env't Prot.*, 961 F.3d 34, 41 (1st Cir.), *on reh'g*, 973 F.3d 143 (1st Cir. 2020)); *see* 5 U.S.C. § 551(1). And where the state APA does not permit vacatur, applying the federal APA is inappropriate. *See Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 80 (4th Cir. 2020) (applying the federal APA only where *both* federal and state APAs allowed vacatur).

Respectfully submitted.

/s/ Sara B. Baumgardner

Sara B. Baumgardner
Assistant Solicitor General
*Counsel for Respondents*

cc: all counsel of record